**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: BEYOND MEAT, INC., PROTEIN CONTENT MARKETING AND SALES PRACTICES LITIGATION<br><br>This document relates to:<br>All Actions | Civil Action No. 1:23-cv-00669<br><br>**CONSOLIDATED CLASS ACTION COMPLAINT AND COMPLAINT FOR DAMAGES**<br><br>**Jury Trial Demanded** |

## CLASS ACTION COMPLAINT

Plaintiffs Angelique Roberts, Hannah Offutt, Dylan Rushing, Orlandra Hawthorne, Nisha Albert, Adam Sorkin, Dartisha Anderson, Christine Borovoy, Todd Miller, Richard D. Garcia, Erica Nichols Cook, Jennifer Speer, Rosemarie Ramirez, Mary Yoon, Christopher Bates, and Stan Zakinov ("Plaintiffs") bring this Consolidated Class Action Complaint against Defendant Beyond Meat, Inc. ("Beyond Meat" or "Defendant"), individually and on behalf of all others similarly situated, and complain and allege upon personal knowledge as to their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by Plaintiffs' attorneys:

### NATURE OF THE ACTION

1.      This is a civil class action lawsuit brought by Plaintiffs on behalf of all consumers who purchased Defendant's Beyond Meat products for personal or household use, including but not limited to: Beyond Meat Sausage Plant-Based Dinner Links Hot Italian 14 oz, Beyond Meat Beyond Sausage Plant-Based Dinner Sausage Links Brat Original 14 oz, Beyond Meat Beyond Beef Plant-Based 16oz Patties, Beyond Meat Beyond Beef Plant-Based Ground Beef, Beyond Meat Beyond Breakfast Sausage Plant-Based Breakfast Patties Classic 7.4 oz, Beyond Meat

Beyond Breakfast Sausage Plant-Based Breakfast Patties Spicy 7.4 oz, Beyond Meat Beyond Chicken Plant-Based Breaded Tenders Classic 8 oz, Beyond Meat Beyond Meatballs Italian Style Plant-Based Meatballs 12 ct Classic 10 oz, Beyond Meat Beyond Breakfast Sausage Plant-Based Breakfast Links Classic 8.3 oz (collectively "Beyond Meat Products" or "Products").

2.      Amidst the growing consumer demand for nutritious meat substitutes, Defendant has, and continues to, design, manufacture, promote, market, advertise, package, label, distribute, and sell Beyond Meat Products that highlight and tout the Products' protein content.

3.      Protein content is vital for a healthy body and important to consumers. Defendant knows this, which is why Beyond Meat prominently advertises the Products' purported protein content on the front label, in large bold text (e.g., "20G OF PLANT PROTEIN PER SERVING").

4.      Beyond Meat Products' labels are false and misleading because Defendant: (1) miscalculates and overstates the Products' protein content (a nutrient content claim), which is



measured in grams per serving determined by nitrogen testing and the Protein Digestibility Amino Acid Corrected Score method ("PDCAAS"); and (2) miscalculates and overstates the quality of the Products' protein, which is represented as a percentage of daily value and calculated by PDCAAS.

5.      By prominently stating or listing the purported protein content of the Beyond Meat Products on their front labels, Defendant misleads consumers into believing that the protein content of the Products is higher in terms of both quantity and quality of the products, inducing Plaintiffs and the Proposed Class to purchase the Products.

6.      Defendant has engaged in unfair and/or deceptive business practices by intentionally misrepresenting the quantity of protein as well as the nature and quality of Beyond Meat Products on the Products' respective nutrition labels and by failing to follow federal regulations that set forth the appropriate testing methodologies for determining protein content. Defendant has been unjustly enriched as a result of these and related practices.

7.       Plaintiffs and members of the Proposed Class were injured by Defendant's false, fraudulent, unfair, deceptive, and misleading practices. Accordingly, Plaintiffs seek compensatory damages and equitable remedies for themselves(s) and members of the Proposed Class.

## PARTIES

8.      Plaintiff Angelique Roberts is a resident of Chicago, Illinois, Cook County.

9.      Plaintiff Hannah Offutt is a resident of Peoria, Illinois, Peoria County.

10.      Plaintiff Dylan Rushing is a resident of Roxana, Illinois, Madison County.

11.      Plaintiff Orlanda Hawthorne is a resident of Chicago, Illinois, Cook County.

12.      Plaintiff Nisha Albert is a resident of Downers Grove, Illinois, DuPage County.

13.      Plaintiff Adam Sorkin is a resident of Chicago, Illinois, Cook County.

14.      Plaintiff Dartisha Anderson is a resident of Chicago, Illinois, Cook County.

15.      Plaintiff Christine Borovoy is a resident of Freeport, Illinois, Stephenson County.

16.      Plaintiff Todd Miller is a resident of New York, New York, New York County.

17.      Plaintiff Richard D. Garcia is a resident of Denver, Colorado, Denver County.

18.      Plaintiff Erica Nichols Cook is a resident of Des Moines, Iowa, Polk County.

19.      Plaintiff Jennifer Speer is a resident of Pensacola, Florida, Escambia County.

20.     Plaintiff Rosemarie Ramirez is a resident of Congers, New York, Rockland County.

21.     Plaintiff Mary Yoon is a resident of Corona, California, Riverside County.

22.     Plaintiff Christopher Bates is a resident of Worcester, Massachusetts, Worcester County.

23.     Plaintiff Stan Zakinov is a resident of Cypress, Texas, Harris County.

24.     Defendant, BEYOND MEAT, INC. is a publicly traded Delaware Corporation with its headquarters in El Segundo, California, and is registered as a foreign corporation in the State of Illinois.

## JURISDICTION AND VENUE

25.     This Consolidated Complaint is intended to serve as a superseding complaint as to all other complaints consolidated in this multidistrict litigation and other complaints filed in this district and transferred to the same court overseeing the multidistrict litigation, and to serve for all purposes as the operative pleading for the Class and any subclasses defined below. To the extent additional causes of action are presented against additional defendants, Plaintiffs reserve the right to propose case management procedures to ensure the efficient and effective litigation of this multidistrict litigation, or seek leave to amend the operative complaint.

26.     This Court has personal jurisdiction over Defendant because Defendant purposefully availed itself of the Illinois consumer market and places Beyond Meat Products into the stream of commerce directed at hundreds of locations within this District and thousands of locations throughout Illinois, where thousands of consumers purchase the Product every day.

27.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.  Plaintiffs allege that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the

aggregate, exclusive of interest and costs.

28.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because Plaintiffs purchased the Products in this District, substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the Products, occurred within this District, and the Defendant conducts business in this District.

## ALLEGATIONS

### A.     Background

29.     Defendant, Beyond Meat Inc., is a plant-based meat substitute company that was founded in 2009 and launched its initial product line in 2012.

30.     "As of December 2021, Beyond Meat had products available at approximately 130,000 retail and foodservice outlets in over 90 countries worldwide."[1]

31.      In the United States, Beyond Meat Products are available for purchase at 32,000 retail stores and 47,000 restaurants.

32.     Beyond Meat Products are sold in all 50 states and are available for purchase in major grocery stores, big box stores, and other retail locations throughout the United States.

33.     At all relevant times, Defendant has, and continues to, design, manufacture, promote, market, advertise, package, label, and distribute Beyond Meat Products in a consistent and uniform manner throughout the United States.

34.     Beyond Meat describes itself as a "leader in plant-based meat"[2] and "Revolutionary Plant-Based Protein Leader," and it describes the Products as the "future of protein" on its website and in its marketing materials.

35.     Beyond Meat exceeded $400 million in net revenue during 2020 and continues to

---

[1] https://investors.beyondmeat.com/news-releases/news-release-details/beyond-meatr-reports-fourth-quarter-and-full-year-2021-financial (last accessed Feb. 25, 2022).
[2] https://investors.beyondmeat.com/news-releases/news-release-details/revolutionary-plant-based-protein-leader-beyond-meatr-announces (last accessed March 7, 2022).

gain market share in the $1.4 trillion global meat industry.[3]

      36.     Beyond Meat has enlisted the help of many celebrities to advertise, promote, and sell its Products as an easy way to introduce protein into one's diet.



Figure 1. Olympic athlete Linsey Vonn promoting and representing Beyond Meat Products as a means of introducing more dietary protein. https://www.instagram.com/p/CZnUSuohQb5/ (last accessed March 7, 2022).

---

[3] 1Q21 Investor Presentation (May 2021) (beyondmeat.com) (last accessed March 7, 2022).

37.     Beyond Meat also uses social media platforms to promote the Products and attract potential consumers, and Defendant launched its #FutureofProtein marketing campaign on Instagram, Twitter, and Facebook.[4]



Figure 2. NBA All-Star and two-time Olympic athlete Chris Paul suggesting that Beyond Burgers provide consumers with the same amount of protein found in traditional beef burgers.

---

[4] *Id.*

38.     Beyond Meat's "future of protein" campaign targets environmentally conscientious consumers by claiming that the Products allow consumers to get high-quality dietary protein while simultaneously helping the environment. For example, Beyond Meat states that "[b]y removing the animal from the equation, ***Beyond Meat is building a burger that's better for you*** and the planet."



Figure 3. Beyond Meat's infographics suggest the Products' absorbed protein is the equivalent of traditional meat products when, in reality, it is substantially less.

### B.    The Importance of Protein to Consumers

39.     Protein is an essential part of a healthy diet and is indispensable for normal bodily functions. "Protein is a component of every cell in the human body and is necessary for proper growth and development, especially during childhood, adolescence, and pregnancy. [It] helps your body build and repair cells and body tissue, and is important for many body processes, such as blood clotting, fluid balance, immune response, vision, and production of hormones,

antibodies, and enzymes."[5]

40.     Protein intake also plays a critical role with other health benefits, including appetite control, weight and body composition management, muscle growth and maintenance, improved cardiometabolic health, better strength, improved immune function, and faster tissue recovery.[6] In light of these benefits, many consumers seek protein rich products to achieve these benefits.

41.     But even the average sedentary man needs 56 grams per day of protein and the average sedentary woman needs 46 grams of protein per the Dietary Reference Intake.[7] Individuals with specific health concerns, such as women who are pregnant or breastfeeding, or individuals with medical conditions that inhibit protein absorption, require more protein than the daily recommended minimum.[8]

42.     Furthermore, individuals with active lifestyles who regularly engage in strenuous activity, such as running or lifting weights, require more protein than the daily recommended minimum.[9]

43.     In light of the necessity for an adequate amount of protein for a healthy lifestyle, the FDA instructs consumers to "[m]onitor[] [p]rotein in [their] [d]iet," and, "[w]hen comparing and choosing foods, [to] look at the %DV of protein (if listed)."[10]

44.     Given the importance of protein intake, high protein foods are often sold at a premium price. Defendant's marketing campaign, as described in the previous section, makes it clear that Defendant's customers find both the amount and the quality of the protein in the Beyond Meat Products are material to their purchasing decision.

---

[5] Interactive Nutrition Facts Label - Protein (fda.gov) (last visited March 16, 2022).
[6] Id.
[7] https://www.healthline.com/nutrition/how-much-protein-per-day (last visited March 7, 2022).
[8] Id.
[9] https://pubmed.ncbi.nlm.nih.gov/1895363/ (last visited July 14, 2022).
[10]
https://www.accessdata.fda.gov/scripts/InteractiveNutritionFactsLabel/assets/InteractiveNFL_Protein_October2021.pdf (last visited April 28, 2022).



C. **Federal Regulations and Methodologies for Calculating Protein Content and Daily Value Percentage.**

45. Pursuant to the Food, Drug, and Cosmetics Act ("FDCA") (as amended by the Nutrition Labeling and Education Act), the United States Food and Drug Administration ("FDA") has adopted regulations that governs the nutritional labeling of food and requires manufacturers to provide information about the level of certain nutrients, including protein. *See* 21 C.F.R. §101.9(c)(7). The FDA prohibits front label claims about the amount of protein, unless manufactures also provide additional information in the nutrition fact panel about how much of the recommended daily value for protein that the product will actually provide. 21 C.F.R. §§ 101.9(c)(7)(i), 101.13 (b), (n). That is because the FDA recognizes that (1) when manufacturers tout an amount of protein on the front label that amount is likely to be material to purchasing decisions, even though reasonable consumers may not know the total amount of protein they need to ingest on a daily basis, and (2) not all proteins are the same in their ability to meet human nutritional requirements, so a simple statement about the number of grams does not actually inform consumers about how much usable protein they are receiving. Some proteins are deficient in one or more of the nine amino acids essential to human protein synthesis and/or are not fully digestible within the human gut. When a human body uses up the least prevalent essential amino acid from a food product, protein synthesis shuts down and all of the remaining amino acids from

that protein source degrade mostly into waste. Likewise, whatever portion of a protein source is not digestible is similarly unavailable for protein synthesis. A protein's ability to support human nutritional requirements is known as its "quality."

46.     The FDA thus requires manufacturers to publish a product's protein content on its nutritional label, which is "[a] statement of the number of grams of protein in a serving." 21 C.F.R. §101.9(c)(7). Generally, the "Nitrogen Content Method" is used to calculate a given food product's protein content. Under this methodology, protein content is calculated on the basis of the factor of 6.25 times the nitrogen content of the food as determined by the appropriate method of analysis as given in the 'Official Methods of Analysis of the AOAC International,' except when the official procedure for a specific food requires another factor.

47.     However, the FDCA requires disclosure of protein quality, which is determined through a more rigorous testing methodology, PDCAAS, to calculate the "corrected amount of protein per serving:" "The 'corrected amount of protein (gram) per serving' . . . is equal to the actual amount of protein (gram) per serving multiplied by the amino acid score corrected for protein digestibility. . . .The protein digestibility corrected amino acid score shall be determined by methods given in . . . 'Protein Quality Evaluation, Report of the Joint FAO/WHO Expert Consultation on Protein Quality Evaluation,' Rome, 1990, except that when official AOAC procedures described in section (c)(7) of this paragraph require a specific food factor other than 6.25, that specific factor shall be used." 21 C.F.R. §101.9(c)(7)(ii).

48.     The FDA regulation governing nutrient content claims like the protein content claims at issue here – section 101.13 – makes this plain. Section 101.13(n) provides that "[n]utrition labeling in accordance with § 101.9 . . . shall be provided for any food for which a nutrient content claim is made" and § 101.13(b) states "a nutrient content claim[] may not be made on the label . . . unless the claim is made in accordance with this regulation [i.e., § 101.13] . . . ." In other words, a manufacturer may not make any protein nutrient content claims on the front labels of their products unless they have complied with the requirements for protein labeling in the nutrition facts panel pursuant to section 101.9(c)(7). Indeed, the FDA made clear when

promulgating § 101.13(n) that it means that a manufacturer can only make "a nutrient content claim . . . on the label or in labeling of a food, provided that the food bears nutrition labeling that complies with the requirements in proposed § 101.9." 58 Fed. Reg. 2302, 23310.

49.     Beyond Meat is thus required by law to use the PDCAAS calculation for the Products rather than some other non-sophisticated method. The regulation requires that for any product making a protein claim (which is contained on the front panel of all of the Products), the product must contain a statement of protein content as a percentage of the Daily Reference Value calculated using the "corrected amount of protein"—an amount that is not calculated by simply multiplying the amount of nitrogen by 6.25, but by taking into account the "protein quality value," or "protein digestibility-corrected amino acid score." *See* 21 C.F.R. § 101.9(c)(7)(ii).

50.     Thus, for the Products, the protein content ***must*** **be stated as the corrected amount of protein**.

51.     To this day, the FDA continues to affirm and publicize these requirements on its website.[11] Any statement that the FDA somehow has abdicated the requirement for PDCASS testing for protein content is incorrect. The relevant regulations are clear:

> (i) **A statement of the corrected amount of protein per serving, as determined in paragraph (c)(7)(ii) of this section**, calculated as a percentage of the RDI or DRV for protein, as appropriate, and expressed as Percent of Daily Value, may be placed on the label, **except that such a statement shall be given if a protein claim is made for the product,** or if the product is represented or purported to be specifically for infants through 12 months or children 1 through 3 years of age. When such a declaration is provided, it should be placed on the label adjacent to the statement of grams of protein and aligned under the column headed "Percent Daily Value," and expressed to the nearest whole percent. However, the percentage of the RDI for protein shall not be declared if the food is represented or purported to be specifically for infants through 12 months and the protein quality value is less than 40 percent of the reference standard.

> (ii)  **The "corrected amount of protein (gram) per serving" for foods represented or purported for adults and children 1 or more years of age is equal to the actual amount of protein (gram) per serving multiplied by the amino acid score corrected for protein digestibility**. If the corrected score is

---

[11] https://www.fda.gov/food/food-labeling-nutrition/industry-resources-changes-nutrition-facts-label#LabelClaims (last accessed April 26, 2023).

above 1.00, then it shall be set at 1.00. **The protein digestibility-corrected amino acid score shall be determined by methods given in sections 5.4.1, 7.2.1, and 8.00 in "Report of the Joint FAO/WHO Expert Consultation on Protein Quality Evaluation," except that when official AOAC procedures described in paragraph (c)(7) of this section require a specific factor other than 6.25, that specific factor shall be used**. For foods represented or purported to be specifically for infants through 12 months, the corrected amount of protein (grams) per serving is equal to the actual amount of protein (grams) per serving multiplied by the relative protein quality value. The relative protein quality value shall be determined by dividing the subject food protein PER value by the PER value for casein. If the relative protein value is above 1.00, it shall be set at 1.00.

21 C.F.R. § 101.9(c)(7)(i) (emphasis added).

    **D.**    **Defendant's Representations, Advertising, and Marketing of the Protein Content of the Beyond Meat Products**

52.    Defendant advertises and promotes its Beyond Meat Products with the protein content prominently displayed on the front of the package. The fact that Defendant prominently advertises the Products' protein content on the front label (as opposed to only on the back label, in the required 'Nutritional Facts' section), in large bold text, demonstrates that Defendant is aware that its consumers specifically seek out foods that are high in protein and it is actively promoting its nutrient content claim to consumers; otherwise, Defendant would not devote limited and valuable labeling real estate to such claims. Indeed, the nutrient content claim is typically one of largest marketing claims made on the Products' front labels after a description of the product (e.g. "Patties" or "Sausage").

**Beyond Beef Plant-Based 16oz Patties**

53.    For example, Beyond Meat advertises and touts the Beyond Beef Plant-Based 16oz Patties as being "Plant-Based Patties" with "20G of Plant Protein Per Serving," which is attributable to the product's pea protein (as disclosed in the product's ingredients list).



54. The product's "Nutrition Facts" state that the 20G of Plant Protein Per Serving equals 40% of the % Daily Value for protein.



55. Stated differently, in many cases, Beyond Meat is simply doubling the stated amount of protein to arrive at the stated % Daily Value, and this is true across each of the

14

Products. However, because Defendant advertises a protein content claim on the Products' front labels, it is required to use the PDCAAS method of testing on its Products to arrive at the % Daily Value—doubling the stated amount of protein is insufficient and inaccurate. Further, the front of the label protein content claim should also be adjusted based upon the PDCAAS method.

56.     Defendant's fuzzy math can be seen in the rest of its Beyond Meat product line. Each of the Beyond Meat Products have the same inaccurate and misleading protein claims:



Figure 4. The Products' front labels contain a protein content claim, which requires Defendant to use the PDCAAS testing method to determine the % Daily Value of protein per serving.

**Sausage Plant-Based Dinner Links Hot Italian 14 oz**



15

**Beyond Sausage Plant-Based Dinner Sausage Links Brat Original 14 oz**



**Beyond Breakfast Sausage Classic 16oz Patties**



**Beyond Breakfast Sausage Plant-Based Breakfast Patties Spicy 7.4 oz**



**Beyond Chicken Plant-Based Breaded Tenders Classic 8 oz**



**Beyond Meatballs Italian Style Plant-Based Meatballs 12 ct Classic 10 oz**



**Beyond Breakfast Sausage Plant-Based Breakfast Links Classic 8.3 oz**



**Beyond Breakfast Sausage Plant-Based Breakfast Links Classic 8.3 oz**




**E. The Products' Front and Back Labels are Inaccurate with Regard to the Stated Amount of Protein.**

57. Defendant's stated protein amount and protein DV% claims are false and

misleading. As independent lab testing reveals, the quantity of protein determined by nitrogen in all but four of the Products is less than what Defendant represented. Even worse, each of the Products' DV% of protein (when calculated using the correct PDCAAS method) is substantially less than the Products' stated DV%.

58.      Plaintiffs' counsel commissioned testing of the Products, and the test results demonstrate that the Products do not contain the stated amount of protein and/or protein DV%. For example, Defendant's Beyond Beef Plant-Based Ground 16oz Patties, which is labeled as "20G Per Serving" and "40% DV" for protein, actually contains 18G Per Serving by nitrogen testing, and 7% DV for protein using PDCAAS. This represents a 5% deficiency in the reported protein content and a 33% deficiency in the reported %DV for protein.

59.      Based upon this example above, not only is the protein content claim on the front of the label false based upon the nitrogen method (18g by nitrogen), but it is also false based upon PDCAAS (3.5g).

60.      The chart below summarizes Plaintiffs' test results:

| Beyond Meat Product | Claimed Protein (Grams per serving) | DV % Claim | Actual Protein Amount by Nitrogen (Grams per serving) | Actual DV% (Using PDCAAS) | % Difference Protein | % Difference DV |
|---|---|---|---|---|---|---|
| Sausage Plant-Based Dinner Links Hot Italian 14 oz | 16 | 25% | 13 | 5% | **-18.75%** | **-80%** |
| Beyond Sausage Plant-Based Dinner Sausage Links Brat Original 14 oz | 16 | 25% | 13 | 5% | **-18.75%** | **-80%** |
| Beyond Beef Plant-Based 16oz Patties | 20 | 40% | 18 | 6% | **-10%** | **-85%** |
| Beyond Beef Plant-Based Ground Beef | 20 | 40% | 19 | 7% | **-5%** | **-82.5%** |

| | | | | | | |
|---|---|---|---|---|---|---|
| Beyond Breakfast Sausage Plant-Based Breakfast Patties Classic 7.4 oz | **11** | **22%** | **10** | **4%** | **-9.1%** | **-81.8%** |
| Beyond Breakfast Sausage Plant-Based Breakfast Patties Spicy 7.4 oz | **11** | **22%** | **10** | **4%** | **-9.1%** | **-81.8%** |
| Beyond Chicken Plant-Based Breaded Tenders Classic 8 oz | **11** | **16%** | **13** | **2%** | **18%** | **-87.5%** |
| Beyond Meatballs Italian Style Plant-Based Meatballs 12 ct Classic 10 oz | **19** | **38%** | **20** | **7%** | **5.20%** | **-81.6%** |
| Beyond Breakfast Sausage Plant-Based Breakfast Links Classic 8.3 oz | **8** | **16%** | **7** | **3%** | **-12.50%** | **-81.3%** |

61. The Products all make protein claims on the front label but fail to provide a statement of the corrected amount of protein per serving calculated according to the PDCAAS method. The protein claims on the front of these Products are, therefore, unlawful, and were never permitted to be on the labels in the first instance under §§ 101.9(c)(7)(i), 101.13(n), and 101.13(b).

62. By labeling each of the Products with their purported protein amount and/or protein DV% claims, Defendant knew or should have known that the claims are false and misleading, yet still advertised, labeled, and packaged the Products with the false and misleading claims. As the Products' manufacturer, supplier, wholesaler, distributor, and/or retailer, Defendant tested, or should have tested, the Products using the proper method prior to sale. The method for calculating the protein contents and DV% of food products is well established and set forth in the relevant federal regulations. Yet, Defendant did not follow the relevant standard and, instead, adopted over-stated protein claims.

20

63.     Defendant knowingly misrepresented the Products' true protein amount and/or protein DV% when it published marketing material on its website and approved the Products' labels.

64.     Plaintiffs and Class Members view protein content as important information and would not have purchased the Products or would have paid less for the Products if they were aware of the misleading labeling of the Products by Defendant.

65.     High protein foods are generally sold at a premium price, due to the importance of protein as alleged herein.  Accordingly, Plaintiffs and Class Members paid more than they would have otherwise paid had the representations on the labels been accurate.

66.     Defendant intended for Plaintiffs and the Class members to be deceived or misled. Defendant's deceptive and misleading practices proximately caused harm to the Plaintiffs and the Class.

67.     In sum, Defendant has miscalculated the front of the label protein content claims by nitrogen and also the required corrected protein content by PDCAAS, and also miscalculates the DV% on the back of the labels.

### F.     Plaintiffs' Experiences

68.     Plaintiff Roberts purchased the Beyond Meat Beyond Beef Plant-Based Ground 16oz, Beyond Meat Beyond Breakfast Sausage Plant-Based Breakfast Links, Classic 8.3 oz, Beyond Meat Beyond Meatballs Italian Style Plant-Based Meatballs 12 ct, Classic 10 oz on February 23, 2022, from Walmart (store number 7082290611) located at 500 W 95th St, Chicago, IL, 60805. Plaintiff Roberts paid $9.00 plus tax for the Beyond Beef Plant-Based Ground 16oz, $4.49 plus tax for the Beyond Meat Beyond Breakfast Sausage Plant-Based Breakfast Links, and $7.49 plus tax for the Beyond Meat Beyond Meatballs Italian Style Plant-Based Meatballs 12 ct. Plaintiff Roberts relied on Defendant's representations regarding the %DV of the Products. She also purchased the Products because of Defendant's representation that the Products contain the amount of protein stated on the Products' front label. Although the Products were more expensive

than other choices she viewed, Plaintiff Roberts chose to pay a price premium for the Products as a result of Beyond Meat's misrepresentations. At the time of her purchases, Plaintiff Roberts relied on Beyond Meat's factual representations, contained on the Products' label sand online. However, each representation was false because the Products do not contain the stated %DV of protein, the stated amount of protein measured in grams per serving (excluding the Beyond Meat Beyond Meatballs Italian Style Plant-Based Meatballs 12 ct, Classic 10 which do contain the stated amount of protein), or the adjusted protein content based upon the quality of the Products' protein. Plaintiff Roberts did not receive the benefit of her bargain despite paying a price premium for the Products. Plaintiff Roberts would consider buying the Products again if the stated amount of protein on the front of the Products was corrected (excluding the Beyond Meat Beyond Meatballs Italian Style Plant-Based Meatballs 12 ct, Classic 10 which do contain the stated amount of protein) and Beyond Meat engaged in the correct testing for the %DV for protein on the back of the Products' label.

69.     Plaintiff Offutt purchased Beyond Meat Beyond Meatballs Italian Style Plant-Based Meatballs 12 ct, Classic 10 oz, and Beyond Meat Beyond Breakfast Sausage Plant-Based Breakfast Plant-Based Breakfast Patties, Spicy 7.4 oz on December 1, 2021. Plaintiff Offutt paid $7.49 plus tax for the Beyond Meat Beyond Meatballs Italian Style Plant-Based Meatballs 12 ct and $4.04 plus tax for the Beyond Meat Beyond Breakfast Sausage Plant-Based Breakfast Plant-Based Breakfast Patties, Spicy 7.4 oz.   Plaintiff Offutt relied on Defendant's representations regarding the %DV of the Products. She also purchased the Products because of Defendant's representation that the Products contain the amount of protein stated on the Products' front label. Although the Products were more expensive than other choices she viewed, Plaintiff Offutt chose to pay the premium price based on Beyond Meat's various statements and representations. At the time of her purchases, Plaintiff Offutt relied on Beyond Meat's factual representations on the Products' label and online. All of the representations made by Beyond Meat regarding the product purchased by Plaintiff Offutt were false because the Products do not contain the stated %DV of protein, the stated amount of protein (excluding the Beyond Meat Beyond Meatballs Italian Style

Plant-Based Meatballs 12 ct, Classic 10 which do contain the stated amount of protein), or the adjusted protein content based upon the quality of the protein contained within the Products. Plaintiff Offutt paid a price premium for the Products but did not receive the benefit of her bargain. Plaintiff Offutt would consider buying the Products again if the stated amount of protein on the front of the Products was corrected (excluding the Beyond Meat Beyond Meatballs Italian Style Plant-Based Meatballs 12 ct, Classic 10 which do contain the stated amount of protein) and Beyond Meat engaged in the correct testing for the %DV for protein on the back of the Products' label.

70.     Plaintiff Rushing purchased Beyond Meat Beyond Chicken Plant-Based Breaded Tenders, Classic 8 oz on June 1, 2021, and paid approximately $6.00, excluding sales tax. Plaintiff Rushing relied on Defendant's representations regarding the %DV of the Products. He also purchased the Products because of Defendant's representation that the Products contain the amount of protein stated on the Products' front label. Although the Product was more expensive than other choices he viewed, Plaintiff Rushing chose to pay the premium price based upon the various claims and promises made by Beyond Meat. At the time of his purchase, Plaintiff Rushing relied on Beyond Meat's factual representations on the Product label and online. Each of Defendant's representations were false because the Product does not contain the stated %DV of protein and the adjusted protein content based upon the quality of the protein contained within the Product. Plaintiff Rushing did not receive the benefit of his bargain despite paying a price premium. Plaintiff Rushing would consider buying the Product again if Beyond Meat engaged in the correct testing for the %DV for protein on the back of the Product's label.

71.     Plaintiff Hawthorne purchased the Beyond Meat Sausage Plant-Based Dinner Links Hot Italian 14 oz on March 1, 2022 and paid approximately $15, excluding sales tax. Plaintiff Hawthorne relied on Defendant's representations regarding the %DV of the Products. She also purchased the Products because of Defendant's representation that the Products contain the amount of protein stated on the Products' front label. Although the Products were more expensive than other choices she viewed, Plaintiff Hawthorne chose to pay the premium price

based upon the various claims and promises made by Beyond Meat. At the time of her purchase, Plaintiff Hawthorne relied on Beyond Meat's factual representations on the Product label and online. Each of Beyond Meat's representations was false because the Product does not contain the stated %DV of protein, the stated amount of protein, or the adjusted protein content based upon the quality of the protein contained within the Product. Plaintiff Hawthorne did not receive the benefit of her bargain despite paying a price premium. Plaintiff Hawthorne would consider buying the Product again if Beyond Meat corrected the stated amount of protein and engaged in the correct testing for calculating the %DV for protein.

72.     Plaintiff Albert purchased the Beyond Meat Beyond Breakfast Sausage Plant-Based Breakfast Patties, Classic, 7.4oz, Beyond Meat Beef Plant Based Ground 16oz, and Beyond Meat Beyond Beef Plant-Based 16oz Patties on June 1, 2021. Plaintiff Albert paid approximately $9 and/or $8 for each product. Plaintiff Roberts relied on Defendant's representations regarding the %DV of the Products. She also purchased the Products because of Defendant's representation that the Products contain the amount of protein stated on the Products' front label. Although the Products were more expensive than other choices she viewed, Plaintiff Albert chose to pay a price premium based on Defendant's representations and statements. At the time of her purchases, Plaintiff Albert relied on Beyond Meat's factual representations on the Products label and online. These representations are false because the Product does not contain the stated %DV of protein, the stated amount of protein, or the adjusted protein content based upon the quality of the protein contained within the Products. Plaintiff Albert did not receive the benefit of her bargain despite paying a price premium. Plaintiff Albert would consider buying the Products again if the stated amount of protein was corrected and Beyond Meat engaged in the correct testing for the %DV for protein on the back of the Products' label.

73.     Plaintiff Sorkin purchased the Beyond Meat Beyond Sausage Plant-Based Dinner Sausage Links, Brat Original 14 oz on December 1, 2021, and paid approximately $10.99 for the product. Plaintiff Sorkin relied upon the representations regarding the %DV of the Products. He also purchased the Products because of Defendant's representation that the Products contain the

amount of protein stated on the Products' front label. Although the Product was more expensive than other choices he viewed, Plaintiff Sorkin chose to pay the premium price based upon the various claims and promises made by Beyond Meat. At the time of his purchase, Plaintiff Sorkin relied on Beyond Meat's factual representations on the product label and online. All of the representations made by Beyond Meat regarding the product purchased by Plaintiff Sorkin were false because the Products do not contain the stated %DV of protein, the stated amount of protein, or the adjusted protein content based upon the quality of the protein contained within the Product. Plaintiff Sorkin did not receive the benefit of his bargain and paid a price premium. Plaintiff Sorkin would consider buying the Product again if the stated amount of protein on the front of the Product was corrected and Beyond Meat engaged in the correct testing for the %DV for protein on the back of the Products' label.

74. Plaintiff Anderson started purchasing Beyond Meat products in 2015. Within the last three years, Plaintiff purchased and paid for the following Beyond Meat Products usually on a monthly basis as she uses them for herself and her children: Beyond Meat Sausage Plant-Based Dinner Links Hot Italian 14 oz ($8.99 plus tax), Beyond Meat Beyond Sausage Plant-Based Dinner Sausage Links Brat Original 14 oz ($8.99 plus tax), Beyond Meat Beyond Beef Plant-Based 16oz Patties ($8.99 plus tax), Beyond Meat Beyond Beef Plant-Based Ground Beef, Beyond Meat Beyond Breakfast Sausage Plant-Based Breakfast Patties Classic 7.4 oz ($4.99 plus tax), Beyond Meat Beyond Breakfast Sausage Plant-Based Breakfast Patties Spicy 7.4 oz ($4.99 plus tax), Beyond Meat Beyond Chicken Plant-Based Breaded Tenders Classic 8 oz ($4.99 plus tax), Beyond Meat Beyond Meatballs Italian Style Plant-Based Meatballs 12 ct Classic 10 oz ($7.29 plus tax), Beyond Meat Beyond Breakfast Sausage Plant-Based Breakfast Links Classic 8.3 oz ($8.99 plus tax). Plaintiff typically purchased them at a Whole Foods located at 5118 S Lake Park Ave, Chicago, Illinois, 60615 and a Walmart located at 10900 S Doty Ave, Chicago, Illinois 60628. Plaintiff Anderson relied on Defendant's representations regarding the %DV of the Products. She also purchased the Products because of Defendant's representation that the Products contain the amount of protein stated on the Products' front label. Although the Products

were more expensive than other choices she viewed, Plaintiff Anderson chose to pay a price premium for the Products as a result of Beyond Meat's misrepresentations. At the time of her purchases, Plaintiff Anderson relied on Beyond Meat's factual representations, contained on the Products' label sand online. However, each representation was false because the Products do not contain the stated %DV of protein, the stated amount of protein measured in grams per serving (excluding the Beyond Meat Beyond Meatballs Italian Style Plant-Based Meatballs 12 ct, Classic 10 which do contain the stated amount of protein), or the adjusted protein content based upon the quality of the Products' protein. Plaintiff Anderson did not receive the benefit of her bargain despite paying a price premium for the Products. Plaintiff Anderson would consider buying the Products again if the stated amount of protein on the front of the Products was corrected (excluding the Beyond Meat Beyond Meatballs Italian Style Plant-Based Meatballs 12 ct, Classic 10 which do contain the stated amount of protein) and Beyond Meat engaged in the correct testing for the %DV for protein on the back of the Products' label.

75.    Plainitff Christine Borovoy purchased Beyond Meat's Beyond Burger Plant-Based Patties several times during the relevant time period, starting in 2021. Beyond Meat Products are sold at many stores in and around Freeport, Illinois. Plaintiff Borovoy purchased the Products at the Sullivan's Foods and Woodman's Markets stores in her area. On or around August 19, 2021, Plaintiff Borovoy paid approximately $5.69 for a Beyond Burger Plant-Based Patties 2 Pack at Sullivan's Foods in Freeport, Illinois.  Plaintiff Borovoy read and relied on Defendant's representations regarding the %DV of the Products. She also purchased the Products because of Defendant's representation that the Products contain the amount of protein stated on the Products' label. Although the Products were more expensive than other choices she viewed, Plaintiff Borovoy chose to pay a price premium for the Products as a result of Beyond Meat's misrepresentations that the Products would provide the stated amount of protein. At the time of her purchases, Plaintiff read and relied on Beyond Meat's factual representations, contained on the Products' labels and online.  However, each representation was false because the Products do not contain the stated %DV of protein, the stated amount of protein measured in grams per serving

(excluding the Beyond Meat Beyond Meatballs Italian Style Plant-Based Meatballs 12 ct, Classic 10 which do contain the stated amount of protein), or the adjusted protein content based upon the quality of the Products' protein. Plaintiff Borovoy did not receive the benefit of her bargain despite paying a price premium for the Products, and was injured as a result because she would have made different dietary choices that would have provided more protein if she knew the truth behind Defendant's misleading representations. Moreover, Plaintiff Borovoy received inadequate protein from Defendant's Products, which increased her risk of protein deficiency and other health conditions and injuries noted above. Plaintiff would consider buying the Products again if the stated amount of protein on the front of the Products was corrected (excluding the Beyond Meat Beyond Meatballs Italian Style Plant-Based Meatballs 12 ct, Classic 10 which do contain the stated amount of protein) and Beyond Meat engaged in the correct testing for the %DV for protein on the back of the Products' label.

76.     Plaintiff Todd Miller is an individual consumer who, at all times material hereto, was a citizen of New York State. Plaintiff purchased the products at multiple supermarkets throughout New York City, including Citarella's supermarket, during the class period. The packaging of the Products Plaintiff purchased contained the representations that they had greater amounts of protein than they actually have based upon independent testing. Plaintiff believes that products that are labeled with specific amounts of protein actually contain the amounts of alleged proteins. If the Products actually had the amounts of stated proteins as represented on the Products' label, Plaintiff would purchase the Products in the immediate future. Had Defendant not made the false, misleading, and deceptive representations that the Products had the amounts of protein alleged Plaintiff would not have been willing to pay the same amount for the Products, and, consequently, would not have been willing to purchase the Products. Plaintiff purchased, purchased more of, and/or paid more for, the Products than he would have had he known the truth about the Products. The Products Plaintiff received were worth less than the Products for which he paid. Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

77.     Plaintiff Richard D. Garcia is a resident of Denver, Colorado and citizen of the

United States. Plaintiff purchased Beyond Meatballs, among other Beyond Meat products, in Denver, Colorado several times in 2022, and was deceived by Defendant's acts as set forth herein. Plaintiff relied upon the representations regarding the %DV of the Products. Plaintiff also purchased the Products because of the claim on the label that the Products contain the stated amount of protein on the front of the Products' labels. Although the Products were more expensive than other choices he viewed, Plaintiff chose to pay the premium price based upon Beyond Meat's representations. All of the representations made by Beyond Meat regarding the product purchased by Plaintiff were false because the Products do not contain the stated %DV of protein, the stated amount of protein, or the adjusted protein content based upon the quality of the protein contained within the Products. As a result, Plaintiff did not receive the benefit of bargain or suffered an out-of-pocket loss.

78.     Plaintiff Erica Nichols Cooks is a resident of Des Moines, Iowa and citizen of the United States. Plaintiff purchased Beyond Ground Beef and Beyond Sausage, among other Beyond Meat Products, at Target, Hy-Vee, and Walgreens stores in Iowa several times in 2022, and was deceived by Defendant's acts as set forth herein. Plaintiff also purchased the Products because of the claim on the label that the Products contain the stated amount of protein on the front of the Products' labels. Although the Products were more expensive than other choices she viewed, Plaintiff chose to pay the premium price based upon Beyond Meat' representations. All of the representations made by Beyond Meat regarding the product purchased by Plaintiff were false because the Products do not contain the stated %DV of protein, the stated amount of protein, or the adjusted protein content based upon the quality of the protein contained within Products.  As a result, Plaintiff did not receive the benefit of bargain or suffered an out-of-pocket loss.

79.     Plaintiff Speer is a resident of Pensacola, Florida and citizen of the United States. Plaintiff purchased Beyond Ground Beef, among other Beyond Meat products, at Winn-Dixie, Publix, Walmart, and Thrive Market stores in Florida several times in 2022 and was deceived by Defendant's acts as set forth herein. Plaintiff also purchased the Products because of the claim on

the label that the Products contain the stated amount of protein on the front of the Products' labels. Although the Products were more expensive than other choices she viewed, Plaintiff chose to pay the premium price based upon Beyond Meat's representations. All of the representations made by Beyond Meat regarding the product purchased by Plaintiff were false because the Products do not contain the stated %DV of protein, the stated amount of protein, or the adjusted protein content based upon the quality of the protein contained within the Products. As a result, Plaintiff did not receive the benefit of bargain or suffered an out-of-pocket loss.

80.     Plaintiff Ramirez has purchased Beyond Meat's Beyond Burger Plant-Based Patties for several years and typically buys them 3-4 times each month. Plaintiff Ramirez purchased the product at several retail locations in or around Conger, New York, and Beyond Meat products are sold in several stores, including ShopRite, Foodtown, and Target. Plaintiff Ramirez specifically recalls purchasing the product at a ShopRite store in her area and also believes that she has purchased the products at Food Town in the past. To the best of her recollection, Plaintiff Ramirez paid approximately $5-6 dollars for the product, which is the typical price range for the Beyond Burger Plant-Based Patties. When Plaintiff Ramirez purchased the products, she relied on various labeling representations about the nutritional qualities of the product, including that it had 20 grams of plant protein per serving, and a daily protein value of 40%. Plaintiff Ramirez read and relied on both the front labeling, and the nutrition information on the back of the package. Despite Defendant's representations, the product did not contain 20 grams of protein per serving, nor did it provide a daily protein value of 40%. Instead, the product contained approximately 18 grams of protein, and its actual daily protein value was approximately 35%. Plaintiff Ramirez would consider buying the Product again if the stated amount of protein on the front of the Product was corrected and Beyond Meat engaged in the correct testing for the %DV for protein on the back of the Products' label.

81.     Plaintiff Yoon purchased Beyond Meat's Beyond Burger Plant-Based Patties several times starting in approximately January 2020. Beyond Meat products are sold at many stores in and around Corona, California, such as Vons, Target, and Albertsons. Plaintiff Yoon

purchased the products at the Vons and Target stores in her area. To the best of her recollection, Plaintiff Yoon paid approximately $5-6 dollars for the product, which is the typical price range for the Beyond Burger Plant-Based Patties. When Plaintiff Yoon purchased the products, she relied on various labeling representations about the nutritional qualities of the product, including that it had 20 grams of plant protein per serving, and a daily protein value of 40%. Plaintiff Yoon read and relied on both the front labeling, and the nutrition information on the back of the package. However, the Patties Plaintiff Yoon purchased did not have 20 grams of protein per serving, and did not provide a daily protein value of 40%. Instead, the products would have had approximately 18 grams of protein, and an actual daily protein value of approximately 35%. Plaintiff Yoon would consider buying the Product again if the stated amount of protein on the front of the Product was corrected and Beyond Meat engaged in the correct testing for the %DV for protein on the back of the Products' label.

82. On February 5, 2021, Plaintiff Bates purchased Beyond Meat's Frozen Plant Based Meatless Beef-Style Patties for approximately $3.50. On February 5, 2021, and again on November 3, 2021, Plaintiff Bates purchased Beyond Meat's Beyond Beef Plant-Based Ground Beef for approximately $8. Plaintiff Bates purchased each of the above-described products from Target. When Plaintiff Bates purchased the products, they relied on various labeling representations about the nutritional qualities of the product, including the number of grams of plant protein per serving, and the daily protein value. Plaintiff Bates read and relied on both the front labeling, and the nutrition information on the back of the package. However, the labeling on the products Plaintiff Bates purchased provided false information regarding the number of grams of plant protein per serving and the daily protein value. The labeling of the Plant-Based Meatless Beef-Style Patties stated that they had 20 grams of protein per serving, and a daily protein value of 40%. Instead, the products would have had approximately 18 grams of protein, and an actual daily protein value of approximately 35%. The labeling of the Beyond Beef Plant-Based Ground Beef stated that the product provided an actual daily protein value of approximately 40%, but in fact, the product would have provided only approximately 7%.

Plaintiff Bates did not receive the benefit of their bargain. Plaintiff Bates would consider buying the Product again if the stated amount of protein on the front of the Product was corrected and Beyond Meat engaged in the correct testing for the %DV for protein on the back of the Products' label.

83.     Plaintiff Stan Zakinov is a resident of Cypress, Texas. While residing in San Diego, California, he purchased Beyond Burger, Meatballs, and Ground Beef from Smart and Final, Vons, and Sprouts between January 2019 and November 2021 in California. Plaintiff Zakinov relied on the label on Beyond Meat Products regarding the protein content and quality. Plaintiff Zakinov also relied on the marketing and packaging that the Beyond Meat Product was all natural, organic, and healthy, and believed they were high quality products. During that time, based on Beyond Meat's material omissions and false and misleading claims, representations, advertisements, and any other marketing by Beyond Meat, Mr. Zakinov was unaware that the Products did not contain the quantity or quality of protein advertised, did not have the advertised health benefits, and the product contained artificial, synthetic materials. Plaintiff Zakinov would not have purchased the Products, or he would not have paid as much for the Products if that information was fully disclosed. Plaintiff Zakinov was injured when he purchased the Products which have less value than what he paid for based on the misrepresentations of the content, quality, and benefits of protein in the Products, and the presence of inorganic ingredients.

## CLASS ACTION ALLEGATIONS

84.     Plaintiffs bring this action individually and as representative of all those similarly situated, pursuant to Federal Rule of Civil Procedure 23, on behalf of the below-defined Classes:

**Nationwide Class:** All persons or entities that purchased one or more of the Products for personal consumption in the United States (represented by all Plaintiffs).

**Consumer Fraud Multi-State Class:** All persons that purchased one or more of the Products for personal consumption in the states of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington (represented by Plaintiffs Roberts, Offut, Rushing, Hawthorne, Albert,

Sorkin, Anderson, Borovoy, Bates, Ramirez, Miller, Zakinov, Yoon, and Speer).[12]

85.     In addition, and in the alternative to the Nationwide Class and the Consumer Fraud Multi-State Class, Plaintiffs seek to represent the following state classes, pursuant to Federal Rule of Civil Procedure 23:

> **California Class** All persons that purchased one or more of the Products for personal consumption in the state of California (represented by Plaintiffs Zakinov and Yoon).

> **Illinois Class** All persons that purchased one or more of the Products for personal consumption in the state of Illinois (represented by Plaintiffs Roberts, Offut, Rushing, Hawthorne, Albert, Sorkin, Anderson, and Borovoy).

> **Massachusetts Class** All persons that purchased one or more of the Products for personal consumption in the state of Massachusetts (represented by Plaintiff Bates).

> **New York Class** All persons that purchased one or more of the Products for personal consumption in the state of New York (represented by Plaintiffs Ramirez, and Miller).

> **Iowa Class** All persons that purchased one or more of the Products for personal consumption in the tate of Iowa (represented by Plaintiff Nichols Cook).

> **Texas Class** All persons that purchased one or more of the Products for personal consumption in the state of Texas (represented by Plaintiffs Zakinov).

> **Colorado Class** All persons that purchased one or more of the Products for personal consumption in the state of Colorado (represented by Plaintiff Garcia).

> **Florida Class** All persons that purchased one or more of the Products for personal consumption in the state of Florida (represented by Plaintiff Speer).

86.     The Nationwide Class, Consumer Fraud Multi-State Class, and the State Classes are collectively referred to herein as the "Classes." Members of the Classes described are

---

[12] The States in the Consumer Fraud Multi-State Class are limited to those States with similar consumer fraud laws under the facts of this case: California (Cal. Bus. & Prof. Code § 17200, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Illinois  (815 Ill. Comp. Stat. 505/1, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich.  Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law § 349, *et seq.*); and Washington (Wash. Rev. Code § 19.86.010, *et seq.*).

referred to as "Class Members" or members of the "Classes."

87.     The following are excluded from the Classes: (1) any Judge presiding over this action and members of his or her family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parent has a controlling interest (as well as current or former employees, officers, and directors); (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) the legal representatives, successors, and assigns of any such excluded persons.

88.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

89.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that individual joinder of all Class Members is impracticable. Upon information and belief, Class Members number in the thousands to millions. The precise number or identification of members of the Classes are presently unknown to Plaintiffs but may be ascertained from Defendant's books and records. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

90.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all members of the Classes, which predominate over any questions affecting individual members of the Classes. These common questions of law or fact include, but are not limited to, the following:

a.      The true nature of the protein content in the Products;

b.      Whether the Products' protein content is mislabeled pursuant to the FDCA;

c.      Whether Defendant knowingly made misleading statements in connection with consumer transactions that reasonable consumers were likely to rely upon to their detriment;

33

d.    Whether Defendant knew or should have known that the representations and advertisements regarding the Products was false and misleading;

e.    Whether Defendant's conduct violates public policy;

f.    Whether Defendant's acts and omissions violate the state laws of California, Colorado, Florida, Illinois, Iowa, Massachusetts, Michigan, Minnesota, Missouri, New Hampshire, New Jersey, New York, Rhode Island, Washington, Texas, and Wisconsin;

g.    Whether Plaintiffs and the Class Members did not receive the benefit of their bargain when purchasing the Products;

h.    Whether the Plaintiffs and the Class Members suffered monetary damages, and, if so, what is the measure of those damages;

i.    Whether Plaintiffs and the Class Members are entitled to an injunction, damages, restitution, equitable relief, and other relief deemed appropriate, and, if so, the amount and nature of such relief.

91.    Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs, on behalf of themselves and the other Class Members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

92.    **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the claims of the other Class Members, as each class member was subject to the same omission of material fact and misrepresentations regarding the Products' protein content. Plaintiffs share the aforementioned facts and legal claims or questions with Class Members, and Plaintiffs and all Class Members have been similarly affected by Defendant's common course of conduct alleged herein. Plaintiffs and all Class Members sustained monetary and economic injuries.

93.    **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate representatives of the Classes because they are members of the Classes and their interests do not conflict with the interests of the Class Members they seek to represent.

Plaintiffs have also retained counsel competent and experienced in complex commercial and class action litigation. Plaintiffs and their counsel intend to prosecute this action vigorously for the benefit of all Class Members. Accordingly, the interests of the Class Members will be fairly and adequately protected by Plaintiffs and their counsel.

94.     **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a class action, Class Members will continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. Accordingly, the proposed Classes satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

95.     **Manageability – Federal Rule of Civil Procedure 23(b)(1).** Plaintiffs envision no difficulty in the management of this action as a class action. The advantages of maintaining the action as a class action far outweigh the expense and waste of judicial effort that would result from hundreds or thousands of separate adjudications of these issues for each member of the Class or the injustice that would result if individual actions could not be brought due to lack of notice or resources. Through the actions and omissions described herein, Defendant has acted or failed to act on grounds that apply generally to the class, so that final injunctive or declaratory relief is proper as to the class as a whole. Class treatment further ensures uniformity and consistency in results and will provide optimum compensation to members of the Class for their injuries. Accordingly, the proposed Classes satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

96.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and all Class Members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Classes as a whole.

97.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is

superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class Members to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

98. **Issue Certification- Federal Rule of Civil Procedure 23(c)(4).** Issues common to the class can be certified pursuant to Rule 23(c)(4) which states that "[w]hen appropriate an action may be brought or maintained as a class action with respect to a particular issues." The issues common to the class and appropriate for certification include *inter alia* the issues listed in paragraph 88.

## FIRST CAUSE OF ACTION
### Violation of State Consumer Fraud Acts
(Individually and on behalf of the Consumer Fraud Multi-State Class)

99. Plaintiffs incorporate by reference all of the foregoing paragraphs of this Complaint as if fully set forth herein.

100. Plaintiffs Roberts, Offut, Rushing, Hawthorne, Albert, Sorkin, Anderson, Borovoy, Bates, Ramirez, Miller, Zakinov, Yoon, and Speer ("Plaintiffs" for purposes of this claim) bring this claim on behalf of themselves and the Consumer Fraud Multi-State Class under the Consumer Fraud Acts of the following States with similar consumer fraud laws under the facts of this case (collectively, the "Consumer Fraud Acts"):

a. California Unfair Competition Law, Bus. & Prof. Code §§ 17200, *et seq*. and 17500, *et seq*.;

b. Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq*.;

c. Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, *et seq*.;

d. Massachusetts Regulation of Business Practices for Consumers Protection Act, Mass. Gen. Laws Ch. 93A, *et seq*.;

e. Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901, *et seq*.;

f. Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.67, *et seq*.;

g. Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq*.;

h. New Jersey Consumer Fraud Act, N.J. Stat. § 56:8-1, *et seq*.;

i. New York Consumer Protection from Deceptive Acts and Practices, N.Y. Gen. Bus. Law § 349, *et seq*.; and

j. Washington Consumer Protection Act, Wash. Rev. Code § 19.86.010, *et seq*.

101.    The Consumer Fraud Acts of the states prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

102.    Plaintiffs and the other Class Members have standing to pursue a cause of action for violation of the Consumer Fraud Acts of the states have suffered an injury in fact and lost money as a result of Defendant's actions set forth herein.

103.    Defendant engaged in unfair and/or deceptive conduct, including, but not limited to, making representations in violation of the FDCA.

104.    Defendant intended that Plaintiffs and each of the other Members of the Class would rely upon its unfair and deceptive conduct and a reasonable person would in fact be misled by this deceptive conduct described above.

105.    As a result of Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiffs and each of the other Members of the Class have sustained damages in an amount to be proven at trial.

106.    In addition, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

**SECOND CAUSE OF ACTION**

**Violations of California's Consumer Legal Remedies Act, California Civil Code §§1750, *et seq*.**

(On Behalf of the Nationwide Class, or in the alternative, the California Class)

107.    Plaintiffs repeat and re-allege all previous paragraphs, as if fully included herein.

108.    Plaintiffs bring this claim on behalf of themselves and the Nationwide Class, and Plaintiffs Zakinov and Yoon bring this claim in the alternative on behalf of the California Class.

109.    Plaintiffs allege, on information and belief that: (a) the decisions of Beyond Meat concerning the development and ingredients of the Products emanate from Beyond Meat's headquarters and offices in California; (b) Beyond Meat's decisions on how to present the Products on their labels and in Beyond Meat's advertising in the United States emanate from its headquarters in El Segundo, California; and (c) the relevant personnel from Beyond Meat work at its offices in El Segundo, California or coordinate and make decisions concerning the above through facilities and other personnel in California. For these reasons, Plaintiffs and the Nationwide Class's claims emanate from Beyond Meat's actions in California and it is appropriate for Beyond Meat to be held to comply with California law on a nationwide basis.

110.    Plaintiffs and each Class member is a "consumer," as that term is defined in California Civil Code section 1761(d).

111.    The Products are "goods," as that term is defined in California Civil Code section 1761(a).

112.    Beyond Meat is a "person" as that term is defined in California Civil Code section 1761(c).

113.    Plaintiffs' and each proposed Class member's purchase of the Products constituted a "transaction," as that term is defined in California Civil Code section 1761(e).

114.    Beyond Meat's conduct alleged herein violated the following provisions of

California's Consumer Legal Remedies Act ("CLRA"):

    a.  California Civil Code section 1770(a)(5), by negligently, recklessly, and/or intentionally representing that the Products:

        i.  Contain the %DV of protein advertised on the packaging, when in fact the Products contain less protein than stated;

        ii.  Are made only from "natural" ingredients;

        iii.  Are made without "artificial" ingredients; and

        iv.  Are made without "synthetic" ingredients.

    b.  California Civil Code section 1770(a)(5), by negligently, recklessly, and/or intentionally failing to disclose that the Products contain methylcellulose;

    c.  California Civil Code section 1770(a)(7), by negligently, recklessly, and/or intentionally representing that the Products were of a particular standard, quality, or grade, when they were of another;

    d.  California Civil Code section 1770(a)(9), by negligently, recklessly, and/or intentionally advertising the Products with intent not to sell them as advertised; and

    e.  California Civil Code section 1770(a)(16), by representing that the Products have been supplied in accordance with previous representations when they have not.

115.    As a direct and proximate result of these violations, Plaintiffs and the Class have been harmed, and that harm will continue unless Defendant is enjoined from using the misleading marketing described herein in any manner in connection with the advertising and sale of the Products.

116.    On or about June 2, 2022, at least one Plaintiff gave notice to Defendant that outlined Defendant's violations of the CLRA, as described herein.

117.    Plaintiffs seek an award of attorneys' fees pursuant to, *inter alia*, California Civil Code section 1780(e) and California Code of Civil Procedure section 1021.5.

### THIRD CAUSE OF ACTION
**Violations of California's False Advertising Law, California Business & Professions Code §§ 17500, *et seq*.**
(On Behalf of the Nationwide Class, or in the alternative, the California Class)

118.    Plaintiffs repeat and re-allege all previous paragraphs, as if fully included herein.

119.     Plaintiffs bring this claim on behalf of themselves and the Nationwide Class, and Plaintiffs Zakinov and Yoon bring this claim in the alternative on behalf of the California Class.

120.     Plaintiffs allege, on information and belief that: (a) the decisions of Beyond Meat concerning the development and ingredients of the Products emanate from Beyond Meat's headquarters and offices in California; (b) Beyond Meat's decisions on how to present the Products on their labels and in Beyond Meat's advertising in the United States emanate from its headquarters in El Segundo, California; and (c) the relevant personnel from Beyond Meat work at its offices in El Segundo, California or coordinate and make decisions concerning the above through facilities and other personnel in California. For these reasons, Plaintiffs and the Nationwide Class's claims emanate from Beyond Meat's actions in California and it is appropriate for Beyond Meat to be held to comply with California law on a nationwide basis.

121.     California's False Advertising Law prohibits any statement in connection with the sale of goods "which is untrue or misleading." Cal. Bus. & Prof. Code §17500.

122.     As set forth herein, Beyond Meat's claims that the Products contain the advertised protein content and DV% are literally false and likely to deceive the public.

123.     Beyond Meat's claims that the Products are made from all-natural ingredients, and do not contain artificial and/or synthetic ingredients are untrue or misleading, as is failing to disclose an accurate %DV of protein as required by the FDCA.

124.     Beyond Meat knew, or reasonably should have known, that all these claims were untrue or misleading.

125.     Beyond Meat's conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiffs' desire to purchase these Products in the future if they can be assured that, so long as the Products contain the advertised %DV of protein, and are made from all-natural ingredients, and do not contain artificial and/or synthetic ingredients and/or any other ingredients or contaminants that do not conform to the packaging claims.

126.     Plaintiffs and members of the Class are entitled to injunctive and equitable relief, and restitution in the amount they spent on the Products.

**FOURTH CAUSE OF ACTION**

**Violations of California's Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq.***

(On Behalf of the Nationwide Class, or in the alternative, the California Class)

127.     Plaintiffs repeat and re-allege all previous paragraphs, as if fully included herein.

128.     Plaintiffs bring this claim on behalf of themselves and the Nationwide Class, and Plaintiffs Zakinov and Yoon bring this claim in the alternative on behalf of the California Class.

129.     Plaintiffs allege, on information and belief that: (a) the decisions of Beyond Meat concerning the development and ingredients of the Products emanate from Beyond Meat's headquarters and offices in California; (b) Beyond Meat's decisions on how to present the Products on their labels and in Beyond Meat's advertising in the United States emanate from its headquarters in El Segundo, California; and (c) the relevant personnel from Beyond Meat work at its offices in El Segundo, California or coordinate and make decisions concerning the above through facilities and other personnel in California. For these reasons, Plaintiffs and the Nationwide Class's claims emanate from Beyond Meat's actions in California and it is appropriate for Beyond Meat to be held to comply with California law on a nationwide basis.

130.     The Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code §17200.

131.     Defendant's conduct, namely, its representations concerning the protein quantity and quality of the Products violated all three prongs of the Unfair Competition Law for the following reasons.

132.     **Fraudulent** - Beyond Meat's statements that the Products contain the advertised %DV of protein, are made from all-natural ingredients, and do not contain artificial and/or synthetic ingredients are literally false and likely to deceive the public.

133.     **Unlawful** - As alleged herein, Beyond Meat has advertised the Products with false or misleading claims, such that Defendant's actions as alleged herein violate at least the following laws: (a) The CLRA, California Business & Professions Code sections 1750, *et seq*.; (b) The False

41

Advertising Law, California Business & Professions Code sections 17500, *et seq*.; (c) federal laws regulating the advertising and branding of food in 21 U.S.C. § 343(a), *et seq*. and FDA regulations, including but not limited to 21 C.F.R. §§ 101.9 (c)(7), 101.13 (b), and (n), which are incorporated into the Sherman Law (California Health & Safety Code §§ 110100(a), 110380, and 110505); (d) fraudulent misrepresentation; (e) fraud by omission; and (f) breach of warranty, express and implied.

134. **Unfair** - Beyond Meat's conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Products is unfair because its conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

135. Beyond Meat's conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Products is also unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including, but not limited to, the False Advertising Law and the FDCA.

136. Beyond Meat's conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Products is also unfair because it poses a safety risk to consumers, which rely on the Defendant's representations concerning protein quality and quantity in connection with their dietary and nutritional needs.

137. Beyond Meat's conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Products is also unfair because the consumer injury is substantial, not outweighed by benefits to consumers or competition, and not one the consumers themselves can reasonably avoid.

138. Plaintiffs and the members of the Class have suffered harm as a result of the violations of the UCL, and they lack an adequate remedy at law to address the conduct at issue here. Legal remedies available to Plaintiff and class members are inadequate because they are not as equally prompt and certain and in other ways efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the

standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiffs fail to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money Defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims under the UCL entail few elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

139.    There is no benefit to consumers or competition from deceptively marketing and labeling the Products.

140.    Plaintiff and the other class members had no way of reasonably knowing that the Products they purchased were not as marketed, advertised, packaged, or labeled. Thus, they could not have reasonably avoided the injury each of them suffered.

141.    The gravity of the consequences of Defendant's conduct as described above outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives which exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff and the other members of the Classes.

142.    In accordance with California Business & Professions Code § 17203, Plaintiffs and the Class seek an order enjoining Beyond Meat from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign. Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

143.    On behalf of themselves and the Class, Plaintiffs also seek an order for the restitution of all monies from the sale of the Products, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition.

**FIFTH CAUSE OF ACTION**

**Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq*.**
(On Behalf of the Illinois Class)

144.    Plaintiffs repeat and re-allege all previous paragraphs, as if fully included herein.

145.    Plaintiffs Roberts, Offut, Rushing, Hawthorne, Albert, Sorkin, Anderson, and Borovoy ("Plaintiffs" for purposes of this claim) bring this claim on behalf of the Illinois Class.

146.    Plaintiffs and Illinois Class members are consumers under the Illinois Consumer Fraud Act and Defendant is a "person" within the meaning of 815 Ill. Comp. Stat. 510/1(5).

147.    Defendant engaged, and continues to engage, in the wrongful conduct alleged herein in the course of trade and commerce, as defined in 815 ILCS 505/2 and 815 ILCS 510/2.

148.    815 ILCS 505/2 (Illinois Consumer Fraud Act) prohibits:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act,' approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.

149.    815 ILCS 510/2 provides that a:

> person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation," the person does any of the following: "(2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; ... (5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have...; (7) represents that goods or services are of a particular standard, quality, or grade... if they are not; ... [and] (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

150.    Defendant's representations and omissions concerning the representations were false and/or misleading as alleged herein.

151.    Defendant's foregoing deceptive acts and practices, including its omissions, were likely to deceive, and did deceive, consumers acting reasonably under the circumstances. Consumers, including Plaintiffs and putative Class Members, would not have purchased their Products had they known the Products contain a lower protein amount and/or protein DV% than what was represented. These claims, alone or in tandem, are deceptive and violate federal regulations.

152.    Defendant's false or misleading representations and omissions were such that a reasonable consumer would attach importance to them in determining his or her purchasing decision.

153.    Defendant's false and misleading representations and omissions were made to the entire Illinois Class as they were prominently displayed on the packaging of every one of the Products, Defendant's website, and the online pages for the Products.

154.    Defendant knew or should have known their representations and omissions were material and were likely to mislead consumers, including Plaintiffs and the Illinois Class.

155.    Defendant's practices, acts, and course of conduct in marketing and selling the Products were and are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment.

156.    Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised the Products to unwary consumers.

157.    Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the Illinois Consumer Fraud Act.

158.    Defendant's wrongful business practices were a direct and proximate cause of actual harm to Plaintiffs and to each Class member.

159.    As a direct and proximate result of Defendant's unfair and deceptive trade practices,

Plaintiffs and the other Illinois Class members have suffered ascertainable loss and actual damages. Plaintiffs and the other Illinois Class members who purchased the Products would not have purchased them, or, alternatively, would have paid less for them had the truth about the non-conforming ingredients been disclosed. Plaintiffs and the other Illinois Class members did not receive the benefit of the bargain. Plaintiffs and the other Illinois Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under 815 Ill Comp. Stat. 505/1, *et seq.*

160.    On or about March 17, 2022, Plaintiffs gave notice to Defendant that outlined Defendant's breaches alleged herein.

161.    Defendant's counsel responded to Plaintiffs, but ultimately, Defendant failed to take the corrective action requested by Plaintiffs in their correspondence and Plaintiffs were forced to file this action.

### SIXTH CAUSE OF ACTION
**Violations of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 505/2, *et seq*.**
(On Behalf of the Illinois Class)

162.    Plaintiffs repeat and re-allege all previous paragraphs, as if fully included herein.

163.    Plaintiffs Roberts, Offut, Rushing, Hawthorne, Albert, Sorkin, Anderson, and Borovoy ("Plaintiffs" for purposes of this claim) bring this claim on behalf of the Illinois Class.

164.    Defendant is a "person" as defined by 815 ILCS §§ 510/1(5).

165.    Defendant engaged in deceptive trade practices in the conduct of its business, in violation of 815 ILCS §§ 510/2(a), Defendant knew consumers would purchase the Products and/or pay more for them under the false – but reasonable – belief that the Products contained the stated protein amount and/or protein DV%, when these claims are false. By advertising so prominently protein amount and/or protein DV% of its Products, Defendant proves that information about protein is material to consumers. If such information were not material, Defendant would not feature it prominently on the Products' labeling and throughout Defendant's advertising as stated herein. As a result of its deceptive acts and practices, Defendant has sold

thousands, if not millions, of Products to unsuspecting consumers across Illinois. If Defendant had advertised its Products truthfully and in a non-misleading fashion, Plaintiffs and other Illinois Class Members would not have purchased them or would not have paid as much as they did for them. In addition or alternatively, Plaintiffs and members of the Illinois Class would have made different dietary choices to ensure that they were getting adequate protein to ensure optimal health.

166.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

167.    The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous. The acts caused substantial injury to Plaintiffs and members of the Illinois Class that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

168.    Defendant continues to market and sell the Products with the false and misleading statements detailed herein.

169.    As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiffs and members of the Illinois Class have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Products.

170.    Plaintiffs and members of the Illinois Class are entitled to such injunctive relief to ensure that Defendant ceases its unlawful acts and practices.

171.    Plaintiffs and members of the Illinois Class seek all relief allowed by law, including injunctive relief, damages, and reasonable attorney's fees.

## SEVENTH CAUSE OF ACTION
### Violations of the Mass. Gen. Laws Chapter 93A, § 2
(On Behalf of the Massachusetts Class)

172.    Plaintiffs repeat and re-allege all previous paragraphs, as if fully included herein.

173.    Plaintiff Bates ("Plaintiff" for purposes of this claim) brings this claim on behalf of the Massachusetts Class.

47

174.     Massachusetts law prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws Ch. 93a, § 2.

175.     Plaintiff, members of the Massachusetts Class, and Defendant are "persons" within the meaning of Mass. Gen. Laws Ch. 93a, § 1(a).

176.     Defendant is engaged in "trade" or "commerce," within the meaning of Mass. Gen. Laws Ch. 93A, § 2.

177.     The Products constitute property under Mass. Gen. Laws Ch. 93A.

178.     Defendant engaged in one or more of the following unfair or deceptive acts or practices as prohibited by Mass. Gen. Laws Ch. 93A, § 2:

        a.     Misrepresenting the approval or certification of goods;

        b.     Representing that goods have sponsorship, approval, characteristics, uses, benefits, or quantities which they do not have;

        c.     Representing that goods are of a particular standard, quality, or grade, if they are of another;

        d.     Disparaging the goods, services, or business of another by false or misleading representation of fact;

        e.     Advertising goods with intent not to sell them as advertised;

        f.     Engaging in other conduct which created a likelihood of confusion or of misunderstanding;

        g.     Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale of the Products, whether or not any person has in fact been misled, deceived or damaged thereby; and

        h.     Representing that goods have been supplied in accordance with a previous representation when they have not been.

179.     Defendant's acts and omissions are unfair in that they (1) offend public policy; (2) are immoral, unethical, oppressive, or unscrupulous; and (3) cause substantial injury to consumers. Defendant has, through knowing, intentional, material omissions, sold mislabeled Products.

180.    Defendant's acts and omissions are also unfair in that they cause substantial injury to consumers far in excess of any conceivable benefit; and are injuries of a nature that they could not have been reasonably avoided by consumers.

181.    Defendant's foregoing unfair methods of competition and unfair or deceptive acts or practices, including its omissions, were and are committed in its course of trade or commerce, directed at consumers, affect the public interest, and injured Plaintiff and Class members.

182.    Plaintiff and the members of the Massachusetts Class have suffered injury in fact, including economic injury, and actual damages resulting from Defendant's material omissions and misrepresentations because, *inter alia*, they lost money when they purchased the Products and/or paid an inflated purchase price for the Products.

183.    Defendant knew, should have known, or was reckless in not knowing, that the Products were mislabeled and did not contain the protein advertised.

184.    Defendant had a duty to disclose mislabeling and misbranding because Defendant had knowledge of the true facts related to the Products prior to marketing and selling the Products.

185.    As a direct and proximate result of Defendant's unfair methods of competition and unfair or deceptive acts or practices, Plaintiff and the members of the Massachusetts Class have incurred damages and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

186.    Plaintiff and the members of the Massachusetts Class have suffered ascertainable losses, which include but are not limited to, the costs they incurred paying for a product which was not the one that had been represented to them.

187.    Pursuant to Mass. Gen. Laws, Chapter 93A § 9, Plaintiff and the members of the Massachusetts Class seek an order enjoining Defendant's unfair and/or deceptive acts or practices, and awarding damages, punitive damages, reasonable attorney's fees, costs, and any other just and proper relief available under Massachusetts law.

**EIGHTH CAUSE OF ACTION**
**Violations of New York General Business Law § 349**
(On Behalf of the New York Class)

188.    Plaintiffs repeat and re-allege all previous paragraphs, as if fully included herein.

189.    Plaintiffs Ramirez and Miller ("Plaintiffs" for purposes of this claim) bring this claim on behalf of the New York Class.

190.    GBL § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

191.    In its sale of goods throughout the State of New York, Defendant conducts business and trade within the meaning and intendment of GBL § 349.

192.    Plaintiffs and the New York Class are consumers who purchased products from Defendant for their personal use.

193.    By the acts and conduct alleged herein, Defendant has engaged in deceptive, unfair, and misleading acts and practices, which include, without limitation, misrepresenting that the Products contain the correct amount of protein, as stated on the Product's label. Had Plaintiffs and the New York Class been apprised of these facts, they would not have purchased the Products.

194.    The foregoing deceptive acts and practices (including labeling and advertising the Products as including certain amounts of protein and protein of a certain quality) were directed at consumers.

195.    The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the quality of the Products to induce consumers to purchase the same. A reasonable consumer would not have knowingly purchased the Products if the protein contents had been truthfully advertised, or they would not have paid the price premium associated with high protein products. By reason of this conduct, Defendant engaged in deceptive conduct in violation of GBL § 349.

196.    Defendant's actions are the direct, foreseeable, and proximate cause of the damages that Plaintiffs and the New York Class have sustained from having paid for and used Defendant's

Products.

197.    As a result of Defendant's violations, Plaintiffs and the New York Class have suffered damages because: (a) they paid a premium price based on Defendant's deceptive conduct; and (b) the Products do not have the characteristics, uses, benefits, or qualities as promised.

198.    On behalf of themselves and other members of the New York Class, Plaintiffs seek to recover their actual damages or fifty dollars per unit sold, whichever is greater, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**NINTH CAUSE OF ACTION**
**Violations of New York General Business Law § 350**
(On Behalf of the New York Class)

199.    Plaintiffs repeat and re-allege all previous paragraphs, as if fully included herein.

200.    Plaintiffs Ramirez and Miller ("Plaintiffs" for purposes of this claim) bring this claim on behalf of the New York Class.

201.    GBL § 350 prohibits false advertising in the conduct of any business, trade, or commerce. Pursuant to § 350, false advertising is defined as "advertising, including labeling, of a commodity ... if such advertising is misleading in a material respect."

202.    Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of GBL § 350.

203.    By the acts and conduct alleged herein, Defendant has engaged in deceptive, unfair, and misleading acts and practices, which include, without limitation, misrepresenting that the Products contain the correct amount of Protein, as stated on the Product's label. Had Plaintiffs and the New York Class been apprised of these facts, they would have been aware of them and would not have purchased the Products.

204.    The foregoing deceptive acts and practices were directed at consumers.

205.    Defendant's false, misleading, and deceptive statements and representations of fact

were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

206.    Defendant's false, misleading, and deceptive statements and representations of fact have resulted in consumer injury or harm to the public interest.

207.    Defendant's actions are the direct, foreseeable, and proximate cause of the damages that Plaintiffs and the New York Class have sustained from having paid for and used Defendant's Products

208.    As a result of Defendant's violations, Plaintiffs and the New York Class have suffered damages because: (a) they paid a premium price based on Defendant's deceptive conduct; and (b) the Products do not have the characteristics, uses, benefits, or qualities as promised.

209.    On behalf of themselves and other members of the New York Class, Plaintiffs seek to recover their actual damages or statutory damages of $500 per unit sold, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**TENTH CAUSE OF ACTION**
**Violations of The Iowa Private Right of Action for Consumer Frauds Act, Iowa Code**
**§714H**
(On Behalf of the Iowa Class)

210.    Plaintiffs repeat and re-allege all previous paragraphs, as if fully included herein.

211.    Plaintiff Nichols Cook ("Plaintiff" for purposes of this claim) brings this claim on behalf of the Iowa Class.

212.    The Iowa "Private Right of Action for Consumer Frauds Act" ("Iowa CFA"), IOWA CODE §714H, prohibits unfair and deceptive trade practices in the sale or advertisement of a product or service, and in the solicitation of charitable contributions. The Iowa CFA's purpose is to protect consumers against these unfair and deceptive business practices, and to provide efficient and economical procedures to secure such protection.

213.    Specifically, Plaintiff alleges that Defendant has violated the Iowa CFA by engaging in the unfair and/or deceptive acts and practices set forth within the Iowa CFA. Defendant

knew prior to the sale of the Products that the Products contain a lower protein amount and/or protein DV% than what was represented. Defendant's unfair and deceptive business practices in carrying out the marketing program described above were and are intended to and did and do result in the purchase of Defendant's Products by consumers, including Plaintiffs, in violation of the Iowa CFA.

214.     Plaintiff's right as a consumer to bring this action at law derives from the Iowa CFA. The Iowa legislature enacted the Iowa CFA to allow Iowa consumers who have been victimized by an unfair or deceptive trade business practice to obtain damages and other such equitable relief as the Court deems necessary to protect the public from further violations.

215.     As a result of Defendant's unfair and/or deceptive business practices, Plaintiff and all purchasers of the Products have lost money in that they paid for products that did not have the benefit as represented. Pursuant to IOWA CODE §714H.5, Plaintiff seeks and is entitled to damages, an Order enjoining Defendant from continuing to engage in the unfair and deceptive business practices alleged herein, costs, and attorneys' fees.

216.     Plaintiff and her counsel have sought and have obtained the approval to bring this claim pursuant to IOWA CODE §714H.7.

**ELEVENTH CAUSE OF ACTION**
**Violations of Texas's Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.01, *et seq*.**
(On Behalf of the Texas Class)

217.     Plaintiffs repeat and re-allege all previous paragraphs, as if fully included herein.

218.     Plaintiff Zakinov ("Plaintiff" for purposes of this claim) brings this claim on behalf of the Texas Class.

219.     The Products are "goods," as that term is defined in Texas Business & Commerce Code Ann. § 17.45(1).

220.     Defendant is a "person" as that term is defined in Texas Business & Commerce Code Ann. § 17.45(3).

221.     The Texas Deceptive Trade Practices Act prohibits any "false, misleading, or deceptive acts or practices." Tex. Bus. & Com. Code Ann. §17.46.

222.     Beyond Meat's conduct alleged herein violated the following provisions of the Texas Deceptive Trade Practices Act ("DTPA"):

a          Texas Business & Commerce Code Ann. section 17.46(b)(5), by knowingly and/or intentionally representing that the Products have characteristics, ingredients, uses, benefits, or quantities which they do not have, specifically that the Products:

  i     Contain the %DV of protein advertised on the packaging;

  ii    Are made only from "natural" ingredients;

  iii   Are made without "artificial" ingredients; and

  iv    Are made without "synthetic" ingredients.

b          Texas Business & Commerce Code Ann. section 17.46(b)(7), by knowingly and/or intentionally representing that the Products are of a particular standard, quality, or grade, or that goods are of a particular style or model, when they were of another;

c          Texas Business & Commerce Code Ann. section 17.46(b)(9), by knowingly and/or intentionally advertising the Products with intent not to sell them as advertised; and

d          Texas Business & Commerce Code Ann. section 17.46(b)(9), by knowingly and/or intentionally failing to disclose information concerning the Products which was known at the time of the transaction where such failure to disclose such information was intended to induce Plaintiff and the Class into a transaction into which they would not have entered had the information been disclosed.

223.     Plaintiff and the Texas Class relied on these false, misleading, and deceptive acts and practices to their detriment, and that harm will continue unless Defendant is enjoined from using the misleading marketing described herein in any manner in connection with the advertising and sale of the Products.

224.     Defendant's acts were knowing and intentional, entitling Plaintiff and the Texas Class to treble damages under DTPA section 17.50(b)(1).

225.     In accordance with DTPA section 17.50(b)(2), Plaintiff and the Texas Class seek an order enjoining Defendant from continuing to conduct business through false, misleading, and deceptive acts and practices and to commence a corrective advertising campaign. Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

226.     In accordance with DTPA section 17.50(b)(3), Plaintiff and the Texas Class also seek an order for the restitution of all monies from the sale of the Products, which were unjustly acquired through false, misleading, and deceptive acts and practices.

227.     In accordance with DTPA section 17.50(b)(4), Plaintiff and the Texas Class also seek any other relief which the Court deems proper.

228.     In accordance with DTPA section 17.50(d), Plaintiff and the Texas Class also seek an award of attorneys' fees.

**TWELFTH CAUSE OF ACTION**
**Violations of Colorado Consumer Protection Act, Colo. Rev. Stat. Ann. §§ 6-1-101, *et seq.***
(On Behalf of the Colorado Class)

229.     Plaintiffs repeat and re-allege all previous paragraphs, as if fully included herein.

230.     Plaintiff Garcia ("Plaintiff" for purposes of this claim) brings this claim on behalf of the Colorado Class.

231.     Plaintiff and Beyond Meat are "person[s]" under the Colorado Consumer Protection Act ("CCPA"). Colo. Rev. Stat. § 6-1-102(6).

232.     Plaintiff is also an actual consumer of the Products, in accordance with Colo. Rev. Stat. § 6-1-113(1)(a).

233.     Beyond Meat's conduct alleged herein violated the following provisions of the CCPA, which prohibits a person from "engag[ing] in a deceptive trade practice":

a     Colo. Rev. Stat. § 6-1-105(1)(e), by knowingly and/or recklessly making false representations as to the characteristics, ingredients, uses, benefits, alterations, or quantities of the Products, including:

b     Colo. Rev. Stat. § 6-1-105(1)(g), by representing that the Products are of a particular standard, quality, or grade, or that Products are of a particular

style or model, when Beyond Meat knows or should know that they are of another;

c      Colo. Rev. Stat. § 6-1-105(1)(h), by disparaging the goods and business of another by false or misleading representation of fact concerning the Products;

d      Colo. Rev. Stat. § 6-1-105(1)(i), by advertising the Products with intent not to sell them as advertised; and

e      Colo. Rev. Stat. § 6-1-105(1)(u), by failing to disclose material information concerning the Products which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction.

234.      In particular, Beyond Meat violated the foregoing provisions of the CCPA by making the following misrepresentations concerning the Products on their labels, advertisements, and other marketing materials:

         i.    The Products contain the %DV of protein advertised on the packaging, when in fact the Products contain less protein than stated;

       ii.    The Products are made only from "natural" ingredients;

     iii.    The Products are made without "artificial" ingredients; and

     iv.    The Products are made without "synthetic" ingredients.

235.      Beyond Meat knew that its statements concerning the ingredients and protein quality and quantity of the Products were false and misleading. Beyond Meat further intended that Plaintiff and the members of the Colorado Class rely on these statements and omissions in purchasing the Products at a premium price.

236.      Had Plaintiff and the members of the Colorado Class known the truth concerning the Products they would not have purchased them or would have paid less for them.

237.      Beyond Meat's conduct had an impact on the public because the acts were part of a generalized course of conduct affecting thousands or millions of consumers.

238.      As a direct and proximate result of these violations, Plaintiff and the Colorado Class have been harmed, and that harm will continue unless Defendant is enjoined from using the

misleading marketing described herein in any manner in connection with the advertising and sale of the Products.

239.    Plaintiff, individually and on behalf of the Colorado Class, seeks monetary damages, injunctive relief, costs, reasonable attorneys' fees, and such other and further relief provided by Colo. Rev. Stat. § 6-1-113(2.9) and equity.

## THIRTEENTH CAUSE OF ACTION
**Violations of Florida's Unfair & Deceptive Trade Practices Act, Fla. Stat. §501.201, *et seq*.**
(On Behalf of the Florida Class)

240.    Plaintiffs repeat and re-allege all previous paragraphs, as if fully included herein.

241.    Plaintiff Speer ("Plaintiff" for purposes of this claim) brings this claim on behalf of the Florida Class.

242.    Plaintiff and the Florida Class members are "consumers" within the meaning of Fla. Stat. §501.203(7).

243.    Defendant is engaged in "trade" or "commerce" within the meaning of Fla. Stat. §501.203(8).

244.    The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") makes unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. §501.204(1).

245.    In the course of its business, Defendant violated the Florida FDUTPA by knowingly misrepresenting and/or intentionally concealing material facts regarding the Products' protein content and ingredients. Specifically, in marketing, offering for sale, and selling the Products, Defendant engaged in one or more of the following unfair or deceptive acts or practices prohibited by Fla. Stat. §501.204(1):

      a    representing that the Products have characteristics or benefits that they do not have;

      b    representing that the Products are of a particular quality when they are not;

      c    advertising the Products with the intent not to sell them as advertised;

d   engaging in other conduct which created a likelihood of confusion or of misunderstanding; and/or

e   using or employing deception, fraud, false pretense, false promise, or misrepresentation, or the concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the advertisement and sale of the Products.

246.    Defendant's scheme and concealment of the true characteristics of the Products were material to Plaintiff and the Florida Class, and Defendant misrepresented, concealed, or failed to disclose the truth with the intention that Plaintiff and the Florida Class would rely on the misrepresentations, concealments, and omissions. Had they known the truth, Plaintiff and the Florida Class would not have purchased the Products or would have paid significantly less for them.

247.    Plaintiff and the Florida Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose.

248.    Defendant had an ongoing duty to Plaintiff and the Florida Class members to refrain from unfair and deceptive practices under the Florida FDUTPA in the course of its business. Specifically, Defendant owed Plaintiff and the Florida Class members a duty to disclose all the material facts concerning the Products: (1) Beyond Meat was in a superior position to know and had exclusive knowledge of the true state of facts about the Products; (2) Beyond Meat had exclusive knowledge and was in a superior position to know the actual ingredients, characteristics, and suitability of the Products; (3) Beyond Meat knew that Plaintiffs and the Class could not reasonably have been expected to learn or discover that the Products were misrepresented in the packaging, labels, advertising, and websites prior to purchasing the Products; (4) Beyond Meat made misrepresentations that were rendered misleading because they were contradicted by withheld facts; and (5) Beyond Meat had knowledge that the Products could pose safety risks to consumers which relied on the accuracy the Products' protein quality and quantity for their personal health.

249.    Plaintiff and the Florida Class members suffered ascertainable loss and actual

damages as a direct and proximate result of Defendant's concealment, misrepresentations, and/or failure to disclose material information.

250. Plaintiff, on behalf of herself and the Class, seeks monetary damages, costs, attorneys' fees, and such other and further relief provided by law and equity.

**FOURTEENTH CAUSE OF ACTION**
**Breach of Express Warranty**
(On behalf of the Nationwide Class or, in the Alternative, each of the State Classes)

251. Plaintiffs repeat and re-allege all previous paragraphs, as if fully included herein.

252. Plaintiffs bring this claim on behalf of themselves and the Nationwide Class, or, in the alternative, on behalf of the State Classes they each represent.

253. Defendant marketed, sold, and/or distributed the Products, and Plaintiffs and the Class Members purchased the Products.

254. The terms of the contract include the promises and affirmations of fact made by Defendant on the Products' packaging and through marketing and advertising, as described above.

255. This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract between Plaintiffs and the members of the Class and Defendant.

256. As detailed above, Defendant made specific warranties and representations by representing the amount of protein on the front of the Products' label and that the Products are only made from "natural" ingredients and without "artificial" or "synthetic" ingredients. Defendant also warranted a corresponding %DV for protein on the back of the Products' label.

257. Beyond Meat made these express warranties regarding the Products' quality, ingredients, and fitness for consumption in writing through its website, advertisements, and marketing materials and on the Products' packaging and labels. These express warranties became part of the basis of the bargain that Plaintiff and the Class entered into upon purchasing the Products.

258. Beyond Meat's advertisements, warranties, and representations were made in

connection with the sale of the Products to Plaintiffs and the Class. Plaintiffs and the Class relied on Beyond Meat's advertisements, warranties, and representations regarding the Products in deciding whether to purchase the Products.

259.    The Products do not conform to Beyond Meat's advertisements, warranties and representations in that they:

    a    contain a substantially lower %DV of protein than advertised on the packaging;

    b    are made with ingredients that are not natural;

    c    are made with artificial ingredients; and

    d    are made with synthetic ingredients.

260.    Beyond Meat was on notice of this breach as it was aware of the inaccurate %DV of protein in the Products and because it was aware of the presence of non-natural, artificial, and synthetic ingredients such as methylcellulose in the Products.

261.    Privity exists because Beyond Meat expressly warranted to Plaintiffs and the Class through the warranting, packaging, advertising, marketing, and labeling that the Products contained the %DV of protein advertised on the packaging, are made with all-natural ingredients, are not made with artificial ingredients, and are not made with synthetic ingredients. As alleged herein, the marketing of the Products was uniform, and was controlled and disseminated directly by Defendant. Nonetheless, privity is not required here because Plaintiffs and each of the other Class Members are intended third-party beneficiaries of sales contracts between Beyond Meat and its retailers and/or distributors. The retailers and/or distributors were not intended to be the ultimate consumers of the Products.

262.    Plaintiffs and the members of the Class performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

263.    As a direct and proximate result of Defendant's breaches of its express warranties and their failure to conform to the Products' express representations, Plaintiffs and Class Members have been damaged. Plaintiffs and Class Members have suffered damages in that they did not

receive the Products they specifically paid for and that Defendant warranted it to be. In addition, Plaintiffs and Class Members paid a premium for a product that did not conform to the Defendant's warranties.

264.    On or about March 17, 2022, at least one Plaintiff, through counsel, gave notice to Defendant that outlined Defendant's breaches of the express warranty of the Products as described herein.

265.    Defendant's counsel responded to Plaintiffs' counsel, but ultimately, Defendant failed to take the corrective action requested by Plaintiffs in their correspondence and Plaintiffs were forced to file this action.

266.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and appropriate relief for Beyond Meat's failure to deliver goods conforming to its express warranties and resulting breach.

**FIFTEENTH CAUSE OF ACTION**
**Breach of Implied Warranty**
(On behalf of the Nationwide Class or, in the Alternative, each of the State Classes)

267.    Plaintiffs repeat and re-allege all previous paragraphs, as if fully included herein.

268.    Plaintiffs bring this claim on behalf of themselves and the Nationwide Class, or, in the alternative, on behalf of the State Classes they each represent.

269.    At all times mentioned herein, Beyond Meat manufactured or supplied the Products, and prior to the time the Products were purchased by Plaintiffs and members of the Class, Beyond Meat impliedly warranted to them that the Products were of merchantable quality, fit for their ordinary use. Beyond Meat breached the implied warranties of merchantability by failing to provide merchantable goods because the Products do not contain the %DV of protein advertised, and therefore Plaintiffs are unable to consume the amount of stated %DV of protein. In other words, a person seeking to intake the amount of protein identified on the label by consuming the Products cannot in fact consume the identified amount of protein. Therefore, the Products are not merchantable or fit for their ordinary purposes.

270. Not only did the Products not contain the %DV of protein advertised on the packaging, but they also failed to conform to Beyond Meat's promise that the Products use all-natural ingredients and contain no artificial and/or synthetic ingredients. Plaintiffs and the members of the Class relied on Beyond Meat's labels, promises, and affirmations of fact when they purchased the Products.

271. Beyond Meat breached its implied warranties by selling Products that failed to conform to the promises or affirmations of fact made on the container or label as each product did not contain the %DV of protein advertised on the packaging, in addition to other representations regarding all natural and no artificial or synthetic ingredients.

272. Beyond Meat was on notice of this breach, as it is aware of the protein quantity in the Products, as well as the full list of ingredients used in its Products including methylcellulose.

273. Privity exists because Beyond Meat impliedly warranted to Plaintiffs and the other members of the Class through the warranting, packaging, advertising, marketing, and labeling that the Products contained the %DV of protein advertised on the packaging, are made with all-natural ingredients, were not made with artificial ingredients, and were not made with synthetic ingredients. As alleged herein, the marketing of the Products was uniform, and was controlled and disseminated directly by Defendant. Nonetheless, privity is not required here because Plaintiffs and each of the other Class Members are intended third-party beneficiaries of sales contracts between Beyond Meat and its retailers and/or distributors. The retailers and/or distributors were not intended to be the ultimate consumers of the Products.

274. As a direct and proximate result of Beyond Meat's conduct, Plaintiffs and the other members of the Class have suffered actual damages in that they have purchased Products that are worth less than the price they paid and that they would not have purchased at all had they known of the true nature and quantity of the protein and ingredients in the Products that do not conform to the Products' labels, packaging, advertising, and statements.

275. Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief for Beyond Meat's failure to deliver

goods conforming to their implied warranties and resulting breach.

## SIXTEENTH CAUSE OF ACTION
### Violations of Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*
(On behalf of the Nationwide Class or, in the Alternative, each of the State Classes)

276. Plaintiffs repeat and re-allege all previous paragraphs, as if fully included herein.

277. Plaintiffs bring this claim on behalf of themselves and the Nationwide Class, or, in the alternative, on behalf of the State Classes they each represent.

278. As previously alleged, this Court has original jurisdiction over this matter based upon the requirements of CAFA; therefore, the Court has alternate jurisdiction over Plaintiffs' Magnuson-Moss claim.

279. The Products are consumer products as defined in 15 U.S.C. § 2301(1).

280. Plaintiffs and Class Members are consumers as defined in 15 U.S.C. § 2301(3) and utilized the Products for personal and household use and not for resale or commercial purposes.

281. Plaintiffs purchased the Products costing more than $5 and their individual claims are greater than $25 as required by 15 U.S.C. §§ 2302(e) and 2310(d)(3)(A).

282. Defendant is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5).

283. The federal Magnuson-Moss Warranty Act ("MMWA" or the "Act"), 15 U.S.C. §§ 2301-2312, is a consumer protection regime designed to supplement state warranty law.

284. The MMWA provides a cause of action for breach of warranty, including the violation of express and implied warranty of merchantability, or other violations of the Act. 15 U.S.C. § 2310(d)(1).

285. Defendant has the implied warranties of merchantability by failing to provide merchantable goods. The Products at issue are not merchantable or fit for their ordinary purposes because the Products do not contain the represented DV% amount for protein, thus a person seeking an amount of that protein, cannot consume Defendant's Products to consume the amount of stated protein.

286. Therefore, Defendant's Products are not merchantable or fit for their ordinary

purposes because the %DV in protein/and or amount of protein is underfilled within the Products because a consumer, and Plaintiffs, are not consuming the amount of stated protein and/or stated %DV of protein.

287.    Defendant violated the express warranty because despite claiming certain amounts of protein content and/or %DV of protein, those amounts are not found within the Products.

288.    In its capacity as warrantor, and by the conduct described herein, any attempt by Defendant to limit the warranties in a manner that it does is not permitted by law.

289.    By Defendant's conduct as described herein, Defendant has failed to comply with its obligations under its implied promises, warranties, and representations.

290.    Plaintiffs and the Nationwide Class fulfilled their obligations under the implied warranties and express warranties for the Products.

291.    As a result of Defendant's breach of warranties, Plaintiffs and the Nationwide Class are entitled to revoke their acceptance of the Products, obtain damages, punitive damages, equitable relief, and attorneys' fees and costs pursuant to 15 U.S.C. § 2301.

## SEVENTEENTH CAUSE OF ACTION
### Unjust Enrichment
(On behalf of the Nationwide Class or, in the Alternative, each of the State Classes)

292.    Plaintiffs repeat and re-allege all previous paragraphs, as if fully included herein.

293.    Plaintiffs bring this claim on behalf of themselves and the Nationwide Class, or, in the alternative, on behalf of the State Classes they each represent.

294.    Plaintiffs conferred benefits on Defendant by purchasing the Products at a premium price.

295.    Defendant has knowledge of its receipt of such benefits.

296.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs and Class Members' purchases of the Products.

297.    Defendant's retaining these moneys under these circumstances is unjust and

inequitable because Defendant falsely and misleadingly represented that Products contain a protein amount and/or protein DV% that is not true.

298.     Defendant's misrepresentations have injured Plaintiffs and Class Members because they would not have purchased (or paid a price premium) for the Products had they known the true facts regarding the Products' ingredients.

299.     Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiffs and the other members of the Nationwide Class is unjust and inequitable, Defendant must pay restitution to Plaintiffs and the other members of the Nationwide Class for their unjust enrichment, as ordered by the Court.

**EIGHTEENTH CAUSE OF ACTION**
**Fraudulent Misrepresentation**
(On behalf of the Nationwide Class or, in the Alternative, each of the State Classes)

300.     Plaintiffs repeat and re-allege all previous paragraphs, as if fully included herein.

301.     Plaintiffs bring this claim on behalf of themselves and the Nationwide Class, or, in the alternative, on behalf of the State Classes they each represent.

302.     As set forth above, Beyond Meat falsely represented to Plaintiff and the Class that its Products:

a    contain the %DV of protein advertised on the packaging;

b    are made only from "natural" ingredients;

c    are made without "artificial" ingredients; and

d    are made without "synthetic" ingredients.

303.     Beyond Meat intentionally, knowingly, and recklessly made these misrepresentations to induce Plaintiff and the Class to purchase its Products.

304.     Given that Defendant is a large scale and sophisticated company that has operated in the plant-based meat industry for over a decade with major, national distribution, Defendant tested, or should have tested, the Products prior to sale and therefore knew or should have known

of the Products' protein amount and/or protein DV% amount.

305.    Beyond Meat knew that its representations about the Products were false in that the Products did not contain the %DV of protein advertised on the packaging, did not contain all-natural ingredients, and contained artificial and/or synthetic ingredients. Beyond Meat allowed its packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiffs and the Class.

306.    Plaintiffs and the Class did in fact rely on these misrepresentations and purchased the Products to their detriment. Given the deceptive manner in which Beyond Meat advertised, represented, and otherwise promoted the Products, Plaintiffs' and the Class's reliance on Beyond Meat's misrepresentations was justifiable.

307.    As a direct and proximate result of Beyond Meat's conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Products that were worth less than the price they paid and that they would not have purchased at all had they known of the true nature and quantity of the protein and ingredients in the Products that do not conform to the Products' labels, packaging, advertising, and statements.

308.    Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

### NINETEENTH CAUSE OF ACTION
### Fraud by Omission of a Material Facts
(On behalf of the Nationwide Class or, in the Alternative, each of the State Classes)

309.    Plaintiffs repeat and re-allege all previous paragraphs, as if fully included herein.

310.    Plaintiffs bring this claim on behalf of themselves and the Nationwide Class, or, in the alternative, on behalf of the State Classes they each represent.

311.    Beyond Meat deliberately concealed from and failed to disclose to Plaintiffs and the Class material facts, namely that its Products did not contain the %DV of protein advertised on the packaging, did not contain all-natural ingredients, and contained artificial and/or synthetic

ingredients that do not conform to the Products' labels, packaging, advertising, and statements.

312.    Beyond Meat intended that Plaintiffs and the Class act based on the nondisclosure.

313.    Beyond Meat was under a duty to disclose to Plaintiffs and the Class the true quality, characteristics, ingredients and suitability of the Products because: (1) Beyond Meat was in a superior position to know and had exclusive knowledge of the true state of facts about the Products; (2) Beyond Meat had exclusive knowledge and was in a superior position to know the actual ingredients, characteristics, and suitability of the Products; (3) Beyond Meat knew that Plaintiffs and the Class could not reasonably have been expected to learn or discover that the Products were misrepresented in the packaging, labels, advertising, and websites prior to purchasing the Products; (4) Beyond Meat made misrepresentations that were rendered misleading because they were contradicted by withheld facts; and (5) Beyond Meat had knowledge that the Products could pose safety risks to consumers which relied on the accuracy the Products' protein quality and quantity for their personal health.

314.    The facts concealed or not disclosed by Beyond Meat to Plaintiffs and the Class are material in that a reasonable consumer would have considered them important when deciding whether to purchase the Products.

315.    Plaintiffs and the Class justifiably relied on Beyond Meat's omissions to their detriment. The detriment is evident from the true quality, characteristics, and ingredients of the Products, which is inferior when compared to how the Products are advertised and represented by Beyond Meat.

316.    Plaintiffs and the Class were ignorant of the true facts about the actual ingredients, characteristics, and suitability of the Products, and did not have an equal opportunity to discover them. As a direct and proximate result of Beyond Meat's conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Products that were worth less than the price they paid and that they would not have purchased at all had they known of the true nature and quantity of the protein and ingredients in the Products that do not conform to the Products' labels, packaging, advertising, and statements.

317.    Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## TWENTIETH CAUSE OF ACTION
### Negligent Misrepresentation
(On behalf of the Nationwide Class or, in the Alternative, each of the State Classes)

318.    Plaintiffs repeat and re-allege all previous paragraphs, as if fully included herein.

319.    Plaintiffs bring this claim on behalf of themselves and the Nationwide Class, or, in the alternative, on behalf of the State Classes they each represent.

320.    Beyond Meat had a duty to Plaintiffs and the Class to exercise reasonable and ordinary care in the formulation, testing, manufacture, marketing, distribution, and sale of the Products.

321.    Beyond Meat breached its duty to Plaintiffs and the Class by formulating, testing, manufacturing, advertising, marketing, distributing, and selling Products to Plaintiffs and the Class that do not have the ingredients, qualities, characteristics, and suitability for consumption as advertised by Beyond Meat and by failing to promptly remove the Products from the marketplace or to take other appropriate remedial action.

322.    Beyond Meat knew or should have known that the ingredients, qualities, and characteristics of the Products were not as advertised or suitable for their intended use and were otherwise not as warranted and represented by Beyond Meat. Specifically, Beyond Meat knew or should have known that: (1) the Products did not contain the %DV of protein as advertised on the packaging; (2) the Products did not contain all-natural ingredients, and contained artificial and/or synthetic ingredients because they contained methylcellulose, and/or other ingredients or contaminants that do not conform to the packaging; and (4) the Products were otherwise not as warranted and represented by Beyond Meat.

323.    As a direct and proximate result of Beyond Meat's conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Products that were worth less than the price they paid and that they would not have purchased at all had they known of the true nature and

quantity of the protein and ingredients in the Products that do not conform to the Products' labels, packaging, advertising, and statements.

324.    Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## RELIEF DEMANDED

WHEREFORE, Plaintiffs, individually and on behalf of a Class of all others similarly situated, seek a judgment against Defendant, as follows:

a.   For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as Class representatives and Plaintiffs' attorneys as Class Counsel;

b.   For an order declaring that Defendant's conduct violates the statutes referenced herein;

c.   For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

d.   For compensatory, statutory, and punitive damages, as applicable, in amounts to be determined by the Court and/or jury;

e.   For prejudgment interest on all amounts awarded;

f.   For an order of restitution and all other forms of equitable monetary relief;

g.   For injunctive relief as pleaded or as the Court may deem proper; and

h.   For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees, expenses and costs incurred in bringing this lawsuit.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all claims so triable.

Date: May 3, 2023

Respectfully submitted

*/s/ Nick Suciu III*

Nick Suciu III (Bar ID No. P-72052)
MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN PLLC
6905 Telegraph Road, Suite 115
Bloomfield Hills, Michigan 48301
Telephone: (313) 303-3472
nsuciu@milberg.com

BURSOR & FISHER, P.A.
Frederick J. Klorczyk III
888 Seventh Avenue
New York, NY 10019
Telephone: 646-837-7150
fklorczyk@bursor.com

THE SULTZER LAW GROUP, P.C.
Jason Sultzer
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Telephone: 845-244-55953
sultzerj@thesultzerlawgroup.com

FEGAN SCOTT LLC
Elizabeth A. Fegan
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Telephone: 312-741-1019
beth@feganscott.com

SHUB LAW FIRM LLC
Jonathan Shub
134 Kings Highway E, 2nd Floor
Haddonfield, NJ 08033
Telephone: 856-772-7200
jshub@shublawyers.com

LOCKRIDGE GRINDAL NAUEN P.L.L.P.
Robert K. Shelquist
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: 612-339-6900
rkshelquist@locklaw.com

*Interim Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on May 3, 2023 the foregoing document was filed via the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record.

<i>/s/ Nick Suciu III</i>      <br>
Nick Suciu III