**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In Re: Beyond Meat, Inc., Protein Content Marketing and Sales Practices Litigation | Case No. 1:23-cv-00669 |
| | MDL No. 3059 |
| | Judge Sara L. Ellis |

<u>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED**</u>
<u>**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**</u>

Nick Suciu III
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
6905 Telegraph Road, Suite 115
Bloomfield Hills, Michigan 48301
Telephone: (313) 303-3472
Facsimile: (865) 522-0049
Email: nsuciu@milberg.com

Joel D. Smith
**SMITH KRIVOSHEY, P.C.**
867 Boylston Street
5th Floor, #1520
Boston, MA 02116
Telephone: 617-377-7404
Email: joel@skclassactions.com

Jonathan Shub
**SHUB LAW FIRM LLC**
134 Kings Highway E, 2nd Floor
Haddonfield, New Jersey 08033
Telephone: (856) 772-7200
Facsimile: (856) 210-9088
Email: jshub@shublawyers.com

Elizabeth A. Fegan
**FEGAN SCOTT LLC**
150 South Wacker Drive, 24th Floor
Chicago, Illinois 60606
Telephone: (312) 741-1019
Facsimile: (312) 264-0100
Email: beth@feganscott.com

Jason P. Sultzer
**THE SULTZER LAW GROUP P.C.**
85 Civic Center Plaza, Suite 200
Poughkeepsie, New York 12601
Telephone: (845) 483-7100
Facsimile: (888) 749-7747
Email: sultzerj@thesultzerlawgroup.com

Robert K. Shelquist
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Ave. S, Suite 2200
Minneapolis, Minnesota 55401
Mobile: (612) 991-2934
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
Email: rkshelquist@locklaw.com

*Co-Lead Counsel for Plaintiffs and the Class*

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ............................................................................................................. 1

II.  SUMMARY OF THE ACTION ........................................................................................ 2

   A.  Litigation History........................................................................................................ 2

   B.  Discovery and Settlement Negotiations .................................................................... 4

III. MATERIAL TERMS OF THE SETTLEMENT ............................................................. 4

   A.  Class Definition .......................................................................................................... 4

   B.  Monetary Relief ......................................................................................................... 5

   C.  Release ........................................................................................................................ 6

   D.  Notice and Other Administrative Costs .................................................................... 6

   E.  Service Awards .......................................................................................................... 7

   F.  Attorneys' Fees and Costs ......................................................................................... 7

IV. ARGUMENT .................................................................................................................... 7

   A.  Conditional Certification of The Rule 23 Class is Appropriate............................... 7

     1.  The Proposed Settlement Class Meets the Requirements of Rule 23(a) ........................ 8

     2.  The Proposed Settlement Class meets the Requirements of Rule 23(b)(3) ................. 10

   B.  Preliminary Approval of The Settlement is Appropriate ...................................... 11

     1.  The *Wong* Factors ................................................................................................. 12

     2.  The Rule 23(e)(2) Factors .................................................................................... 18

   C.  THE PROPOSED NOTICE PLAN SHOULD BE APPROVED.................................... 23

     1.  The Content of the Proposed Class Notice Complies With Rule 23(C)(2) ................. 23

     2.  The Plan for Distribution of the Class Notice Will Comply with Rule 23(C)(2)......... 24

V.  CONCLUSION.............................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
  2011 WL 3290302 (N.D. Ill. July 26, 2011).......................................................................... 17

*Amchem Prods. Inc. v. Windsor*,
  521 U.S. 591 (1997).......................................................................................................... 8, 24

*Armstrong v. Bd. of Sch. Dirs. of Milwaukee*,
  616 F.2d 305 (7th Cir. 1980) ............................................................................................... 11

*Armstrong v. Kimberly-Clark Corp.*,
  2024 WL 1123034 (N.D. Tex. Mar. 14, 2024) .................................................................... 15

*Arnold v. Fitflop USA, LLC*,
  2014 WL 1670133 (S.D. Cal. Apr. 28, 2014) ...................................................................... 25

*Cagan v. Anchor Sav. Bank FSB*,
  1990 WL 73423 (E.D.N.Y. May 22, 1990) ......................................................................... 15

*Chambers v. Together Credit Union*,
  2021 WL 1948453 (S.D. Ill. May 14, 2021)........................................................................ 13

*Charvat v. Valente*,
  2019 WL 5576932 (N.D. Ill. Oct. 28, 2019)............................................................. 8, 16, 21

*Clay et al. v. Cytosport, Inc.*,
  No. 3:15-cv-00165-L-AGS (S.D. Cal.).................................................................................. 14

*Copley v. Bactolac Pharm., Inc.*,
  2023 WL 2470683 (E.D.N.Y. Mar. 13, 2023) ....................................................................... 2

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) ............................................................................................. 16

*Czuchaj v. Conair Corp.*,
  2016 WL 1240391 (S.D. Cal. March 30, 2016).................................................................... 19

*Felzen v. Andreas*,
  134 F.3d 873 (7th Cir. 1998) ............................................................................................... 11

*Gehrich v. Chase Bank USA, N.A.*,
  316 F.R.D. 215 (N.D. Ill. 2016)........................................................................................... 15

ii

*Gen. Tel. Co. of the Sw. v. Falcon*,
　457 U.S. 147 (1982) ..................................................................................... 11

*Haynes v. Logan Furniture Mart, Inc.*,
　503 F.2d 1161 (7th Cir. 1974) ..................................................................... 11

*Hester v. Vision Airlines, Inc.*,
　2017 WL 4227928 (D. Nev. Sept. 22, 2017) ............................................... 20

*In re AT&T Mobility Wireless Data Services Sales Litig.*,
　270 F.R.D. 330 (N.D. Ill. Aug. 11, 2010 ..................................................... 13

*In re Mexico Money Transfer Litig.*,
　164 F. Supp. 2d 1002 (N.D. Ill. 2000) ......................................................... 17

*In re Omnivision Techs., Inc.*,
　559 F. Supp. 2d 1036 (N.D. Cal. 2008 ........................................................ 22

*In re Southwest Airlines Voucher Litig.*,
　2013 WL 4510197 (N.D. Ill. Aug. 26, 2013) ............................................... 13

*In re TikTok, Inc., Consumer Priv. Litig.*,
　565 F. Supp. 3d 1076 (N.D. Ill. 2021) ("*In re TikTok*") ........................... 9, 19

*In re Warner Chilcott Ltd. Sec. Litig.*,
　2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ............................................. 16

*Isby v. Bayh*,
　75 F.3d 1191 (7th Cir. 1996) ................................................................. 11, 17

*Kolinek v. Walgreen Co.*,
　311 F.R.D. 483 (N.D. Ill. 2015) ........................................................ 9, 20, 21

*McCabe v. Crawford & Co.*,
　210 F.R.D. 631 (N.D. Ill. 2002) ..................................................................... 8

*Pappas v. Naked Juice Co of Glendora, Inc.*,
　2014 WL 12382279 (C.D. Cal. Jan. 2, 2014) .............................................. 25

*Patellos v. Hello Products, LLC*,
　2022 WL 2159566 (S.D.N.Y. June 15, 2022) .............................................. 22

*Rebney v. Wells Fargo Bank*,
　220 Cal. App. 3d 1117 (1990) ..................................................................... 19

*Smith v. Sprint Commc'ns Co., L.P.*,
　387 F.3d 612 (7th Cir. 2004) ................................................................. 11, 16

iii

*Snyder v. Ocwen Loan Serv., LLC*,
   2019 WL 2103379 (N.D. Ill. May 14, 2019) ...................................................................... 17

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ............................................................................................. 21

*Synder v. Ocwen Loan Serv., LLC*,
   2018 WL 4659274 (N.D. Ill. Sept. 28, 2018) ........................................................ 12, 18, 19

*Synfuel Techs, Inc. v. DHL Express (USA), Inc.*,
   463 F.3d 646 (7th Cir. 2006) ....................................................................................... 12, 17

*T.K. Through Leshore v. Bytedance Tech. Co.*,
   2022 WL 888943 (N.D. Ill. Mar. 25, 2022) .......................................................... 10, 12, 22

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ............................................................................................................ 9

*Weeks v. Kellogg Co.*,
   2013 WL 6531177 (C.D. Cal. Nov. 23, 2013) ................................................................... 24

*Werdebaugh v. Blue Diamond Growers*,
   2014 WL 7148923 (N.D. Cal. Dec. 15, 2014) ................................................................... 19

*Wilson v. Airborne, Inc.*,
   2008 WL 3854963 (C.D. Cal. Aug. 13, 2008) ................................................................... 25

*Wong v. Accretive Health, Inc.*,
   773 F.3d 859 (7th Cir. 2014) ............................................................................................. 12

**Statutes**

28 U.S.C. § 1407 ......................................................................................................................... 2

California's Unfair Competition Law, Cal. Bus. & Profs. Code § 17200 ..................................... 3

Class Action Fairness Act, 28 U.S.C. § 1715 .......................................................................... 25

Colorado's Consumer Protection Act, Colo. Rev. Stat. Ann. § 6-1-101 ...................................... 3

Consumer Legal Remedies Act, Cal. Civ. Code § 1750 ............................................................. 3

Florida's Unfair & Deceptive Trade Practices Act, Fla. Stat. § 501.201 ...................................... 3

Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 ............................................... 3

Illinois's Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 ................... 3

Iowa's Private Right of Action for Consumer Frauds Act, Iowa Code § 714H ............................ 3

iv

Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 ........................................................ 3

Mass. Gen. Laws Chapter 93A, § 2; .......................................................................... 3

New York General Business Law § 349 ...................................................................... 3

New York General Business Law § 350 ...................................................................... 3

Texas's Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann. §
17.01, .................................................................................................................... 3

**Other Authorities**

Brian T. Fitzpatrick, *The Conservative Case For Class Actions* at Chapter 8 (2019) ................... 2

Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist and Plain
Language Guide ................................................................................................... 25

Laurence Darmiento, HOW BEYOND MEAT IS TRYING TO GET ITS SIZZLE BACK, Los Angeles
Times (May 31, 2024) ............................................................................................ 15

**Rules**

Fed. R. Civ. P. 23 ............................................................................................. passim

**Treatises**

NEWBERG ON CLASS ACTIONS (4th ed. 2002) ("NEWBERG") .......................................... 11, 18, 20

2972080.2

Pursuant to Federal Rule of Civil Procedure 23(e), Plaintiffs Angelique Roberts, Hannah Offutt, Dylan Rushing, Orlandra Hawthorne, Nisha Albert, Adam Sorkin, Dartisha Anderson, Christine Borovoy, Todd Miller, Richard D. Garcia, Erica Nichols Cook, Jennifer Speer, Rosemarie Ramirez, Mary Yoon, Christopher Bates, and Stan Zakinov (collectively "Plaintiffs") respectfully submit this Memorandum in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. The Settlement Agreement ("Settlement") and its exhibits are attached as Exhibit B to the Declaration of Nick Suciu III ("Suciu Decl.").[1]

## I.  INTRODUCTION

After years of contentious litigation, the Parties have reached a proposed Settlement that would provide immediate, certain, and substantial relief to Settlement Class Members. Specifically, the proposed $7.5 million non-reversionary common fund provides a partial refund to all participating Settlement Class Members, based on the number of products they purchased and whether they have proof of purchase. This is as good a result as the Settlement Class could have hoped for at trial, but comes sooner and avoids the significant risks of the continued litigation of a complex class action. The Settlement is also in line with the relief provided by other settlements in this District, and elsewhere, involving alleged deception and product mislabeling.

The proposed Settlement is the result of lengthy negotiations conducted with the assistance of an experienced mediator, the Honorable Wayne R. Andersen (Ret.). It was negotiated after the relevant cases had been transferred to this Court, pursuant to an order by the United States Judicial Panel on Multidistrict Litigation (ECF No. 1), Interim Class Counsel was appointed (ECF No. 9), a Consolidated Complaint was filed (ECF No. 12), and Defendant Beyond Meat Inc.'s ("Beyond Meat" or "Defendant") Motion to Dismiss was decided (ECF No. 29). If approved, the Settlement

---

[1] Capitalized terms will have the same meaning as defined in the Settlement Agreement.

1

will end to what has otherwise been, and likely would continue to be, a contentious litigation.

Another significant factor warranting preliminary approval is the social benefit for consumers. Because settlements like these require companies to pay millions of dollars that ultimately impacts profitability, it deters corporations from promoting their products with false and misleading labeling. *See* Brian T. Fitzpatrick, *The Conservative Case For Class Actions* at Chapter 8 (2019); *see also Copley v. Bactolac Pharm., Inc.*, 2023 WL 2470683, at *10 (E.D.N.Y. Mar. 13, 2023) ("Presumably, the class settlement will incentivize Defendants to be more vigilant about the safety and cleanliness of their product in the future, and others in their industry will be encouraged to do the same."). Accordingly, Plaintiffs request that the Court grant class certification for settlement purposes, preliminarily approve the Settlement, order that Class Notice be disseminated, and schedule a final approval hearing.

## II.     SUMMARY OF THE ACTION

### A.     <u>Litigation History</u>

This proposed class action arises from Beyond Meat's alleged mislabeling of the Beyond Meat Products. A number of the Plaintiffs filed their initial complaint in May of 2022 on behalf of consumers who purchased the Beyond Meat Products at issue during the relevant class period, predominantly from retail stores located in Illinois, Massachusetts, and New York. *Roberts et. al vs. Beyond Meat, Inc.*, No. 1:22-cv-02861 (N.D. Ill.), ECF No. 1. Additional cases were subsequently filed, and Defendant moved to centralize this litigation in the Northern District of Illinois under 28 U.S.C. § 1407.

On February 2, 2023, the United States Judicial Panel on Multidistrict Litigation transferred the cases to the Northern District of Illinois and assigned them to this Court for

2

coordinated or consolidated pretrial proceedings.[2] ECF No. 1. Plaintiffs in the consolidated MDL are residents and citizens of California, Colorado, Florida, Illinois, Iowa, New York, Massachusetts, and Texas. Consolidated Complaint, ECF No. 12.

Plaintiffs filed their Consolidated Class Action Complaint on May 3, 2023, alleging Defendant violated state consumer fraud statutes; California's Consumer Legal Remedies Act, California Civil Code §§ 1750, *et seq*. ("CLRA"); California's False Advertising Law, California Business & Professions Code §§ 17500, *et seq*. ("FAL"); California's Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq*. ("UCL"); Illinois's Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq*.; Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1, *et seq*.; Mass. Gen. Laws Chapter 93A, § 2; New York General Business Law § 349 and § 350; Iowa's Private Right of Action for Consumer Frauds Act, Iowa Code § 714H; Texas's Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.01, *et seq*.; Colorado's Consumer Protection Act, Colo. Rev. Stat. Ann. §§ 6-1-101, *et seq*.; Florida's Unfair & Deceptive Trade Practices Act, Fla. Stat. § 501.201, *et seq*.; breached its express and implied warranties; and violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq. Id.* Plaintiffs also sought claims for unjust enrichment, fraudulent misrepresentation, fraud by omission, and negligent misrepresentation. *Id.*

Defendant filed a motion to dismiss Plaintiffs' claims on June 5, 2023. ECF No. 16. After the parties fully briefed the motion, on February 21, 2024, the Court granted the motion in part

---

[2] The consolidated cases include: *Roberts, et al. v. Beyond Meat, Inc*., C.A. No. 1:22−02861 (N.D. Ill.); *Borovoy v. Beyond Meat, Inc*., C.A. No. 1:22−06302 (N.D. Ill.); *Garcia, et al. v. Beyond Meat, Inc*., No. 4:22−00297 (S.D. Iowa); *Cascio v. Beyond Meat, Inc*., No. 2:22−04018 (E.D.N.Y.); *Miller v. Beyond Meat, Inc*., No. 1:22−06336 (S.D.N.Y.); and *Zakinov v. Beyond Meat, Inc.*, No. 4:23-cv-00144 (S.D. Tex.).

and denied it in part, dismissing Plaintiffs' claims for injunctive relief and their front-of-label protein misrepresentation claims. ECF No. 29. Following the Court's opinion and order, Plaintiffs' surviving claims, individually and on behalf of ten (10) proposed classes, include violation of the Magnusson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*., violation of various state consumer fraud acts, breach of express and implied warranty, negligent misrepresentation, and unjust enrichment for the alleged misrepresentation of the "percent daily value" of protein on the Beyond Meat Products' back label.

**B.**     **Discovery and Settlement Negotiations**

The parties have broached settlement in this case multiple times. *See* Suciu Decl. ¶¶ 15-19. Indeed, Plaintiffs entered direct negotiations and later engaged Judge Andersen twice for mediation, without coming to an agreement. *Id.* Over the course of their settlement discussions, the parties exchanged informal discovery, including sales information. *Id.* Class Counsel also examined publicly available financial information from Defendant's quarterly and annual Financial Reports. *Id.* ¶ 11. Such sales data was combined with Plaintiffs' protein testing to determine the estimated damages in this case. *Id.* ¶¶ 11-14. Plaintiffs' settlement position was further informed by initial reporting from Plaintiffs' damages expert. *Id.* ¶¶ 13.

It was only after several weeks of negotiation, following the second mediation on April 24, 2024, that the parties were able to come to an agreement. *Id.* ¶¶ 15-19. The parties signed a Term Sheet on May 6, 2024 and finalized their Settlement Agreement on July 8, 2024. *Id.* ¶¶ 19.

### III.     MATERIAL TERMS OF THE SETTLEMENT

**A.**     **Class Definition**

The Settlement Class includes:

All persons (individuals and/or entities) who purchased any Beyond Meat Product for household use and not for resale or distribution, from May 31, 2018 to and including the date of the Preliminary Approval Order.

2972080.2

*Id*. at § III(A). Excluded from the Settlement Class are: (i) Beyond Meat and its officers, directors, and employees; and Beyond Meat's corporate affiliates and corporate affiliates' officers, directors, counsel, and employees; (ii) Class Counsel; (iii) the judges who have presided over the Action; and (iv) all other persons who timely elect to become Opt-Outs from the Settlement Class in accordance with the Court's Orders. *Id*.

**B.     Monetary Relief**

Beyond Meat will contribute $7,500,000 to a "Settlement Fund" in full satisfaction of all Settlement costs, including all payments to Settlement Class Members, Notice and Administrative Costs, Attorneys' Fees and Expenses, Settlement Class representative Service Awards and taxes. *Id.* § IV(A). Notably, under the Settlement Agreement, Settlement Class Members will be entitled to seek benefits whether or not they are able to provide proof that they purchased the products. *Id.* § IV(C). If the Settlement Class Member does not have a proof of purchase, the Settlement Class Member can recover $2 per Beyond Meat Product, subject to a cap of five (5) products per household. *Id*. Where a Settlement Class Member can and does provide proof of purchase, the Settlement Class Member can recover $2 per Beyond Meat Product, without any cap. *Id.* In the event that the total claims made exceed the Net Settlement Fund after paying the Notice and Administrative Costs, Attorneys' Fees and Expenses, and Service Awards, then the individual class benefit will be reduced *pro rata*. *Id.* § IV(D). Similarly, if the total claims are less than the Net Settlement Fund, the remaining amount will be distributed to participating Settlement Class Members. *Id.* At no point will any of the Settlement Fund revert to Defendant. *Id.* § IV(M).

To receive a cash payment, Settlement Class Members must file a timely and valid Claim Form. *Id.* § IV(D), *see also id.* Ex. 1 (the claims form). The Claim Form may be completed either online or by mail and must provide the number of Beyond Meat Product(s) purchased, along with

any proof of purchase. *Id*. The Settlement Administrator will be responsible for reviewing all claims to determine their validity. *Id.* § IV(H).

## C.     <u>Release</u>

In exchange for the Settlement Benefits, Class Members will release:

> any and all claims, demands, suits, petitions, liabilities, causes of action, rights, and damages of any kind and/or type regarding the subject matter of the Action, including, but not limited to, compensatory, exemplary, punitive, expert and/or attorneys' fees or by multipliers, whether past, present, or future, mature, or not yet mature, known or unknown, suspected or unsuspected, contingent or non-contingent, derivative or direct, asserted or un-asserted, whether based on federal, state or local law, statute, ordinance, regulation, code, contract, common law, or any other source, or any claim of any kind related arising from, related to, connected with, and/or in any way involving the Action, and the marketing, sale, or manufacture of Beyond Meat Product by Beyond Meat during the Class Period, in any manner that were, or could have been, asserted in the Action or any amendments of the Action.

*Id*. § II(A)(37). "Settlements of this breadth are common and unobjectionable." *Rangel v. PLS Check Cashers of California, Inc*., 899 F.3d 1106, 1110–11 (9th Cir. 2018) (affirming dismissal of released claims that were or "could have been pled based on the factual allegations" in settled class action).

## D.     <u>Notice and Other Administrative Costs</u>

Class Counsel has worked to ensure that notice is the best practicable, and reasonably calculated to apprise interested parties of the action so that they may make a claim, state their objection, or exclude themselves from the settlement. *Id*. § VI. Notice publications will include a website as well as a Media Plan tailored to maximize reach. *Id.* §§ VI(D)(1)-(2). All published notice will provide a link to the Settlement Website, where individuals can access a Long Form Notice describing the case and settlement, the Settlement Agreement, and other important documents and court filings including the Complaint, Preliminary Approval Order, and, when filed, the Final Approval Order. *Id*. § VI(D)(1). The Settlement Website will also allow individuals

to download and submit the Claim Form, opt out of the class, and access contact information for Class Counsel. *Id.*

In addition, the Settlement Administrator will (1) maintain a toll-free number that Class Members can use to request a copy of the Settlement Agreement, a claims form, and obtain any other information concerning the Settlement; (2) process and record timely requests to be excluded from the Settlement; and (3) serve notice of the Settlement on the appropriate state and federal officials pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715. *Id*. §§ VI(C), (D)(3), VII(B).

Class members will have one hundred and eighty (180) days to submit a claim and forty-five (45) days to object or exclude themselves from the Settlement Class following the Notice Date. *Id*. §§ II(A)(9), (30).

**E.    Service Awards**

As part of the Settlement Agreement, Plaintiffs may seek a Service Award to each of the named Plaintiffs in the amount of $2,500. *Id*. § V(B).

**F.    Attorneys' Fees and Costs**

As is customary in common fund cases, Plaintiffs intend to seek reimbursement of their costs and attorneys' fees in an amount not to exceed 33 and 1/3 percent of the total Settlement Amount (or approximately $2,500,000). *Id*. § V(A); Suciu Decl. ¶ 32. However, the Settlement is not contingent on any attorneys' fees or cost award. Settlement Agreement, § V(C).

## IV.    ARGUMENT

**A.    Conditional Certification of The Rule 23 Class is Appropriate**

As an initial matter, Plaintiffs seek certification of the Settlement Class for purpose of the Settlement. While certification of a settlement class is less rigorous than the certification of a class

for trial,[3] "settlement-only actions cannot evade the requirements of Rule 23." *Charvat v. Valente*, 2019 WL 5576932, at *2 (N.D. Ill. Oct. 28, 2019) (cleaned up). Under Fed. R. Civ. P. 23(a), a class action may be maintained if all of the prongs of Fed. R. Civ. P. 23(a) are met, as well as one of the prongs of Fed. R. Civ. P. 23(b). Fed. R. Civ. P. 23(a) requires that:

> (1) the class is so numerous that joinder of all members is impracticable;

> (2) there are questions of law or fact common to the class;

> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). As relevant here, Fed. R. Civ. P. 23(b)(3) requires the Court to find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

1.     <u>The Proposed Settlement Class Meets the Requirements of Rule 23(a)</u>

a.     *<u>Numerosity</u>*

"Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient to satisfy Rule 23(a)(1)." *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002). Here, the Settlement Class includes millions of Beyond Meat Products purchasers. Suciu Decl. ¶ 23. Numerosity is therefore met.

b.     *<u>Commonality</u>*

To establish commonality, class members must have "suffered the same injury" that

---

[3] *See, e.g., Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems.").

"depend[s] upon a common contention." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Id.* at 359 (cleaned up). Here, common questions include, but are not limited to, whether Defendant's protein content labeling is false and misleading, whether Defendant knowingly made misleading statements in connection with consumer transactions that reasonable consumers were likely to rely upon to their detriment, whether Defendant's acts and omissions violate state consumer protection statutes, and whether Plaintiffs and Settlement Class Members received the benefit of the bargain when purchasing the Beyond Meat Products. Thus, commonality is met because the "claims of all class members depend on the resolution of [] key common question[s]." *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 491 (N.D. Ill. 2015) (Kennelly, J.).

c.     <em><u>Typicality</u></em>

"Typicality is satisfied when the named plaintiff's claim and those of the class members have a common legal theory, even if there are some factual variations." *Id*. Here, Plaintiffs' claims, legal theories, and evidence are identical to those of other Settlement Class Members. Plaintiffs, like all members of the Settlement Class, purchased Beyond Meat Products during the Class Period and suffered damages as a result of Defendant's allegedly false and misleading conduct. Consolidated Class Action Complaint, ECF No. 12, ¶¶ 8-11. Accordingly, typicality is satisfied.

d.     <em><u>Adequacy</u></em>

Adequacy has two components: (1) "the representatives must not possess interests which are antagonistic to the interests of the class," and (2) "the representatives' counsel must be qualified, experienced and generally able to conduct the proposed litigation." *In re TikTok, Inc., Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1085 (N.D. Ill. 2021) ("*In re TikTok*") (cleaned up).

*First*, Plaintiffs' interests are coextensive with those of the Settlement Class and they are willing and able to represent the interests of the Class. Like all members of the Settlement Class,

9

Plaintiffs have claims against Defendant in connection with their purchase of Beyond Meat Products during the Class Period. Plaintiffs, like all members of the Settlement Class, were also allegedly injured by Defendant's allegedly wrongful acts. Proof of Plaintiffs' claims would necessarily involve adjudicating the same issues of law and fact as the claims of the Settlement Class as a whole. Thus, Plaintiffs and the Settlement Class they seek to represent have the same interests in recovering damages allegedly caused by Defendant's wrongful conduct.

*Second*, as noted above, Class Counsel is more than qualified to represent the Settlement Class. Argument § I.A.5, *supra*; *see also* Suciu Decl. Ex. A (firm resumes). Indeed, the undersigned counsel had already been appointed as Interim Class Counsel (ECF No. 9). Class Counsel has devoted substantial resources to the prosecution of this action by investigating Plaintiffs' claims and those of the Settlement Class, aggressively pursuing those claims, largely defeating a motion to dismiss, arguing before the JPML, conducting discovery, participating in a mediation, and ultimately, negotiating a favorable class action settlement. Suciu Decl. ¶¶ 4-19.

    2.    <u>The Proposed Settlement Class meets the Requirements of Rule 23(b)(3)</u>

Rule 23(b)(3) requires that common questions of law "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Both predominance and superiority are met here.

    a.    *<u>Predominance</u>*

"A class satisfies the predominance requirement when common questions represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication." *T.K. Through Leshore v. Bytedance Tech. Co.*, 2022 WL 888943, at *10 (N.D. Ill. Mar. 25, 2022). "A question becomes a common question when the same evidence will suffice for each member to make a *prima facie* showing." *Id.* (cleaned up). This requirement is met here because each

2972080.2

Settlement Class Members' claims depend on a showing that Defendant mislabeled its Products with false and misleading protein claims. Proving these elements will depend on the exact same evidence for each Settlement Class Member. Thus, the "predominance" requirement is satisfied.[4]

        b.    *Superiority*

The requirement of superiority also is met because, given the relatively modest amounts that Settlement Class Members would stand to recover in individual actions, it is improbable that many "would possess the initiative to litigate individually." *See Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974). Further, the resolution of the claims of all Settlement Class Members in a single proceeding promotes judicial efficiency and avoids inconsistent decisions. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (noting "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23").

**B.**    **Preliminary Approval of The Settlement is Appropriate**

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ("NEWBERG") ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). At the preliminary approval stage, the Court's task is to "determine whether the proposed settlement is within the range of possible approval." *Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) (cleaned up), *overruled on other grounds*, *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). To make this determination, courts in the Seventh Circuit

---

[4] Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *Smith v. Sprint Commc'ns Co., L.P.*, 387 F.3d 612, 614 (7th Cir. 2004) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.") (cleaned up).

2972080.2

consider the six factors set forth in *Wong v. Accretive Health, Inc.*, 773 F.3d 859 (7th Cir. 2014). The *Wong* factors are: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." *Id.* at 863.

Courts also consider four factors set forth in the new version of [Fed. R. Civ. P.] 23(e)(2), in addition to the six *Wong* factors. *Synder v. Ocwen Loan Serv., LLC*, 2018 WL 4659274, at *3 (N.D. Ill. Sept. 28, 2018) (Kennelly, J.). The Rule 23(e) factors are whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(A)-(D). The *Wong* and Rule 23(e)(2) factors may overlap or be "duplicative." *See T.K. Through Leshore*, 2022 WL 888943, at *10.

1.  The *Wong* Factors

    a.  *Wong Factor 1: The Settlement Amount is Reasonable in Light of the Strengths and Weaknesses of the Plaintiffs' Case*

"The most important factor relevant to the fairness of a class action settlement is … the strength of the plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel Techs, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) ("*Synfuel*") (cleaned up). "Because the essence of settlement is compromise, courts should not reject a

settlement solely because it does not provide a complete victory to the plaintiffs." *In re AT&T Mobility Wireless Data Services Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. Aug. 11, 2010) (citations omitted).

Although Plaintiffs remain confident in their claims against Beyond Meat, the Settlement provides immediate and significant recovery for the Settlement Class and obviates substantial risks. *In re Southwest Airlines Voucher Litig.*, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) ("In considering the strength of plaintiffs' case, legal uncertainties at the time of settlement favor approval."). *First*, although a number of Plaintiffs' allegations survived Defendant's motion to dismiss, the Court also dismissed several of Plaintiffs' claims, including Plaintiffs' front-of-label claims and claims for injunctive relief. *See* Opinion and Order (ECF No. 29). *Second*, Defendant could present evidence at summary judgment or trial that the Beyond Meat Products did in fact contain the advertised levels of protein. And *third*, Defendant would present a vigorous defense to class certification, including likely moving for decertification or for appellate review under Fed. R. Civ. P. 23(f) if class certification is granted. *Id*. This presents the significant risk that Plaintiffs and class members would recover nothing if the case were to proceed.

By contrast, the Settlement provides a substantial refund to Settlement Class Members with or without proof of purchase. Settlement Agreement § IV(C). The Settlement also includes Settlement Class Members located anywhere in the United States (*id.* § III(A)), whereas Defendant would have argued at class certification that, at best, only consumers in states represented by Class Representatives could be included in a certified class. Suciu Decl. ¶ 25. Thus, notwithstanding the substantial risks and uncertainty present in this case, the Settlement provides Settlement Class Members as good a result on an individual basis as they could have hoped for at trial. *Chambers v. Together Credit Union*, 2021 WL 1948453, at *3 (S.D. Ill. May 14, 2021) ("Defendants'

13

settlement offer is significant, estimated to be nearly 60% of the potential damages the Class would have obtained had they prevailed on every issue all the way through trial and appeal.").

Against these risks, Plaintiffs' proposed settlement achieves excellent results: the very monetary relief for the misrepresentations alleged. For each Beyond Meat Product purchased, Settlement Class Member will receive a $2 refund. Settlement Agreement § IV(C). When the amount of individual recovery under the Settlement is compared to the amount that could have been recovered at trial, it represents considerable value. While Plaintiffs have not conducted expert discovery in this case, Plaintiffs have retained a consulting expert to estimate the price premium resulting from the "percent daily value" protein claims. Suciu Decl. ¶ 13. Based on initial work, Plaintiffs estimate that this price premium would be about 18 percent of the Beyond Meat Products' price (or about $1.20). *Id.* (Plaintiffs estimate the average retail price of a unit sold by Defendant is $6.69). This is in line with counsel's past experiences in litigating protein claims. Indeed, in a previous mislabeling case litigated by Class Counsel, involving the overstatement of the protein content of a protein drink, expert discovery was able to estimate that missing protein would be approximately 6 cents per gram of missing protein. Suciu Decl. ¶ 13; *see also Clay et al. v. Cytosport, Inc.*, No. 3:15-cv-00165-L-AGS (S.D. Cal.), ECF No. 157-7 (Declaration of Dr. Jeffrey Harris) at ¶¶ 18, 23. Given that Plaintiffs' testing indicated that Defendant overstated the Beyond Meat Products' protein content by between one and three grams of protein, the "front-of-the-label" claims are worth between $0.06 and $0.24. Suciu Decl. ¶ 13. Accordingly, the individual relief under the Settlement may exceed what could have been achieved at trial. This is an excellent result for the Settlement Class.

Moreover, on the aggregate level, the overall Settlement Class recovery is approximately

2.4% of the total liability in the case (Suciu Decl. ¶ 14[5]), which is also within the range of reasonableness. *Cagan v. Anchor Sav. Bank FSB*, 1990 WL 73423 at *12–13 (E.D.N.Y. May 22, 1990) (approving $2.3 million settlement over objections that "best possible recovery would be approximately $121 million"). Here, any expectations regarding an oversized aggregate damages award have to be tempered by the realities of the case. First, such a recovery represents a victory where Plaintiffs recover on behalf of a national class, and recovered the maximum amount of damages based on Plaintiffs' initial estimates. This is unlikely. Moreover, Beyond Meat is subject to slacking demand and revenue, leading to a 90 percent drop in their stock price from its high in 2019. *See* Laurence Darmiento, How Beyond Meat is Trying to get its Sizzle Back, Los Angeles Times (May 31, 2024) (available at https://www.latimes.com/business/ story/2024-05-31/how-beyond-meat-lost-some-of-its-sizzle). This has led to concerns regarding the solvency of the company. *Id.* ("The sales decline has taken a sharp financial toll, with the company's cash position falling from $733 million in 2021 to $190 million last year. That prompted TD Cowen in a May earnings note to say the company may run out of money if it can't stem the bleeding or raise funds — an outcome [Beyond Meat] dismisses."). A large judgment may only create an avenue of "recovery that must be chased through the bankruptcy courts." *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016).

Here, participating Settlement Class Members are being made completely whole, receiving more than what they could expect after trial. Such settlements are inherently reasonable. *Armstrong v. Kimberly-Clark Corp.*, 2024 WL 1123034, at *5 (N.D. Tex. Mar. 14, 2024).

      b.      <u>*Wong Factor 2: Further Litigation Would be Complex, Costly, and Long*</u>

Preliminary approval is also favored because "[s]ettlement allows the class to avoid the

---

[5] $7,500,000 Settlement Funds/$319,342,260 in potential damages.

inherent risk, complexity, time, and cost associated with continued litigation." *Schulte*, 805 F. Supp. 2d at 586. Proceeding to trial likely would take years and entail extensive fact and expert discovery and motion practice, including, in all probability, a contested motion to certify the class and motions for summary judgment. *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("[C]lass action suits have a well-deserved reputation as being most complex."). Indeed, the litigation is already two years old and has encompassed several rounds of pleading and motion to dismiss briefing, informal discovery, and even a petition to the Judicial Panel on Multidistrict Litigation. *See* Summary of the Action § I, *supra*.

Rather than embarking on years of protracted and uncertain litigation, Plaintiffs and their counsel took advantage of the opportunity to negotiate a Settlement that provides immediate, certain, and total relief to participating Settlement Class Members. *See Schulte*, 805 F. Supp. 2d at 586. The immediacy and certainty of a recovery, when balanced against the significant costs, risks, and delay of proceeding with this litigation, weigh in favor of settlement. *Charvat*, 2019 WL 5576932, at *7 ("Given the course of this litigation … any relief to class members would still be far down the road and may ultimately be entirely denied. Approving the proposed settlement agreement will end the case and cause benefits to flow in short order.").

      c.     *Wong Factors 3–4: The Amount Of Opposition To The Settlement And The Reaction Of The Class (Wong Factors 3-4)*

Because "no notice has been sent, consideration of [the reaction of the class] is premature." *In re Warner Chilcott Ltd. Sec. Litig.*, 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008). Further, Plaintiffs are unaware of any particular opposition to the Settlement.

      d.     *Wong Factor 5: Experienced And Competent Counsel Endorse The Settlement*

In assessing the qualifications of counsel under this factor, a court may rely upon affidavits submitted by class counsel as well as its own observations of class counsel during the litigation.

2972080.2

*Isby*, 75 F.3d at 1200. As is evident from their firm resumes, Class Counsel is highly experienced in class actions, especially those concerning contaminated products. Suciu Decl. Ex. A (firm resumes). Indeed, several of Class Counsel had negotiated numerous consumer deception class settlements, all of which have been granted final approval. Class Counsel's endorsement of this Settlement supports preliminary approval. *Snyder v. Ocwen Loan Serv., LLC*, 2019 WL 2103379, at *6 (N.D. Ill. May 14, 2019) ("Class counsel are experienced members of the plaintiff's consumer class action bar. They favor the settlement, and this is a factor supporting approval of the amended settlement."); *see also In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000) (placing "significant weight on the … strong endorsement of [this] settlement" by "well-respected" attorneys).

e.   *Wong Factor 6: Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case*

The last factor concerns the stage of the proceedings and amount of discovery completed at the time the settlement is reached. *Synfuel*, 463 F.3d at 653. This factor "indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 2011 WL 3290302 (N.D. Ill. July 26, 2011) (cleaned up).

Here, Class Counsel extensively litigated this case through motion to dismiss, rounds of pleadings, and a JPML hearing. *See* Summary Of The Action § I, *supra*. Class Counsel also exchanged and reviewed significant informal discovery prior to the mediation, which allowed the parties to assess the strengths of their positions and attack each other's potential weaknesses. *Id.* ¶ 12. Further, during the mediation, Judge Andersen engaged in a critical analysis of the parties' arguments. Suciu Decl. ¶¶ 17-18. Accordingly, "[t]hough a lot of work remains to be done if the case is not settled, much has been done already," and Plaintiffs and their counsel had "sufficient information via discovery and otherwise to enable them to evaluate the merits of the case." *Synder*,

17

2019 WL 2103379, at *6. This factor weighs in favor of preliminary approval.

    2.    <u>The Rule 23(e)(2) Factors</u>

    a.    <u>*Rule 23(e)(2)(A): The Class Representatives and Plaintiffs' Counsel Have Adequately Represented the Class*</u>

Here, "[t]he named [P]laintiffs participated in the case diligently. And [Plaintiffs' Counsel] fought hard throughout the litigation and pursued mediation when it appeared to be an advisable and feasible alternative." *Snyder*, 2019 WL 2103379, at *4. Further, courts have previously found that Class Counsel meets the obligations and responsibilities of class counsel. ECF No. 9.

    b.    <u>*Rule 23(e)(2)(B): The Settlement Was Negotiated at Arm's Length*</u>

By evaluating whether the parties negotiated the proposal at arm's length, courts aim to "root out settlements that may benefit the plaintiffs' lawyers at the class's expense." NEWBERG § 13:50. The best evidence of a "truly adversarial bargaining process" is the "presence of a neutral third-party mediator." *Id.*; *see also* Fed. R. Civ. P. 23(e)(2)(B) advisory committee's notes to 2018 amendment (noting that "the involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests").

In this case, the Settlement Class was represented by individuals who had previously been subject to judicial scrutiny and were appointed to represent the putative class. Order Appointing Interim Counsel, ECF No. 9. Both sides had challenged each other's positions through Defendant's Motion to Dismiss, and only engaged in settlement negotiations when key legal disputes had been litigated. Both counsel for Plaintiffs and for Defendant are experienced in class action litigation and negotiated the Settlement over several months of arm's-length negotiations, including with the assistance of a third-party neutral. Suciu Decl. ¶¶ 15-19. Accordingly, this factor is met. *Snyder*, 2019 WL 2103379, at *4 (factor met where "[t]he parties conducted their negotiations via three

separate and independent mediators"); *In re TikTok*, 565 F. Supp. 3d at 1091 (factor met where parties settled case with the assistance of a mediator.).

      c.    <u>*Rule 23(e)(2)(C): The Settlement Provides Adequate Relief To The Class*</u>

Whether relief is adequate considers "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(i-iv).

***"The costs, risks, and delay of trial and appeal."*** As noted above, the Settlement meets this factor. Argument §§ I.A.1-I.A.2, *supra*. Nonetheless, if this case was to move forward, Plaintiffs would have to maintain the class through trial, which has proven difficult in national consumer class actions. *Czuchaj v. Conair Corp.*, 2016 WL 1240391, at *2 (S.D. Cal. March 30, 2016) (decertifying a national class due to differences in state law). Even if Plaintiffs could maintain the class, their ability to prove the merits of the case presents a further risk. Plaintiffs recognize that providing damages would be subject to costly and fact-intensive analysis, which has encountered difficulties in other courts. *See*, e.g., *Werdebaugh v. Blue Diamond Growers*, 2014 WL 7148923, at *12-13 (N.D. Cal. Dec. 15, 2014) (rejecting damages model that failed to control for other critical factors affecting price). Moreover, litigating a complex case through trial is inherently perilous regardless of the strength of the claims:

> [N]othing is assured when litigating against commercial giants with vast litigative resources, particular in such complex litigation as this, which would strain the cognitive capacities of any jury. Defense judgments were hardly beyond the realm of possibility. Accordingly, this factor weighs in favor of preliminary approval.

*Rebney v. Wells Fargo Bank*, 220 Cal. App. 3d 1117, 1140 (1990). That does not even take into account the risk and delay associated with any appeal that would surely come if a favorable

judgement was obtained. The Settlement eliminates these and other risks of continued litigation, including the very real risk of no recovery after several years of litigation.

*"The effectiveness of any proposed method of distributing relief to the class."* Settlement Class Members need only submit a simple claim form (online or by mail) stating the number of Beyond Meat Products purchased (as well as provide proof of purchase, if available) to receive monetary relief. Settlement Agreement, § II(A)(10), Ex. 1. This is a reasonable method of distributing relief. *See*, *e.g.*, *Kolinek*, 311 F.R.D. at 499 (holding it was "neither unfair nor unreasonable" to ask claimants to submit a "short and direct" claim form that required claimants to provide their names, address, and signature, and to check a box if they wished to make a claim). Settlement Class Members are provided 180 days to submit their claims. Settlement Agreement, § II(A)(9). In addition, the Settlement allows for payments to Settlement Class Members *via* check, Venmo, PayPal, ACH, or Zelle. *Id.* § IV(K).

The Settlement Agreement also calls for secondary distribution of any unclaimed funds after the initial payment. Settlement Agreement § IV(L). This "redistribution of unclaimed class action funds to existing class members is proper and preferred" because it "ensures that 100% of the [settlement] funds remain in the hands of class members." *Hester v. Vision Airlines, Inc.*, 2017 WL 4227928, at *2 (D. Nev. Sept. 22, 2017); *Keepseagle v. Vilsack*, 118 F. Supp. 3d 98, 117 (D.D.C. 2015) (citing NEWBERG § 12:28 (5th ed. 2015) ("as a general matter, 'a court's goal in distributing class action damages is to get as much of the money to the class members in as simple a manner as possible'")).

*"The terms of any proposed award of attorneys' fees."* In discharging its duty to determine the fairness of attorneys' fees awarded in a class action settlement, the Court's primary concern is to ensure that the process of negotiation leading to the fee has "adequately protected the class from

2972080.2

the possibility that class counsel were accepting an excessive fee at the expense of the class." *Staton v. Boeing Co.*, 327 F.3d 938, 966 (9th Cir. 2003); s*ee also* Fed. R. Civ. P. 23(e)(2)(C)(iii).

Here, the proposed attorney's fees and costs are not extraordinary. Class Counsel has agreed to petition the Court for two and a half million dollars ($2,500,000) in fees and expenses. Settlement Agreement § V(A). This is one-third of the $7.5 million in monetary relief that Class Counsel has made available, which is reasonable in this Circuit and matches the rate that would have been likely negotiated in the market. *Kolinek*, 311 F.R.D. at 503 (granting "Kolinek's motion for attorney's fees in the amount of … 36% of the settlement fund"); *Charvat*, 2019 WL 5576932, at *12 ("[T]he Court finds that a 33.99% attorneys' fee award reflects the market rate and takes into account the risk of nonpayment."). At the time of the Fairness Hearing, Class Counsel will request that the Court award fees based upon the value of the benefits achieved in the proposed Settlement and will present their time and expense declarations to allow for a cross-check under the lodestar/multiplier method.

Additionally, there is nothing about the requested fee that should give the Court pause. Settlement Class Members will have time to review and object to the attorneys' fee petition at the Fairness Hearing, the Settlement is not conditioned on the payment of fees, and the payment of fees occurs after the entire Settlement Amount is deposited into the Escrow Account. Settlement Agreement §§ IV(B), V(C).

**"*Any agreement required to be identified by Rule 23(e)(3).*"** No agreement between the parties other than the Settlement (including the Supplemental Agreement) exists.

        d.    <u>Rule 23(e)(2)(D): The Settlement Treats All Class Members Equally</u>

Additionally, the Settlement does not improperly discriminate between any segments of the Settlement Class. Fed. R. Civ. P. 23(e)(2)(C). Each Settlement Class Member is entitled to the same relief calculated from the same formula, $2 per the number of qualifying Beyond Meat

Products purchased. Settlement Agreement § IV(C). Given that both restitution and damages accrued by Settlement Class Member would be logically proportional to the number of products purchased and the price of those products, the payment formula forwarded in the Settlement Agreement is both rationally based and directly related to the claims asserted. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008) ("It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits.").

Although Settlement Class Members with proof of purchase will be eligible to receive compensation for as many Beyond Meat Products as they have proof for, but Settlement Class Members without proof of purchase will be limited, that does not mean Settlement Class Members are treated inequitably. *Patellos v. Hello Products, LLC*, 2022 WL 2159566, at *1 (S.D.N.Y. June 15, 2022) (finding "the Settlement Agreement treats the Settlement Class Members equitably relative to one another" where class members with proof of purchase could make claims for up to ten products, versus up to five products without proof of purchase). Indeed, such a limitation on Settlement Class Members without proof of purchase is necessary to deter fraudulent claims and ensure as much of the Settlement Fund is available to Settlement Class Members with proof of purchase as possible.

Further, all Settlement Class Members' claims are subject to an upward or downward *pro rata* adjustment if they exceed the available Settlement Fund. A *pro rata* distribution has been found by courts in this Circuit to be equitable. *T.K. Through Leshore*, 2022 WL 888943, at *16 ("The Proposed Settlement provides for *pro rata* shares to each member of the Proposed Settlement Class. Such distribution plans indicate equitable treatment of class members relative to each other.").

**C.**     **THE PROPOSED NOTICE PLAN SHOULD BE APPROVED**

Should the Court grant preliminary approval, due process requires the best notice practicable, reasonably calculated under the circumstances to apprise a class member of the settlement and to give that class member a chance to be heard. Fed. R. Civ. P. 23(e)(1)(B). The parties have agreed to retain an experienced class notice and claims administrator, Kroll, LLC. *See* Declaration of Jeanne Finegan, concurrently filed herewith ("Finegan Decl."), ¶ 2.

    1.     The Content of the Proposed Class Notice Complies With Rule 23(C)(2)

For notice to be satisfactory, the notice must:

> concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). Plaintiffs, with the input of Kroll, have drafted both a Long Form Notice and Publication Notice. Settlement Agreement, Exs. 2 and 3. The Long Form Notice will be posted on the Settlement Website and provided to those Settlement Class Members who request it by phone. Finegan Decl., ¶¶ 31-32. The Publication Notice will be used for any press releases and print publications and will direct individuals to the Settlement Website for more information. *Id.*, ¶ 30. Any internet-based advertising will also link to the Settlement Website.

Here, both the Long Form and Publication Notices provide detailed information about the Settlement, including: (i) a comprehensive summary of its terms; (ii) Class Counsel's intent to request attorneys' fees, reimbursement of expenses, and service awards for the Class Representatives; and (iii) detailed information about the Released Claims. Settlement Agreement, Exs. 2-3. In addition, the Notices provide information about the Final Approval Hearing date, the right of Settlement Class Members to seek exclusion from the Settlement Class or to object to the

proposed Settlement (as well as the deadlines and procedure for doing so), and the procedure to receive additional information. *Id.*. The Settlement Website will also contain relevant court documents, claims forms, opt out forms, and information regarding the claims process. Finegan Decl., ¶ 31.

In short, the Notices fully inform Settlement Class Members of the lawsuit, the proposed Settlement, and the information they need to make informed decisions about their rights, including the opportunity to opt out. Additionally, Settlement Class Members have ninety (90) days in which to exercise their right to exclude themselves from or object to the Settlement. This information is adequate to put Settlement Class Members on notice of the proposed Settlement and is well within the requirements of Fed. R. Civ. P. 23(c)(2)(B).

2.     <u>The Plan for Distribution of the Class Notice Will Comply with Rule 23(C)(2)</u>

Preliminary approval permits notice to be given to class members of the settlement and the right to be heard. Rule 23 provides that the Court "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Amchem Prods. Inc.*, 521 U.S. at 617.

The parties have agreed upon a notice plan that satisfies the requirements of both Fed. R. Civ. P. 23 and Due Process. Here, Defendant does not sell its products directly to consumers. Accordingly, Defendant does not maintain the records of consumers' contact information. When a "class such as this that consists of persons with unknown addresses, notice by publication is reasonable." *Weeks v. Kellogg Co*., 2013 WL 6531177, at *11 (C.D. Cal. Nov. 23, 2013). Notice of this Settlement will be provided via a multifaceted advertisement campaign which is designed to specifically reach purchasers of the Beyond Meat Products. Finegan Decl., ¶¶ 18-29. Kroll will notice through online advertisements (including on social media platforms such as X, Facebook,

2972080.2

and Instagram, as well as YouTube) using industry-proven targeting, to a known and verifiable target audience profile. *Id.*, ¶¶ 24-29. Additionally, the Settlement Fund will sponsor keyword advertising on Google Search to ensure that people search for terms, such as "*Beyond Meat class action*," "*Beyond Meat protein content*," and "*Beyond Meat lawsuit*," see the Settlement website. *Id.*, ¶ 26. Online advertising is the best avenue to reach class members because 97% of Beyond Meat purchasers have been online in the last 30 days, and over 89% use social media, with 66% reporting that they have visited Facebook and 47% Instagram in the last 30 days. *Id.*, ¶ 23.

The Publication Notice will be further distributed and promoted on two leading class action settlement websites, www.topclassactions.com and www.classaction.org, as well as press releases. *Id.*, ¶ 30; Suciu Decl., ¶ 36. Finally, the Settlement Administrator will provide notice of the Settlement to the appropriate state and federal officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715. Finegan Decl., ¶ 17. Collectively, the notice regime is predicted to directly reach 70% with an average frequency of 2.5 views per person. *Id.*, ¶ 4.

The notice distribution plan is based on a similar regime that was approved in other consumer cases. *See*, *e.g.*, *Wilson v. Airborne, Inc.*, 2008 WL 3854963, at *4 (C.D. Cal. Aug. 13, 2008); *Arnold v. Fitflop USA, LLC*, 2014 WL 1670133, at *4 (S.D. Cal. Apr. 28, 2014); *Pappas v. Naked Juice Co of Glendora, Inc*., 2014 WL 12382279, at *5 (C.D. Cal. Jan. 2, 2014); *see also* Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide (noting that it is reasonable to reach between 70–95% of the class). And a similar result should follow here.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court grant Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, and enter an Order: (1) certifying the Settlement Class (2) appointing Plaintiffs as Class Representatives and the

undersigned counsel as Class Counsel; (3) preliminarily approving the proposed Settlement Agreement; (4) approving the form and methods of the proposed notice; (5) ordering the issuance of notice; and (6) establishing a hearing date for final approval.

Dated: August 5, 2024

Respectfully submitted,

By: */s/ DRAFT*

Nick Suciu III
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
6905 Telegraph Road, Suite 115
Bloomfield Hills, Michigan 48301
Telephone: (313) 303-3472
Facsimile: (865) 522-0049
Email: nsuciu@milberg.com

Joel D. Smith
**SMITH KRIVOSHEY, P.C.**
867 Boylston Street
5th Floor, #1520
Boston, MA 02116
Telephone: 617-377-7404
Email: joel@skclassactions.com

Jonathan Shub
**SHUB LAW FIRM LLC**
134 Kings Highway E, 2nd Floor
Haddonfield, New Jersey 08033
Telephone: (856) 772-7200
Facsimile: (856) 210-9088
Email: jshub@shublawyers.com

Elizabeth A. Fegan
**FEGAN SCOTT LLC**
150 South Wacker Drive, 24th Floor
Chicago, Illinois 60606
Telephone: (312) 741-1019
Facsimile: (312) 264-0100
Email: beth@feganscott.com

26

Jason P. Sultzer
**THE SULTZER LAW GROUP P.C.**
85 Civic Center Plaza, Suite 200
Poughkeepsie, New York 12601
Telephone: (845) 483-7100
Facsimile: (888) 749-7747
Email: sultzerj@thesultzerlawgroup.com

Robert K. Shelquist
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Ave. S, Suite 2200
Minneapolis, Minnesota 55401
Mobile: (612) 991-2934
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
Email: rkshelquist@locklaw.com

*Co-Lead Counsel for Plaintiffs and the Class*

2972080.2

## <u>CERTIFICATE OF SERVICE</u>

I, Nick Suciu III, the undersigned attorney, hereby certify that on August 5, 2024, I caused

the foregoing Memorandum to be served upon all counsel of record via the Court's ECF system.


/s/ *DRAFT*

Nick Suciu III

2972080.2