**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In Re: Beyond Meat, Inc., Protein Content Marketing and Sales Practices Litigation | Case No. 1:23-cv-00669 <br><br> MDL No. 3059 <br><br> Judge Sara L. Ellis |

**DECLARATION OF NICK SUCIU III IN SUPPORT OF**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

I, Nick Suciu III, declare:

1.     I am over eighteen years of age and a Senior Partner at Milberg Coleman Bryson Phillips Grossman PLLC ("Milberg"), Interim Class Counsel and counsel for Plaintiffs in the above titled action. I submit this declaration in support of Plaintiffs' Motion for Preliminary Approval. I have personal knowledge of the facts set forth herein, and if called as a witness could and would competently testify thereto.

2.     Milberg is one of the longest-tenured class action litigation firms in the country. The Firm brings to bear over five decades of experience prosecuting class action cases in both federal and state venues nationwide, recovering over $50 billion for the firm's clients. Milberg is a pioneer in federal class action litigation and is widely recognized as a leader in defending the rights of victims of corporate wrongdoing, focusing on class action, mass tort, consumer, and shareholder rights services, both domestically and globally. Milberg is committed to practicing law in an ethical and professional manner, ensuring the best possible outcomes for our clients and the injured classes we represent. Together with Smith Krivoshey, P.C., the Sultzer Law Group,

P.C., Fegan Scott LLC, Shub & Johns LLC, and Lockridge Grindal Nauen P.L.L.P., Milberg represents Plaintiffs in the above titled action. Collectively, our firms have ample experience litigating complex class actions. Attached hereto as **Exhibit A** is the Firm Resumes for Milberg, as well their co-counsel in this case.

3.     I currently oversee the day-to-day litigation of this action on behalf the Milberg and my practice group. My practice group has significant experience in the litigation, certification, trial, settlement, and appeal of national class actions, and have recovered hundreds of millions of dollars for the classes we have represented. Indeed, I have extensive experience in both consumer class actions and the regulation of dietary supplements. I began my legal career as in-house counsel for a company that owned other bodybuilding supplement companies and retail websites. With extensive experience with the dietary supplement industry, I have represented several such manufacturers and retailers, advising clients in the areas of FDA regulations, advertising, and marketing law. However, in 2011, I started representing plaintiffs in class action lawsuits. In the past twelve years, I have been appointed as counsel in consumer class actions involving purchasers of dietary supplements and achieved significant results. Some of my notable cases include *Clay et al. v. Cytosport, Inc*., No. 3:15-cv-00165-L-AGS (S.D. Cal. (a $12-million class-wide settlement after successfully moving for class certification); *Gregorio v. Premier Nutrition Corp*., No. 17-cv-05987-AT (S.D.N.Y) (a $9-million class-wide settlement); and *Carter, et al. v. General Nutrition Centers, Inc., et al*., No. 2:16-cv-00633 (W.D. Pa) (a $5-million class-wide settlement).

## Relevant Background Information

4.     In the past two years, this case has been heavily litigated. Milberg filed the initial complaint in May of 2022 on behalf of Plaintiffs Angelique Roberts, Hannah Offutt, Dylan Rushing, Orlandra Hawthorne, Nisha Albert, and Adam Sorkin, as well as other consumers who

purchased the Beyond Meat Products[1] at issue during the relevant class period, predominantly from retail stores located in Illinois, Massachusetts, and New York. *Roberts et. al vs. Beyond Meat, Inc.*, No. 1:22-cv-02861 (N.D. Ill.), ECF No. 1. Additional cases were subsequently filed, and Defendant moved to centralize this litigation in the Northern District of Illinois under 28 U.S.C. § 1407.

5.      On February 2, 2023, the United States Judicial Panel on Multidistrict Litigation transferred the cases to the Northern District of Illinois and assigned them to the Honorable Sara L. Ellis for coordinated or consolidated pretrial proceedings.[2] ECF No. 1. Plaintiffs in the consolidated MDL are residents and citizens of the following states: California, Colorado, Florida, Illinois, Iowa, New York, Massachusetts, and Texas. Consolidated Complaint, ECF No. 12.

6.      Additionally, on February 17, 2023, Plaintiffs moved this Court for my appointment as Interim Lead Class Counsel, and Elizabeth A. Fegan of Fegan Scott LLC, Jason Sultzer of Sultzer Law Group P.C., Frederick J. Klorczyk III of Bursor and Fisher, P.A., Robert K. Shelquist of Lockridge Grindal Nauen P.L.L.P., and Jonathan Shub of Shub & Johns LLC ("Shub") as members of the Plaintiffs' Steering Committee. The Court granted this Request on March 3, 2023 and ordered Plaintiffs to file a consolidated complaint by May 3, 2023. *See* Docket Entry, ECF No. 10.

7.      Plaintiffs filed their Consolidated Class Action Complaint on May 3, 2023. ECF

---

[1] All terms herein shall have the same meaning as in the Class Action Settlement Agreement and Release (the "Settlement") (Ex. B) unless otherwise defined.

[2] The consolidated cases include: *Roberts, et al. v. Beyond Meat, Inc.*, C.A. No. 1:22−02861 (N.D. Ill.); *Borovoy v. Beyond Meat, Inc.*, C.A. No. 1:22−06302 (N.D. Ill.); *Garcia, et al. v. Beyond Meat, Inc.*, No. 4:22−00297 (S.D. Iowa); *Cascio v. Beyond Meat, Inc.*, No. 2:22−04018 (E.D.N.Y.); *Miller v. Beyond Meat, Inc.*, No. 1:22−06336 (S.D.N.Y) and *Zakinov v. Beyond Meat, Inc.*, No. 4:23-cv-00144 (S.D. Tex.).

No. 12. Plaintiffs alleged Defendant misrepresented the protein content of their "Beyond Meat" branded Products both on the front label in grams, and on the back label as a percentage of daily value, by failing to use the Protein Digestibility Amino Acid Corrected Score method ("PDCAAS") which resulted in the protein being over reported. Accordingly, Plaintiffs alleged Defendant violated state consumer fraud statutes; California's Consumer Legal Remedies Act, California Civil Code §§ 1750, *et seq.* ("CLRA"); California's False Advertising Law, California Business & Professions Code §§ 17500, *et seq.* ("FAL"); California's Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq.* ("UCL"); Illinois's Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*; Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1, *et seq.*; Mass. Gen. Laws Chapter 93A, § 2; New York General Business Law § 349 and § 350; Iowa's Private Right of Action for Consumer Frauds Act, Iowa Code § 714H; Texas's Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.01, *et seq.*; Colorado's Consumer Protection Act, Colo. Rev. Stat. Ann. §§ 6-1-101, *et seq.*; Florida's Unfair & Deceptive Trade Practices Act, Fla. Stat. § 501.201, *et seq.*; breached its express and implied warranties; and violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq. Id.* Plaintiffs also sought claims for unjust enrichment, fraudulent misrepresentation, fraud by omission, and negligent misrepresentation. *Id.*

8. On June 5, 2023, Defendant filed its Motion to Dismiss the Consolidated Class Action Complaint. ECF No. 16. Defendant argued that Plaintiffs lacked standing, claims were preempted by the Federal Food, Drug, and Cosmetic Act ("FDCA"), and that Plaintiffs failed to state a claim. This matter was fully briefed.

9. On February 21, 2024, the Court ruled on Defendant's Motion to Dismiss, granting it in part, and denying it in part. ECF No. 28. The Court dismissed Plaintiffs' front-label protein

content claims without prejudice as preempted by the FDCA. The Court also dismissed common law fraud claims and claims for injunctive relief. *Id.*

10.     After the Court's Order on Defendant's Motion to Dismiss, Plaintiffs prepared written discovery. However, the parties agreed to pause formal discovery efforts to discuss settlement.

11.     In preparation for Settlement negotiations, Plaintiffs engaged in informal discovery, as well as conducted investigations into Defendant's financial records. As a publicly traded company, Defendant was required to publish periodic financial reports. *See* https://investors.beyondmeat.com/financial-information/annual-reports. Based on these financial reports, Plaintiffs were able to estimate Defendant's retail sales[3]:

- **2018**: 8,712,000 pounds of Beyond Meat products (estimate 13,612,500 unit);
- **2019**: 24,163,000 pounds of Beyond Meat products (estimate 37,754,687 unit);
- **2020**: not reported, estimated at 48,088,872 pounds of Beyond Meat products (estimate 75,138,862 unit);
- **2021**: 44,568,000 pounds of Beyond Meat products (estimate 69,637,500 unit); and
- **2022**: 44,784,000 pounds of Beyond Meat products (estimate 69,975,000 unit).

Accordingly, Plaintiffs estimate 266,118,550 units were sold. Plaintiffs also estimated that the average retail price of a unit sold by Defendant is $6.69.

12.     Additionally, Defendant disclosed its internal gross U.S. retail sales data for 2018 to 2022 through informal discovery, which comported with Plaintiffs' estimate.

13.     In preparation for Settlement negotiations, Plaintiffs contracted a preliminary conjoint analysis of the "percent daily value" protein claims. Based on this initial work, Plaintiffs estimate that the price premium would be about 18 percent of the Beyond Meat Products' price for the "percent daily value" protein claims (or about $1.20). And, while these claims were dismissed

---

[3] Estimated units are based on the average weight of a product, which is 10.4 oz or 0.65 lbs.

by the Court, I was also able to estimate the "front-of-the-label" claims based on my own previous experience. Indeed, in a previous mislabeling case litigated by Class Counsel, involving the overstatement of the protein content of a protein drink, expert discovery was able to estimate that missing protein would be approximately 6 cent per gram of protein. *Clay et al. v. Cytosport, Inc.*, No. 3:15-cv-00165-L-AGS (S.D. Cal.), ECF No. 157-7 (Declaration of Dr. Jeffrey Harris) at ¶¶ 18, 23. Plaintiffs' testing indicated that Defendant overstated the Beyond Meat Products' protein content by between one and three grams of protein for the "front-of-the-label" claims. Thus, the "front-of-the-label" claims would be worth approximately $0.06-$0.24.[4]

14. Accordingly, only accounting for sales between 2018 and 2022, Plaintiffs estimated for purposes of mediation that the damages in the case would be approximately $319,342,260 (266,118,550 units multiplied by $1.20 per product). It was these estimates that would inform our settlement negotiations.

### Settlement Negotiation

15. The settlement negotiations during this litigation have been extensive.

16. Negotiations started back in the middle of 2022 prior to the filing of the original complaint, prompted by Plaintiffs' pre-filing notice letter to Defendant. Despite efforts by both parties, no resolution was found. Accordingly, litigation continued.

17. On October 11, 2022, the parties retained the Honorable Wayne R. Andersen (Ret.) for a full day mediation through JAMS Chicago. Again, despite the best efforts of both parties, no resolution was found.

18. Again, on April 24, 2024, the parties engaged Judge Andersen for another

---

[4] Given the time which has passed since the *Clay* case was litigated, and the inflation which has occurred in the past ten years, it is likely that our previous estimate of 6 cent per gram of missing protein is lower it would be if test today. Nonetheless, this is a reasonable estimate of damages for the dismissed claims.

mediation. Yet, again, no resolution was found.

19.     After that last mediation the parties continued to engage with each other through Judge Andersen, and after several weeks finally came to the agreement before this Court. The parties entered into a Term Sheet on May 6, 2024 and finalized their Settlement Agreement on July 8, 2024. The full terms of the Settlement Agreement can be found attached as **Exhibit B**.

### The Proposed Settlement Benefit

20.     The Settlement Agreement will provide relief to the Settlement Class, defined as:

> All persons (individuals and/or entities) who purchased any Beyond Meat Product for household use and not for resale or distribution, from May 31, 2018 to and including the date of the Preliminary Approval Order.

Settlement Agreement, at § III(A). Excluded from the Settlement Class are: (i) Beyond Meat, Inc. and its officers, directors, and employees; and the Beyond Meat, Inc.'s corporate affiliates and corporate affiliates' officers, directors, counsel, and employees; (ii) Class Counsel; (iii) the judges who have presided over the Action; and (iv) all other persons who timely elect to become opt-outs from the Settlement Class in accordance with the Court's Orders. *Id.* The Settlement Class is taken from the Consolidated Class Action Complaint, with minor edits for clarity. Compl. at ¶ 84. Accordingly, neither party is attempting to expand or limit the Class at settlement.

21.     Under the terms of the Settlement Agreement, Defendant will contribute $7.5 million to a non-reversionary common fund (the "Settlement Fund"). Settlement Agreement, at § IV(A). Valid Claims, Class Counsel's Attorneys' Fees and Costs, Notice and Administrative Costs, and any Service Awards are to be paid from the Settlement Fund. *Id*. Settlement Class Members can seek $2 per Beyond Meat Product. *Id.,* at § IV(C). Those Settlement Class Members without proof of purchase may submit claims for up to 5 Beyond Meat Products per household. Those Settlement Class Members with proof of purchase are not so limited, and can seek claims for each Beyond Meat Product they submit a valid proof of purchase. *Id.*

22.     Should the amount of claims exceed the net Settlement Fund, the payment to participating Class Members will be reduced *pro rata*. Similarly, the Settlement envisions a *pro rata* distribution of any unallocated funds to the participating Class Members. *Id.,* at § IV(D). Should there be any unclaimed funds, there will be a second distribution to participating Class Members, if feasible. *Id.,* at § IV(L).

23.     Based on Class Counsel's experience in consumer class actions, the experiences of other cases, Plaintiffs estimate that approximately five percent of the Settlement Class, or 134,500 to 217,500 households (2.69 million and 4.35 million households of the estimated class x 5%) will participate in the Settlement. *See Ferrington v. McAfee, Inc*., No. 10–CV–01455, 2012 WL 1156399, at *4 (N.D. Cal. Apr. 6, 2012) ("the prevailing rule of thumb with respect to consumer class actions is 3–5 percent"); *see also Touhey v. United States*, No. EDCV 08–01418, 2011 WL 3179036, at *7–8 (C.D. Cal. July 25, 2011) (finding a 2% response rate acceptable); *In re Cardizem Antitrust Litig*., 218 F.R.D. 508, 526 (E.D. Mich. 2003) (finding favorable class reactions in a 6.9% response rate).[5]

### Counsel Strongly Support the Settlement

24.     I, along with Joel D. Smith of Smith Krivoshey, P.C., Jason Sultzer, The Sultzer

---

[5] Plaintiffs' estimate of the size of the class is based on publicly available information, given that Defendant does not track the number of consumers who purchase the Beyond Meat Products and Defendant distributes its Beyond Meat Products through various channels. Based on marketing data, Plant-based meat and seafood has a 15% household penetration in the US, which means approximately 18.75 million US households have purchased Plant-based meat and seafood (127 million x 15%). *See* https://gfi.org/marketresearch/#overall. However, only about 62% of those purchases are repeat purchasers or 11.6 million households (18.75 million x 62%). Assuming that Defendant had approximately 23.2 percent of the market share during the Class Period, Plaintiffs estimate a class size between 2.69 million and 4.35 million households. *See https://www.statista.com/statistics/1278526/market-share-of-the-leading-meat-substitute-brands-in-northamerica/#:~:text=In%202020%2C%20Beyond%20Meat%20was,share%20of%20nearly 205.7%20percent.* This estimate is likely higher than the actual number because estimates of Defendant's marketing share are based on the plant-based meat alternative market, and not the plant-based meat and seafood alternative market.

Law Group, P.C., Elizabeth A. Fegan of Fegan Scott LLC, Jonathan Shub of Shub & Johns LLC, and Robert K. Shelquist of Lockridge Grindal Nauen P.L.L.P.[6] have been responsible for prosecuting this case and negotiated the Settlement Agreement that is now before the Court. Having conducted initial proceedings, informal discovery and extensive investigation in this case, Counsel was optimally positioned to evaluate the legal and economic consequences of Plaintiffs' and the Settlement Class members' claims. Based on this activity, Counsel was fully informed of the factual disputes at issue and were able to prepare a preliminary damages model, to estimate the total liability in this case.

25.     While Plaintiffs remain confident in the claims, there remain significant obstacles to the Settlement Class's recovery. For example, Plaintiffs will have to successfully move for class certification decision as well as maintain the class through trial. Indeed, national classes are particularly hard to maintain, given the differences between different states' laws. Accordingly, there is a risk Plaintiffs may only be able to certify classes for the states in which they purchased the Products.

26.     Plaintiffs would further have to engage in complex expert discovery, defend against dispositive motion practice. Even then, Plaintiffs still have the burden of proving liability on a classwide basis at trial. This will involve costly expert and scientific discovery that may be difficult for a jury to comprehend. For example, Plaintiffs anticipate submitting a damages model based on a conjoint analysis, as well as hedonic regression analysis. These methods of damages analysis have encountered difficulties in the past and often require extensive briefing to educate courts. *See, e.g., Saavedra v. Eli Lilly & Co.*, 2014 WL 7338930, at *6 (C.D. Cal. Dec. 18, 2014) (rejecting damages model where expert had not yet collected any data from which to determine class-wide

---

[6] Mr. Smith's and Mr. Shub's firm had changed during the pendency of this case.

damages); *Werdebaugh v. Blue Diamond Growers*, 2014 WL 7148923, at *12-13 (N.D. Cal. Dec. 15, 2014) (rejecting damages model that failed to control for other critical factors affecting price). Additionally, litigating a complex case through trial is inherently perilous regardless of the strengths of merits of the claims. Thus, the outcome of this case is not certain.

27.     But, even if Plaintiffs were to secure a favorable judgment, it would not end this dispute. Milberg maintains an appellate practice and understands that the post-trial appellate process poses a risk and can significantly delay any relief recovered. Indeed, my practice group recently argued *Bruce Horti, et al v. Nestle Healthcare Nutrition, Inc*., No. 22-16832, before the Ninth Circuit. Even this successfully litigated appeal, before an appellate court of first instance, required over two years and was fraught with numerous perils. Accordingly, I am acutely aware that securing a favorable judgment is not the end of the litigation process.

28.     Given the stakes in this case, Plaintiffs fully expect that any favorable judgment for a putative class may be appealed by Defendant. Based on the 2023 Annual Report from the Seventh Circuit, approximately 9.5% of cases are overturned. An appeal, in this case, represents a real risk to the Settlement Class's recovery.

29.     It was the factors and concerns referenced above that informed Plaintiffs' negotiations for this case. All settlements are a product of compromise, and this Settlement is no exception. Class Counsel understood that some settlement discount would be required. Nevertheless, Class Counsel was able to negotiate a settlement that offers participating Class Members the opportunity to recover more than they may have received at trial.

30.     Indeed, each participating Settlement Class Member may receive $2 per qualified Beyond Meat Product under the terms of the Settlement. This is more than both the $0.06-$0.24 per product damages that Plaintiffs estimated would be recovered if successful at trial for the

dismissed front-of-the-package claims and the $1.20 in estimated damages for the surviving "percent daily value" protein claims.

31.     This result also forgoes the approximately four years that the parties would need to prepare this case for trial, as well as any potential appeal. Put differently, the Settlement provides immediate and substantial relief for the Settlement Class. Based on my experience, this firm encourages the Court's approval of this Settlement.

<u>**The Named Plaintiffs Support the Settlement**</u>

32.     Additionally, each of the named Plaintiffs have been informed of the terms of the Settlement by their respective counsel, and support the filing of this Motion, as well as the approval of the Settlement itself.

<u>**Attorney's Fees and Cost**</u>

33.     Plaintiffs intend to seek reimbursement of their costs and attorneys' fees in an amount not to exceed 33 and 1/3 percent of the total Settlement Amount (or approximately $2,500,000). Additionally, Plaintiffs seek a service award to each of the named Plaintiffs in the amount of $2,500. The Settlement is not conditioned on the payment of attorneys' fees, costs, or any service award.

34.     Plaintiffs will file a separate motion for approval of attorneys' fees, costs, and service awards outlining their entitlement to such payments. This motion will be filed before the objection deadline, to allow an opportunity for Settlement Class Members to review and object to Plaintiffs' request.

<u>**Notice**</u>

35.     Plaintiffs sent bids for class notice to several potential settlement administrators. Based on these bids, their qualifications, and counsel's experience with the various firms, Plaintiffs selected Kroll, LLC as the Settlement Administrator. Kroll has extensive experience in

administering class settlements and counsel had would with the firm before. Accordingly, counsel was confident that Kroll would competently serve as Settlement Administrator and provided the best practical notice to potential Settlement Class Members.

36. In addition to the notice provided, Plaintiffs will also provide the settlement to www.topclassactions.com and www.classaction.org.

## **Non-Opposition**

37. I confirmed with Defendant's counsel that Defendant does not oppose Plaintiffs' Motion for Preliminary Approval of the Class Action Settlement.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 5, 2024 in Bloomfield Hills, Michigan.

    /s/ *Nick Suciu III*    
        Nick Suciu III