**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In Re: Beyond Meat, Inc., Protein Content Marketing and Sales Practices Litigation | Case No. 1:23-cv-00669<br><br>MDL No. 3059<br><br>Judge Sara L. Ellis |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEY'S FEES, COSTS, AND INCENTIVE AWARD

Nick Suciu III
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
6905 Telegraph Road, Suite 115
Bloomfield Hills, Michigan 48301
Telephone: (313) 303-3472
Facsimile: (865) 522-0049
Email: nsuciu@milberg.com

Joel D. Smith
**SMITH KRIVOSHEY, P.C.**
867 Boylston Street
5th Floor, #1520
Boston, MA 02116
Telephone: 617-377-7404
Email: joel@skclassactions.com

Jonathan Shub
**SHUB & JOHNS LLC**
Four Tower Bridge
200 Barr Harbor Dr., Ste. 400
Conshohocken, PA 19428
Telephone: (856) 772-7200
Facsimile: (856) 210-9088
Email: jshub@shublawyers.com

Elizabeth A. Fegan
**FEGAN SCOTT LLC**
150 South Wacker Drive, 24th Floor
Chicago, Illinois 60606
Telephone: (312) 741-1019
Facsimile: (312) 264-0100
Email: beth@feganscott.com

Jason P. Sultzer
**THE SULTZER LAW GROUP P.C.**
85 Civic Center Plaza, Suite 200
Poughkeepsie, New York 12601
Telephone: (845) 483-7100
Facsimile: (888) 749-7747
Email: sultzerj@thesultzerlawgroup.com

Robert K. Shelquist
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Ave. S, Suite 2200
Minneapolis, Minnesota 55401
Mobile: (612) 991-2934
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
Email: rkshelquist@locklaw.com

*Co-Lead Counsel for Plaintiffs and the Class*

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.     SUMMARY OF THE ACTION ......................................................................... 3

   A.   Litigation History.......................................................................................... 3

   B.   Discovery and Settlement Negotiations........................................................ 5

III.    MATERIAL TERMS OF THE SETTLEMENT ............................................... 5

   A.   Monetary Relief ............................................................................................ 5

   B.   Notice and Other Administrative Costs ........................................................ 6

   C.   Service Awards ............................................................................................. 7

   D.   Attorneys' Fees and Costs ............................................................................ 7

IV.     ARGUMENT ..................................................................................................... 8

   A.   The Requested Attorneys' Fees are Reasonable and Should be Approved ................... 8

      1.   The Requested Fees Are Reasonable Under the Percentage of the Fund Method ......... 9

         a.   The Risk of Nonpayment .................................................................. 9

         b.   The Quality of Counsel's Performance........................................... 11

         c.   Amount of Work Necessary to Resolve The Litigation................... 12

         d.   The Complexity, Length, and Expense of this Litigation ............... 12

         e.   Stakes of the Case .......................................................................... 13

         f.   Actual Fee Agreements, Data from Similar Cases, and Class-Counsel Auctions .... 14

   B.   The Requested Attorneys' Fees are Also Reasonable Under a Lodestar Cross-Check 14

V.      THE COURT SHOULD AWARD THE REQUESTED EXPENSES ............................. 16

VI.     THE REQUESTED SERVICE AWARD REFLECTS PLAINTIFFS' ACTIVE
        INVOLVEMENT IN THIS ACTION AND SHOULD BE APPROVED ....................... 17

VII.    CONCLUSION................................................................................................. 18

2972080.2

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*,
  743 F.3d 243 (7th Cir. 2014) ................................................................... 8

*Blum v. Stenson*,
  465 U.S. 886 (1984) ............................................................................... 14

*Browne v. Am. Honda Motor Co.*,
  2010 WL 9499073 (C.D. Cal. Oct. 5, 2010) ........................................... 10

*Gaskill v. Gordon*,
  160 F.3d 361 (7th Cir. 1998) ................................................................. 14

*Gastineau v. Wright*,
  592 F.3d 747 (7th Cir. 2010) ................................................................. 15

*George v. Kraft Foods Glob., Inc.*,
  Nos. 1:08-cv03799; 1:07-cv-01713, 2012 WL 13089487 (N.D. Ill. June 26, 2012) ............... 15

*Hale v. State Farm Mut. Auto. Ins. Co.*,
  2018 WL 6606079 (S.D. Ill. Dec. 16, 2018) ..................................... 8, 14

*Harman v. Lyphomed, Inc.*,
  945 F.2d 969 (7th Cir. 1991) ................................................................. 15

*In re Activision Sec. Litig.*,
  723 F. Supp. 1373 (N.D. Cal. 1989) ......................................................... 9

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*,
  792 F. Supp. 2d 1028 (N.D. Ill. 2011) .................................................... 16

*In re Cap. One Tel. Consumer Prot. Act Litig.*,
  80 F. Supp. 3d (N.D. Ill. 2015) ............................................................... 18

*In re Cont'l Ill. Sec. Litig.*,
  962 F.2d 566 (7th Cir. 1992) ................................................................. 10

*In re Dairy Farmers of Am., Inc.*,
  80 F. Supp. 3d 838 (N.D. Ill. 2015) ..................................................... 8, 9

*In re Forefront Data Breach Litig.*,
  No. 21-CV-887, 2023 WL 6215366 (E.D. Wis. Mar. 22, 2023) ....................... 17, 18

2972080.2

*In re Kentucky Grilled Chicken Coupon Mktg. & Sales Pracs. Litig.*,
2011 WL 13257072 (N.D. Ill. Nov. 30, 2011) ................................................................. 8

*In re Lawnmower Engine Horsepower Mktg. & Sales Pracs. Litig.*,
733 F. Supp. 2d 997 (E.D. Wis. 2010) ...................................................................... 15

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ................................................................................ 9

*In re Stericycle Sec. Litig.*,
35 F.4th 555 (7th Cir. 2022) ................................................................................ 9

*In re Synthroid Mktg. Litig.*,
264 F.3d 712 (7th Cir. 2001) .............................................................................. 17

*In re TikTok, Inc., Consumer Priv. Litig.*,
617 F. Supp. 3d 904 (N.D. Ill. 2022) ............................................................... 13, 15

*In re Trans Union Corp. Priv. Litig.*,
2009 WL 4799954 (N.D. Ill. Dec. 9, 2009) ........................................................... 15

*Kujat v. Roundy's Supermarkets Inc.*,
2021 WL 4551198 (N.D. Ill. Aug. 11, 2021) ........................................................... 9

*Leung v. XPO Logistics, Inc.*,
326 F.R.D. 185 (N.D. Ill. 2018) ......................................................................... 18

*Martin v. Caterpillar Inc.*,
2010 WL 11614985 (C.D. Ill. Sept. 10, 2010) ...................................................... 14

*Paz v. Portfolio Recovery Assocs., LLC*,
924 F.3d 949 (7th Cir. 2019) ............................................................................. 15

*Schulte v. Fifth Third Bank*,
805 F. Supp. 2d 560 (N.D. Ill. 2011) ................................................................. 15

*Silverman v. Motorola Solutions, Inc.*,
739 F.3d 956 (7th Cir. 2013) ............................................................................. 10

*Summers v. UAL Corp. ESOP Comm* ,
*No. 03 C 1537,* 2005 WL 3159450 (N.D. Ill. Nov. 22, 2005) .................................. 14

*T.K. Through Leshore v. Bytedance Tech. Co.*,
2022 WL 888943 (N.D. Ill. Mar. 25, 2022) ........................................................... 8

iii

*United States ex rel. Perez v. Williams*,
   2013 WL 1181487 (N.D. Ill. Mar. 19, 2013) ........................................................... 15

*Williams v. Gen. Elec. Capital Auto Lease*,
   1995 WL 765266 (N.D. Ill. Dec. 26 1995) ............................................................... 8

*Wright v. Nationstar Mortage LLC*,
   2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) ........................................................... 17

**Rules**

Fed. R. Civ. P.  23(h) ......................................................................................... 1, 8, 16

**Other Authorities**

Brickman, Lester, *ABA Regulation of Contingency Fees: Money Talks, Ethics Walks*, 65
   Fordham L. Rev. 247 (1996) .................................................................................. 14

Darmiento, Lawrence, How Beyond Meat Is Trying To Get Its Sizzle Back, Los Angeles
   Times (May 31, 2024) ............................................................................................. 10

Miller, Geoffrey & Eisenberg, Theodore. (2003). Attorney Fees in Class Action Settlements: An
   Empirical Study,  1 J. Empirical Legal Stud. 27 (2004) ......................................... 17

2972080.2

Pursuant to Federal Rule of Civil Procedure 23(h), Plaintiffs Angelique Roberts, Hannah Offutt, Dylan Rushing, Orlandra Hawthorne, Nisha Albert, Adam Sorkin, Dartisha Anderson, Christine Borovoy, Todd Miller, Richard D. Garcia, Erica Nichols Cook, Jennifer Speer, Rosemarie Ramirez, Mary Yoon, Christopher Bates, and Stan Zakinov (collectively "Plaintiffs") respectfully submit this Memorandum in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement (hereinafter the "Motion").

## I.    INTRODUCTION

After over two years of litigation, Plaintiffs and Class Counsel[1] successfully negotiated an extraordinary settlement of the Settlement Class's claims in the context of a defendant which was experiencing financial constraints. The parties have reached a Settlement that will provide a $7.5 million non-reversionary common fund, providing a two-dollar refund to all participating Settlement Class Members, for each Beyond Meat product they purchased (capped if they do not have proof of purchase). On an individual class member basis, this two-dollar refund represents approximately what they could have recovered at trial, and this recovery comes sooner and avoids the significant risks of the continued litigation of a complex class action.

By this motion, Class Counsel seeks an award of attorney fees and expenses for their efforts litigating this contested case. Class Counsel not only negotiated the Settlement but organized themselves after the order consolidating this case from the Judicial Panel on Multidistrict Litigation (ECF Nos. 1, 6), drafted the consolidated complaint (ECF No. 12), and successfully opposed a motion to dismiss (ECF No. 16). This is on top of the efforts that counsel expended in

---

[1] Class Counsel refers to FeganScott LLC (with their co-counsel, Shindler, Anderson, Goplerud and Weese), Levin Sedran & Berman, LLP, Lockridge Grindal Nauen PLLP, Mason LLP, Shub & Johns, LLC, Smith Krivoshey, P.C., and Sultzer & Lipari, PLLC. This includes both counsel which were appointed Interim Lead Class Counsel and members of the Plaintiffs' Steering Committee by the Court on February 17, 2023, as well as other counsel for the named Plaintiffs in this case. ECF No. 6.

1

their individual cases, before the MDL consolidation, researching their claims and developing their pleadings.

Moreover, the settlement negotiations were contentious.  Declaration of Nick Suciu, ECF No. 46-1 ("Suciu Decl. I"), at ¶¶ 15-19.  Negotiations started back in the middle of 2022 prior to the filing of the original complaint, prompted by Plaintiffs' pre-filing notice letter to Defendant. *Id.*  These discussions led to the party's first full-day mediation session, on October 11, 2022, before the Honorable Wayne R. Andersen (Ret.).  *Id.*  While no resolution was found, this initial mediation would lay the groundwork for follow up discussion and a second full-day mediation before Judge Andersen on April 24, 2024.  *Id.*  Despite these efforts, the case would not settle after several additional weeks of negotiations, with the help of Judge Andersen.  *Id.*  Ultimately, the case only settled on May 6, 2024, when the parties finally signed a terms sheet.

Class Counsel conducted extensive investigation and informal discovery to support Plaintiffs' negotiation position.  Suciu Decl. I, at ¶¶ 11-14.  Class counsel reviewed Defendant's financial statements, internal sales information, and engaged a consulting expert to conduct an initial conjoint analysis to determine the potential liability in the case.  *Id.*  Notably, Defendant's financial condition has deteriorated to the point that its ability to remain a going concern, and thus maintain the ability to pay any judgment achieved at trial, has been called into question by financial commentators following its recent earnings releases. It was only after this extensive legwork that Class Counsel was able to negotiate the Settlement Agreement. Given their efforts, Class Counsel seeks an award of costs and attorneys' fees in an amount of $2,500,000 ($78,746.07 in costs and $2,421,253.93 in attorney's fees).

Additionally, this Settlement was made possible by the efforts of the named Plaintiffs and proposed class representatives, Angelique Roberts, Hannah Offutt, Dylan Rushing, Orlandra

2972080.2

Hawthorne, Nisha Albert, Adam Sorkin, Dartisha Anderson, Christine Borovoy, Todd Miller, Richard D. Garcia, Erica Nichols Cook, Jennifer Speer, Rosemarie Ramirez, Mary Yoon, Christopher Bates, and Stan Zakinov. Each of these individuals guided the litigation, provided valuable feedback and information to Class Counsel, and agreed to lend their name to the current action. Accordingly, Plaintiffs seek a service award to each of the named Plaintiffs in the amount of $2,500.

## II. SUMMARY OF THE ACTION

### A. <u>Litigation History</u>

This proposed class action arises from Beyond Meat's alleged mislabeling of the Beyond Meat Products. A number of the Plaintiffs filed their initial complaint in May of 2022 on behalf of consumers who purchased the Beyond Meat Products at issue during the relevant class period, predominantly from retail stores located in Illinois, Massachusetts, and New York. *Roberts et. al vs. Beyond Meat, Inc.*, No. 1:22-cv-02861 (N.D. Ill.), ECF No. 1. Additional cases were subsequently filed, and Defendant moved to centralize this litigation in the Northern District of Illinois under 28 U.S.C. § 1407.

On February 2, 2023, the United States Judicial Panel on Multidistrict Litigation transferred the cases to the Northern District of Illinois and assigned them to this Court for coordinated or consolidated pretrial proceedings.[2] ECF No. 1. Plaintiffs in the consolidated MDL are residents and citizens of California, Colorado, Florida, Illinois, Iowa, New York,

---

[2] The consolidated cases include: *Roberts, et al. v. Beyond Meat, Inc.*, C.A. No. 1:22−02861 (N.D. Ill.); *Borovoy v. Beyond Meat, Inc.*, C.A. No. 1:22−06302 (N.D. Ill.); *Garcia, et al. v. Beyond Meat, Inc.*, No. 4:22−00297 (S.D. Iowa); *Cascio v. Beyond Meat, Inc.*, No. 2:22−04018 (E.D.N.Y.); *Miller v. Beyond Meat, Inc.*, No. 1:22−06336 (S.D.N.Y.); and *Zakinov v. Beyond Meat, Inc.*, No. 4:23-cv-00144 (S.D. Tex.). Counsel for these Plaintiffs include FeganScott LLC (with their co-counsel, Shindler, Anderson, Goplerud and Weese), Levin Sedran & Berman, LLP, Lockridge Grindal Nauen PLLP, Mason LLP, Shub & Johns, LLC, Smith Krivoshey, P.C., and Sultzer & Lipari, PLLC .

Massachusetts, and Texas. Consolidated Complaint, ECF No. 12.

Plaintiffs filed their Consolidated Class Action Complaint on May 3, 2023, alleging Defendant violated state consumer fraud statutes: California's Consumer Legal Remedies Act, California Civil Code §§ 1750, *et seq*. ("CLRA"); California's False Advertising Law, California Business & Professions Code §§ 17500, *et seq*. ("FAL"); California's Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq*. ("UCL"); Illinois's Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq*.; Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1, *et seq*.; Mass. Gen. Laws Chapter 93A, § 2; New York General Business Law § 349 and § 350; Iowa's Private Right of Action for Consumer Frauds Act, Iowa Code § 714H; Texas's Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.01, *et seq*.; Colorado's Consumer Protection Act, Colo. Rev. Stat. Ann. §§ 6-1-101, *et seq*.; Florida's Unfair & Deceptive Trade Practices Act, Fla. Stat. § 501.201, *et seq*.; breached its express and implied warranties; and violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*. *Id.* Plaintiffs also sought claims for unjust enrichment, fraudulent misrepresentation, fraud by omission, and negligent misrepresentation. *Id.*

Defendant filed a motion to dismiss Plaintiffs' claims on June 5, 2023. ECF No. 16. After the parties fully briefed the motion, on February 21, 2024, the Court granted the motion in part and denied it in part, dismissing Plaintiffs' claims for injunctive relief and their front-of-label protein misrepresentation claims. ECF No. 29. Following the Court's opinion and order, Plaintiffs' surviving claims, individually and on behalf of ten (10) proposed classes, included violation of the Magnusson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*., violation of various state consumer fraud acts, breach of express and implied warranty, negligent misrepresentation, and unjust enrichment for the alleged misrepresentation of the "percent daily value" of protein on the Beyond

Meat Products' back label.

**B.       Discovery and Settlement Negotiations**

The parties have broached settlement in this case multiple times. *See* Suciu Decl. I ¶¶ 15-19. Indeed, Plaintiffs entered direct negotiations and later engaged Judge Andersen twice for mediation, without coming to an agreement. *Id.* Over the course of their settlement discussions, the parties exchanged informal discovery, including sales information. *Id.* Class Counsel also examined publicly available financial information from Defendant's quarterly and annual Financial Reports, which raised going concern risks for the company. *Id.* ¶ 11. Such sales data was combined with Plaintiffs' protein testing to determine the estimated damages in this case. *Id.* ¶¶ 11-14. Plaintiffs' settlement position was further informed by initial reporting from Plaintiffs' damages expert. *Id.* ¶¶ 13.

It was only after several weeks of negotiation, following the second mediation on April 24, 2024, that the parties were able to come to an agreement. *Id.* ¶¶ 15-19. The parties signed a Term Sheet on May 6, 2024, and finalized their Settlement Agreement on July 8, 2024. *Id.* ¶¶ 19.

### III.       MATERIAL TERMS OF THE SETTLEMENT

**A.       Monetary Relief**

Beyond Meat will contribute $7,500,000 to a "Settlement Fund" in full satisfaction of all Settlement costs, including all payments to Settlement Class Members, Notice and Administrative Costs, Attorneys' Fees and Expenses, Settlement Class representative Service Awards and taxes. Settlement Agreement[3] § IV(A). Notably, under the Settlement Agreement, Settlement Class Members will be entitled to seek benefits whether or not they are able to provide proof that they purchased the products. *Id.* § IV(C). If the Settlement Class Member does not have a proof of

---

[3] The complete terms of the Settlement Agreement can be found at ECF No. 46-3.

purchase, the Settlement Class Member can recover $2 per Beyond Meat Product, subject to a cap on the number of products for which he or she can recover. *Id*. Where a Settlement Class Member can and does provide proof of purchase, the Settlement Class Member can recover $2 per Beyond Meat Product, without any cap. *Id.* In the event that the total claims made exceed the Net Settlement Fund after paying the Notice and Administrative Costs, Attorneys' Fees and Expenses, and Service Awards, then the individual class benefit will be reduced *pro rata*. *Id.* § IV(D). Similarly, if the total claims are less than the Net Settlement Fund, the remaining amount will be distributed to participating Settlement Class Members. *Id.* At no point will any of the Settlement Fund revert to Defendant. *Id.* § IV(M).

To receive a cash payment, Settlement Class Members must file a timely and valid Claim Form. *Id.* § IV(D), *see also id.* Ex. 1 (the claims form). The Claim Form may be completed either online or by mail and must provide the number of Beyond Meat Product(s) purchased, along with any proof of purchase. *Id*. The Settlement Administrator will be responsible for reviewing all claims to determine their validity. *Id.* § IV(H).

**B.**     <u>**Notice and Other Administrative Costs**</u>

Class Counsel has worked to ensure that notice is the best practicable and reasonably calculated to apprise interested parties of the action so that they may make a claim, state their objection, or exclude themselves from the settlement. *Id*. § VI. Notice publications will include a website as well as a Media Plan tailored to maximize reach. *Id.* §§ VI(D)(1)-(2). All published notices will provide a link to the Settlement Website, where individuals can access a Long Form Notice describing the case and settlement, the Settlement Agreement, and other important documents and court filings including the Complaint, Preliminary Approval Order, and, when filed, the Final Approval Order. *Id*. § VI(D)(1). The Settlement Website will also allow individuals to download and submit the Claim Form, opt out of the class, and access contact information for

6

Class Counsel. *Id.*

In addition, the Settlement Administrator will (1) maintain a toll-free number that Class Members can use to request a copy of the Settlement Agreement, a claims form, and obtain any other information concerning the Settlement; (2) process and record timely requests to be excluded from the Settlement; and (3) serve notice of the Settlement on the appropriate state and federal officials pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715. *Id.* §§ VI(C), (D)(3), VII(B).

The estimated cost of notice and settlement administration is $282,340. Declaration of Nick Suciu, concurrently filed herewith ("Suciu Decl. II"), at ¶ 30. However, these costs are correlated with the number of claims received. *Id.* Therefore, depending on the reaction to the Settlement, the costs can be more or less than the estimate provided. *Id.*

## C. <u>Service Awards</u>

As part of the Settlement Agreement, Plaintiffs may seek a Service Award to each of the named Plaintiffs in the amount of $2,500. *Id.* § V(B).

## D. <u>Attorneys' Fees and Costs</u>

As is customary in common fund cases, Plaintiffs intend to seek reimbursement of their costs and attorneys' fees in an amount not to exceed 33 and 1/3 percent of the total Settlement Amount (or $2,500,000). *Id.* § V(A); Suciu Decl. ¶ 32. However, the Settlement is not contingent on any attorneys' fees or cost award. Settlement Agreement, § V(C).

Plaintiffs' total litigation costs in this case are $78,746.07and fall within the following categories:

- Filing/Service: $ $3,033.10
- Other Court Fees: $500.00 (such as *pro hac vice* fees)
- Mediator Fees: $23,259.75
- Postage and Courier Costs: $65.19
- Coping Costs: $342.91
- Telephone and other Communication Costs: $10.55

7

- Expert Fees: $45,237.00
- PACER Fees: $47.10
- Online/Legal Research Fees: $1,169.69
- Travel: $4,918.94 (to attend the Mediations)
- Copies: $107.41
- Miscellaneous Costs: $59.15 (including notary and other professional services).

Suciu Decl. II, at ¶¶ 28-29.

## IV.     ARGUMENT

### A.     The Requested Attorneys' Fees are Reasonable and Should be Approved

Under Federal Rule of Civil Procedure 23(h), courts may award "reasonable attorney's fees and nontaxable costs that are authorized by law or the parties' agreement." Fed. R. Civ. P. 23(h). Courts in the Seventh Circuit apply one of two fee calculation methods: the "percentage of the fund" method or the "lodestar" method. *See Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014). The Court has discretion in choosing which method to employ. *Americana Art China Co., supra*. However, "'[t]he approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred upon the class.'" *In re Kentucky Grilled Chicken Coupon Mktg. & Sales Pracs. Litig.*, 2011 WL 13257072, at *3 (N.D. Ill. Nov. 30, 2011) (*citing Williams v. Gen. Elec. Capital Auto Lease*, 1995 WL 765266, at *9 (N.D. Ill. Dec. 26 1995); *see also In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 844 (N.D. Ill. 2015) (noting that the percentage method "has emerged as the favored method for calculating fees in common fund cases in this district"). Indeed, "the 'percentage method is employed by the vast majority of courts in the Seventh Circuit.'" T.*K. Through Leshore v. Bytedance Tech. Co.*, 2022 WL 888943, at *24 (N.D. Ill. Mar. 25, 2022) (*quoting Hale v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 6606079, at *7 (S.D. Ill. Dec. 16, 2018)).

Here, Plaintiffs request an award of $2.5 million in attorneys' fees, which represents 32.28% of the Settlement Fund and a 2.13 ($2,421,253.93 in fees requested/$1,132,655.60 in fees

expended) multiplier of Class Counsel's lodestar ($2,421,253.93 in fees requested/$1,132,655.60 in lodestar). Thus, under either approach, Plaintiffs' requested fees and costs are reasonable.

1.    The Requested Fees Are Reasonable Under the Percentage of the Fund Method

"Under the percentage-of-recovery method, the attorneys' fees equal some percentage of the common settlement fund[.]" *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015). This percentage approach aligns the incentives of the class members and their counsel and thus encourages counsel to spend their time efficiently and to focus on maximizing the size of the class's recovery. *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375-76 (N.D. Cal. 1989). Here, Plaintiffs request fee is reasonable under a percentage-of-recovery analysis, especially given that it is a common fund with no reversion.

The Seventh Circuit has stated that in assessing the reasonableness of a requested percentage to award as attorneys' fees, a "court should do its best to award counsel the market price for legal services." *In re Stericycle Sec. Litig.*, 35 F.4th 555, 559 (7th Cir. 2022) (cleaned up). In determining the market rate for legal work, district courts review factors including: (i) "the risk of nonpayment a firm agrees to bear;"; (ii) "the quality of [Counsel's] performance"; (iii) "the amount of work necessary to resolve the litigation"; (iv) "the stakes of the case"; (v) the "complexity, length, and expense of the litigation"; and (vi) "actual fee agreements, data from similar cases, and class-counsel auctions." *Id*. at 560; *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d at 844. A review of these factors supports Class Counsel's fee request.

a.    *The Risk of Nonpayment*

This factor recognizes the risk of nonpayment in cases prosecuted on a contingency basis where claims are not successful, which can justify higher fees. *See, e.g., Kujat v. Roundy's Supermarkets Inc.*, 2021 WL 4551198, at *4 (N.D. Ill. Aug. 11, 2021) ("A one third fee is also reasonable in light of the significant risks of nonpayment that Plaintiffs' counsel faced.")   Put

9

simply, "'A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases." *Browne v. Am. Honda Motor Co*., 2010 WL 9499073, at *11 (C.D. Cal. Oct. 5, 2010); *Silverman v. Motorola Solutions, Inc*., 739 F.3d 956, 958 (7th Cir. 2013) ("Contingent fees compensate lawyers for the risk of non-payment. The greater risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel.").

Here, Class Counsel took on this complex class action, which takes years to resolve, after several thousands of dollars of costs, on a contingent basis. And, while confident in Plaintiffs' claims, there is still much litigation left until trial. Class Counsel would have to guide this case through class certification, summary judgment and trial, which each have their own difficulties. *See* Suciu Decl. II at ¶¶ 19-21. For example, Plaintiffs would have to prove, using scientific evidence, that Defendant did not have the advertised daily value of protein, that this practice was uniform and pervasive during the class period, and that it can be proven based on common evidence. Further, even if Plaintiffs succeeded at class certification and trial, Defendants would be entitled to their appeals. Thus, this case presented a substantial risk of nonpayment for Class Counsel. *See In re Cont'l Ill. Sec. Litig*., 962 F.2d 566, 570 (7th Cir. 1992) (remanding for reconsideration of "the fee due class counsel" where "they could have lost everything").

This risk was only compounded by Defendant's perceived financial difficulties. *See* Laurence Darmiento, HOW BEYOND MEAT IS TRYING TO GET ITS SIZZLE BACK, Los Angeles Times (May 31, 2024) (available at www.latimes.com/business/story/2024-05-31/how-beyond-meat-lost-some-of-its-sizzle) ("The sales decline has taken a sharp financial toll, with the company's cash position falling from $733 million in 2021 to $190 million last year. That

prompted TD Cowen in a May earnings note to say the company may run out of money if it can't stem the bleeding or raise funds — an outcome [Beyond Meat] dismisses."). Thus, even if successful, Class Counsel risks trying to recover from a judgment-proof defendant.

The fact Class Counsel undertook this representation, despite these significant risks, supports the requested fee award.

        b.    *The Quality of Counsel's Performance*

This class action litigation presents challenges, especially in this case as outlined above. Nonetheless, Class Counsel achieved an exceptional Settlement that provides significant monetary relief, and proved they have the ability and resources to litigate this case zealously and effectively. Indeed, it was only after months of negotiation, aided by Judge Andersen and two mediations, that Class Counsel was able to achieve a result that secured members of the Class at least what they likely could have received at trial. *See* Suciu Decl. I, ¶ 30 ("Indeed, each participating Settlement Class Member may receive $2 per qualified Beyond Meat Product under the terms of the Settlement. This is more than both the preliminary calculation of $0.06-$0.24 per product damages that Plaintiffs estimated would be recovered if successful at trial for the dismissed front-of-the-package claims and the preliminary calculation of $1.20 in estimated damages for the surviving "percent daily value" protein claims."). Additionally, Class Counsel had to litigate the case through a motion to dismiss, a JPML hearing, and informal and expert discovery. Given these results, it is unsurprising that Class Counsel has been recognized by courts across the country for its expertise, including courts in this District and have been negotiating this Settlement for over a year. *See* Declarations of Nick Suciu III, Elizabeth A. Fegan, Charles E. Schaffer, Robert K. Shelquist, Danielle L. Perry, Jonathan Shub, Joel D. Smith, and Jason Sultzer, with the accompanying exhibits, concurrently filed herewith. Class Counsel litigated this case efficiently, effectively, and civilly. The excellent result is a function of the high quality of that work, which

2972080.2

supports the requested fee award.

        c.       _Amount of Work Necessary to Resolve The Litigation_

Class Counsel were aware that pursuing this Action beyond settlement would be lengthy and expensive—it would require additional discovery, briefing, argument, trial, and potential appeals, which would push off relief for several more years. Suciu Decl. II, at ¶¶ 20-23. In addition, Class Counsel would have to expend hundreds of thousands of dollars retaining experts on, _inter alia_, damages (such as conjoint and regressionary analysis) and consumer perception (to provide insight on the expectations of a "reasonable consumer"), and then having those experts rebut any evidence Defendant puts forth. _Id._

As discussed herein and in Class Counsel's supporting Declarations, investigating, prosecuting, and settling this matter required considerable commitment of time and resources. Class Counsel zealously represented the interests of the Settlement Class from the inception of this Action and will continue to do so through Final Approval. Class Counsel expended substantial time and effort in the prosecution of this Action, and their coordinated efforts were critical to achieving a substantial Settlement for the Settlement Class. Class Counsel expect to maintain a high level of oversight and involvement in this Action and will continue to incur significant amounts of time given the future work still needed for completion of the Settlement, including, but not limited to continuing to oversee claims administration and answering Settlement Class members' questions; responding to any potential objections; preparing for and appearing at the Final Approval Hearing; and resolving any appeals. Suciu Decl. II, at ¶¶ 25-26. This factor thus weighs in favor of the requested fees and costs.

        d.       _The Complexity, Length, and Expense of this Litigation_

The complex nature of this litigation further favors the requested fee award. Consumer product class action lawsuits are complex, risky, and expensive to litigate, especially when

12

considering the numerous unresolved issues that they present. *See In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 941 (N.D. Ill. 2022) ("A one-third flat fee also is routine for class action settlements in similarly complex fields, such as … consumer protection litigation."). This is particularly true in this case. Before even getting to the merits, the number of cases and wide-ranging public interest lead to the case being consolidated by the Judicial Panel on Multidistrict Litigation. ECF Nos. 1, 6. Additionally, as previewed by Defendant's Motion to Dismiss, this case involves a number of legal disputes, often involving the complex intersection between numerous state's consumer protection laws and federal food labeling laws. *See* ECF No. 17. Additionally, on the factual side, the case will involve expert discovery touching on scientific protein testing, as well as consumer surveys, which will pose its own difficulties. Accordingly, this is far from the type of routine cases, and requires seasoned class action attorneys, with the requisite knowledge of food labeling regulations. Thus, this factor also favors Plaintiffs' requested fees and expenses.

      e.       *Stakes of the Case*

Given their inherent complexity and size, class action lawsuits are high stakes litigation. Indeed, as noted above, Defendant's financial situation may make this a "bet the company" level litigation should it have moved forward. *See* Darmiento, HOW BEYOND MEAT IS TRYING TO GET ITS SIZZLE BACK, Los Angeles Times (noting concerns regarding Defendant's solvency). The stakes were also high on the side of the Class. Settlement Class Members' claims would likely have faced numerous defenses, such as the possibility that the Court would dismiss the remainder of Plaintiffs' claims at summary judgment, decline to certify the Class or decertify the Class, or that Plaintiffs would not prevail at trial. This would represent a lose of millions of dollars of potential recovery. This factor supports approving Class Counsel's fee request because despite the uncertain nature of the Action, Settlement Class Members are nevertheless receiving real benefits under the Settlement.

13

f. _Actual Fee Agreements, Data from Similar Cases, and Class-Counsel Auctions_

The Seventh Circuit has held that "[w]hen a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund … in recognition of the fact that most suits for damages in this country are handled on the plaintiff's side on a contingent fee basis. The typical contingent fee is between 33 and 40 percent." _Gaskill v. Gordon_, 160 F.3d 361, 362 (7th Cir. 1998) (emphasis added; internal citations omitted). Indeed, district courts within the Seventh Circuit "regularly award percentages of 33.33% or higher to counsel in class action litigation." _Hale_, 2018 WL 6606079, at *10; _Martin v. Caterpillar Inc._, 2010 WL 11614985, at *2 (C.D. Ill. Sept. 10, 2010) ("[C]ourts in the Seventh Circuit award attorney fees equal to approximately one-third or more of the recovery.") (cleaned up). In the instant case, Class Counsel requests an award of $ 2,421,253.93 in attorneys' fees, which is equal to 32.28% of the Settlement Fund ($7.5 million), well within the range of reasonableness.

Here, all the factors support Class Counsel's request for a fee that is 32.28% of the Settlement Fund.[4]

## B. **The Requested Attorneys' Fees are Also Reasonable Under a Lodestar Cross-Check**

A lodestar cross-check further supports the requested fee. To calculate lodestar, counsel's reasonable hours expended on the litigation are multiplied by counsel's reasonable rates. _See Blum v. Stenson_, 465 U.S. 886, 897 (1984); _Summers_, 2005 WL 3159450, at *1. The resulting figure

---

[4] It is also worth noting that thirty-three and one-third percent is a standard percentage in many contingency fee agreements, including large, complex non-class cases. _See_ Lester Brickman, _ABA Regulation of Contingency Fees: Money Talks, Ethics Walks_, 65 FORDHAM L. REV. 247, 248 (1996) (noting that "standard contingency fees" are "usually thirty-three percent to forty percent of gross recoveries"); _see also Blum v. Stenson_, 465 U.S. 886, 903 (1984) (Brennan, J., concurring) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery."). Accordingly, a fee award of 33.33% mimics what might have been agreed to absent any approval by the Court.

14

may be adjusted at the court's discretion by a multiplier, considering various equitable factors. *See United States ex rel. Perez v. Williams*, 2013 WL 1181487, at *1 (N.D. Ill. Mar. 19, 2013) ("The lodestar figure may be adjusted to reflect factors such as the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation."). Where the lodestar is "used merely as a cross-check, the lodestar analysis can be 'abridged.'" *In re Trans Union Corp. Priv. Litig.*, 2009 WL 4799954, at *17 (N.D. Ill. Dec. 9, 2009).[5]

Here, Class Counsel expended 1,511.75 hours of attorney and staff time, at a blended billing rate of $749.23, for a total of $1,132,655.60 lodestar. Suciu Decl. II, at ¶¶ 17-18. This represents a 2.13 lodestar multiplier (2,421,253.93 in fees requested/$1,132,655.60 in billing expended). *Id.* Given this is an MDL, involving multiple cases, and a national case, this multiplier is not unreasonable. Indeed, most multipliers range between one and four, with an average of 2.7. *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d at 943 (noting "[i]n practice, most multipliers fall between one and four."); *In re Lawnmower Engine Horsepower Mktg. & Sales Pracs. Litig.*, 733 F. Supp. 2d 997, 1015 (E.D. Wis. 2010) (2.07 was a reasonable given that the average multiplier was 2.7); *see also Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598 (N.D. Ill. 2011) ("The requested award here would represent a multiplier of less than 2.5, which is not an unreasonable risk multiplier."). This is particularly true given that this case.

The base lodestar is often augmented by a multiplier based on the complexity of the legal issues, the degree of success, and the public interest advanced by the litigation. *Paz v. Portfolio Recovery Assocs., LLC*, 924 F.3d 949, 954 (7th Cir. 2019); *Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010). Also considered is the risk of non-payment. *See Harman v. Lyphomed, Inc.*,

---

[5] While "[t]he use of a lodestar cross-check has fallen into disfavor" (*George v. Kraft Foods Glob., Inc.*, Nos. 1:08-cv03799; 1:07-cv-01713, 2012 WL 13089487, at *3 (N.D. Ill. June 26, 2012)), it still can be an important cross-check on reasonableness of a fee.

945 F.2d 969, 976 (7th Cir. 1991). As discussed above, all of these factors are present in this case. Class Counsel took this case on a contingency basis, with a significant risk of receiving no payment, even if successful. Additionally, this class action involved consolidated MDL, involving multiple Plaintiffs and putative classes. This case further involved complex legal and factual issues, requiring significant expert testimony and scientific evidence. And Class Counsel secured a settlement that, on an individual basis, will offer at least what could have been achieved at trial for participating Settlement Class Members. Given these considerations, a relatively modest multiple of 2.13 is appropriate.

## V.  THE COURT SHOULD AWARD THE REQUESTED EXPENSES

This Court may also award reasonable expenses as provided for by the Settlement Agreement. Fed. R. Civ. P. 23(h). Plaintiffs seek reimbursement of $78,746.07in litigation expenses:

- Filing/Service: $ $3,033.10
- Other Court Fees: $500.00 (such as *Pro Hac Vice* fees)
- Mediator Fees: $23,259.75
- Postage and Courier Costs: $65.19
- Coping Costs: $342.91
- Telephone and other Communication Costs: $10.55
- Expert Fees: $45,237.00
- PACER Fees: $47.10
- Online/Legal Research Fees: $1,169.69
- Travel: $4,918.94 (to attend the Mediations)
- Copies: $107.41
- Miscellaneous Costs: $59.15 (including notary and other professional services).

Suciu Decl. II, at ¶¶ 28-29. These expenses consist primarily of meditation and expert-witness fees but also include things such as court fees and service costs. Such costs were necessary to bring this case to a successful resolution. Additionally, in total, Plaintiffs' costs are proportionate to the needs of the litigation relative to the benefit received by the Settlement Class. *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1041 (N.D. Ill. 2011) ("The

16

Court also observes a 2004 empirical study, which found that '[c]osts and expenses for the sample as a whole were, on average 4 percent of the relief for the class[.]'") (*citing* Theodore Eisenberg & Geoffrey P. Miller, Attorney Fees in Class Action Settlements: An Empirical Study, 1 J. Empirical Legal Stud. 27, 70 (2004)).

Such fees are the type of costs normally billed to clients in non-contingency matters. *See In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001) ("Reducing litigation expenses because they are higher than the private market would permit is fine; reducing them because the district judge thinks costs too high in general is not."). Here, Plaintiffs expenses are itemized and represented with the level of detail that would be required in the marketplace. *Id.*; *In re Forefront Data Breach Litig.*, No. 21-CV-887, 2023 WL 6215366, at *9 (E.D. Wis. Mar. 22, 2023). Accordingly, such costs should be reimbursed to Class Counsel.

## VI. THE REQUESTED SERVICE AWARD REFLECTS PLAINTIFFS' ACTIVE INVOLVEMENT IN THIS ACTION AND SHOULD BE APPROVED

Incentive awards are common in class actions and serve to "induce individuals to become named representatives." *In re Synthroid Mktg. Litig.*, 264 F.3d at 722. Incentive awards fulfill the important purpose of compensating plaintiffs for "the amount of time and effort the plaintiff[s] expended in pursuing the litigation." *Wright v. Nationstar Mortage LLC*, 2016 WL 4505169, at *17 (N.D. Ill. Aug. 29, 2016). Here, the named Plaintiffs' participation was critical to the ultimate success of the case. Suciu Decl. II, at ¶¶ 4-6. Plaintiffs spent significant time protecting the interests of the class through their involvement in this case. *Id*. Plaintiffs assisted Class Counsel in investigating their claims by providing information necessary to draft and file the Complaint and First Amended Complaint. *Id*. During the course of litigation, Plaintiffs kept in regular contact with their lawyers to receive updates on the progress of the case and to discuss strategy and settlement. *Id*.

On these facts, the $2,500 incentive payments to each named Plaintiff are appropriate in light of their efforts to protect the interests of the other Settlement Class members, the time and effort they expended pursuing this matter, and the substantial benefit they helped achieve for the other Settlement Class members. Further, the incentive awards are reasonable, especially when compared to greater awards approved by courts in this District. *See, e.g., Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 205 (N.D. Ill. 2018) (approving an incentive award of $10,000 where plaintiff's participation was "more inconvenience than the average consumer would want to put up with in the absence of an incentive to do so"); *In re Cap. One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d at 781, 809 (N.D. Ill. 2015) ("[A] $5,000 award is consistent with the awards granted by other courts in this district in similar litigation.") (citation omitted). Indeed, other courts have suggested that the requested proposed $2,500 incentive payments are "modest" for the amount of time and effort expended by the named Plaintiffs. *In re Forefront Data Breach Litig.*, 2023 WL 6215366, at *9 ("I conclude that incentive awards of $2,500 are warranted. This is a modest sum and appropriate compensation for the work the class members did in reviewing pleadings and settlement documents, providing information about their claims, and gathering documents."). Thus, the Service Fees should be awarded.

## VII.   CONCLUSION

For the foregoing reasons, Class Counsel respectfully requests that the Court grant Plaintiffs' motion for an award of $2,500,000 in attorneys' fees and expenses, and award each named Plaintiff $2,500 ($40,000 cumulatively) for their time and effort in successfully prosecuting this action.

2972080.2

Dated: October 15, 2024

Respectfully submitted,

By: */s/ Nick Suciu III*

Nick Suciu III
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
6905 Telegraph Road, Suite 115
Bloomfield Hills, Michigan 48301
Telephone: (313) 303-3472
Facsimile: (865) 522-0049
Email: nsuciu@milberg.com

Joel D. Smith
**SMITH KRIVOSHEY, P.C.**
867 Boylston Street
5th Floor, #1520
Boston, MA 02116
Telephone: 617-377-7404
Email: joel@skclassactions.com

Jonathan Shub
**SHUB & JOHNS LLC**
Four Tower Bridge
200 Barr Harbor Dr., Ste. 400
Conshohocken, PA 19428
Telephone: (856) 772-7200
Facsimile: (856) 210-9088
Email: jshub@shublawyers.com

Elizabeth A. Fegan
**FEGAN SCOTT LLC**
150 South Wacker Drive, 24th Floor
Chicago, Illinois 60606
Telephone: (312) 741-1019
Facsimile: (312) 264-0100
Email: beth@feganscott.com

Jason P. Sultzer
**THE SULTZER LAW GROUP P.C.**
85 Civic Center Plaza, Suite 200
Poughkeepsie, New York 12601
Telephone: (845) 483-7100
Facsimile: (888) 749-7747
Email: sultzerj@thesultzerlawgroup.com

19

Robert K. Shelquist
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Ave. S, Suite 2200
Minneapolis, Minnesota 55401
Mobile: (612) 991-2934
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
Email: rkshelquist@locklaw.com

*Counsel for Plaintiffs and the Class*

20

**<u>CERTIFICATE OF SERVICE</u>**

I, Nick Suciu III, the undersigned attorney, hereby certify that on October 15, 2024, I caused the foregoing Memorandum to be served upon all counsel of record via the Court's ECF system.


*/s/ Nick Suciu III*

Nick Suciu III

2972080.2