# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| In Re: Beyond Meat, Inc., Protein Content Marketing and Sales Practices Litigation | Case No. 1:23-cv-00669 |
| | MDL No. 3059 |
| | Judge Sara L. Ellis |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Nick Suciu III
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
6905 Telegraph Road, Suite 115
Bloomfield Hills, Michigan 48301
Telephone: (313) 303-3472
Facsimile: (865) 522-0049
Email: nsuciu@milberg.com

Joel D. Smith
**SMITH KRIVOSHEY, P.C.**
867 Boylston Street
5th Floor, #1520
Boston, MA 02116
Telephone: 617-377-7404
Email: joel@skclassactions.com

Jonathan Shub
**SHUB & JOHNS LLC**
Four Tower Bridge
200 Barr Harbor Dr., Ste. 400
Conshohocken, PA 19428
Telephone: (856) 772-7200
Facsimile: (856) 210-9088
Email: jshub@shublawyers.com

Elizabeth A. Fegan
**FEGAN SCOTT LLC**
150 South Wacker Drive, 24th Floor
Chicago, Illinois 60606
Telephone: (312) 741-1019
Facsimile: (312) 264-0100
Email: beth@feganscott.com

Jason P. Sultzer
**THE SULTZER LAW GROUP P.C.**
85 Civic Center Plaza, Suite 200
Poughkeepsie, New York 12601
Telephone: (845) 483-7100
Facsimile: (888) 749-7747
Email: sultzerj@thesultzerlawgroup.com

Robert K. Shelquist
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Ave. S, Suite 2200
Minneapolis, Minnesota 55401
Mobile: (612) 991-2934
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
Email: rkshelquist@locklaw.com

*Co-Lead Counsel for Plaintiffs and the Class*

## <u>TABLE OF CONTENTS</u>

**PAGE**

INTRODUCTION ................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND.........................................2

    I.     Background .................................................................................. 2

    II.    Discovery And Settlement Negotiations.................................... 3

KEY TERMS OF THE SETTLEMENT ...........................................................5

    I.     Class Definition .......................................................................... 5

    II.    Monetary Relief ......................................................................... 6

         A.    Settlement Fund ............................................................. 6

         B.    Net Settlement Fund and Individual Claims.................. 6

         C.    Settlement Class Claims ................................................ 7

    III.   Release ........................................................................................ 8

    IV.   SETTLEMENT NOTICE ........................................................... 8

ARGUMENT ...................................................................................................10

    I.     CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE......... 10

    II.    THE NOTICE PLAN COMPORTS WITH DUE PROCESS ............................. 11

    III.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE FINALLY APPROVED BY THE COURT ................................................................................... 12

         D.    The *Wong* Factors ..................................................... 13

              1.    The Settlement Amount Is Reasonable In Light Of The Strengths And Weaknesses Of Plaintiffs' Case (Wong Factor 1)................... 13

              2.    Further Litigation Would Be Complex, Costly, And Long (Wong Factor 2) ................. 16

              3.    The Amount Of Opposition To The Settlement And The Reaction Of The Class (Wong Factors 3-4) ......................... 17

i

4.      Experienced And Competent Counsel Endorse The
        Settlement (Wong Factor 5)..................................................... 17

5.      Discovery Has Advanced Far Enough To Allow The
        Parties To Responsibly Resolve The Case (Wong
        Factor 6) .............................................................................. 18

E.      The Rule 23(e)(2) Factors ...................................................... 19

1.      The Class Representatives And Plaintiffs' Counsel
        Have Adequately Represented The Class (Rule
        23(e)(2)(A))........................................................................... 19

2.      The Settlement Was Negotiated At Arm's Length
        (Rule 23(e)(2)(B)) ................................................................ 19

3.      The Settlement Provides Adequate Relief To The
        Class (Rule 23(e)(2)(C)) ....................................................... 20

4.      The Settlement Treats All Class Members Equally
        (Rule 23(e)(2)(D))................................................................. 23

CONCLUSION...........................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**PAGE(S)**

**Cases**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
   2011 WL 3290302 (N.D. Ill. July 26, 2011) ........................................................... 22

*Arnold v. Fitflop USA, LLC*,
   2014 WL 1670133 (S.D. Cal. Apr. 28, 2014) ......................................................... 12

*Cagan v. Anchor Sav. Bank FSB*,
   1990 WL 73423 (E.D.N.Y. May 22, 1990) ............................................................ 17

*Chambers v. Together Credit Union*,
   2021 WL 1948453 (S.D. Ill. May 14, 2021) ........................................................... 17

*Charvat v. Valente*,
   2019 WL 5576932 (N.D. Ill. Oct. 28, 2019) ..................................................... 19, 26

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ............................................................................... 19

*Czuchaj v. Conair Corp.*, 2016 WL 1240391
   (S.D. Cal. March 30, 2016) .................................................................................... 24

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ............................................................................................... 11

*Gehrich v. Chase Bank USA, N.A.*,
   316 F.R.D. 215 (N.D. Ill. 2016) ............................................................................ 18

*Hester v. Vision Airlines, Inc.*,
   2017 WL 4227928 (D. Nev. Sept. 22, 2017) ......................................................... 25

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
   789 F. Supp. 2d 935 (N.D. Ill. 2011) .................................................................... 20

*In re AT&T Mobility*,
   270 F.R.D. 330 (N.D. Ill. Aug. 11, 2010) ............................................................. 15

*In re Cap. One Tel. Consumer Prot. Act Litig.*,
   80 F. Supp. 3d 781 (N.D. Ill. 2015) ...................................................................... 20

*In re Lawnmower Engine Horsepower Mktg. & Sales Pracs. Litig.*,
   733 F. Supp. 2d 997 (E.D. Wis. 2010) .................................................................. 27

*In re Mexico Money Transfer Litig.*,
    164 F. Supp. 2d 1002 (N.D. Ill. 2000) .................................................................. 21

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................................. 28

*In re Southwest Airlines Voucher Litig.*,
    2013 WL 4510197 (N.D. Ill. Aug. 26, 2013) ................................................. 16, 20

*In re TikTok, Inc., Consumer Priv. Litig.*,
    565 F. Supp. 3d 1076 (N.D. Ill. 2021) ...................................................... 11, 23, 27

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) ...................................................................... 13, 21

*Kaufman v. Am. Express Travel Related Servs. Co., Inc.*,
    877 F.3d 276 (7th Cir. 2017) ................................................................................ 14

*Keepseagle v. Vilsack*,
    118 F. Supp. 3d 98 (D.D.C. 2015) ........................................................................ 25

*Kolinek v. Walgreen Co.*,
    311 F.R.D. 483 (N.D. Ill. 2015) .............................................................. 11, 25, 26

*Lucas v. Vee Pak, Inc.*,
    2017 WL 6733688 (N.D. Ill. Dec. 20, 2017) ...................................................... 13

*Pappas v. Naked Juice Co of Glendora, Inc.*,
    2014 WL 12382279 (C.D. Cal. Jan. 2, 2014) ...................................................... 12

*Patellos v. Hello Products, LLC*,
    2022 WL 2159566 (S.D.N.Y. June 15, 2022) ...................................................... 28

*Rebney v. Wells Fargo Bank*,
    220 Cal. App. 3d 1117 (1990) .............................................................................. 24

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ............................................................ 19, 27

*Snyder v. Ocwen Loan Serv., LLC*,
    2018 WL 4659274 (N.D. Ill. Sept. 28, 2018) ...................................................... 14

*Snyder v. Ocwen Loan Serv., LLC*,
    2019 WL 2103379 (N.D. Ill. May 14, 2019) ............................................ 21, 22, 23

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ................................................................................ 26

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) ........................................................ 15, 22

*T.K. Through Leshore v. Bytedance Tech. Co.*,
    2022 WL 888943 (N.D. Ill. Mar. 25, 2022)................................... 15, 28

*Werdebaugh v. Blue Diamond Growers*,
    2014 WL 7148923 (N.D. Cal. Dec. 15, 2014) ...................................... 24

*Wilson v. Airborne, Inc.*,
    2008 WL 3854963 (C.D. Cal. Aug. 13, 2008) ...................................... 12

## Statutes

15 U.S.C. § 2301 ...................................................................................... 3

815 ILCS 505/1 ........................................................................................ 3

815 ILCS 510/1 ........................................................................................ 3

California Business & Professions Code § 17200 ...................................... 3

California Business & Professions Code § 17500 ...................................... 2

California Civil Code § 1750 ..................................................................... 2

Colo. Rev. Stat. Ann. §§ 6-1-101 ............................................................. 3

Fla. Stat. § 501.201 .................................................................................. 3

Iowa Code § 714H ................................................................................... 3

New York General Business Law § 349 .................................................... 3

New York General Business Law § 350 .................................................... 3

Tex. Bus. & Com. Code Ann. § 17.01 ...................................................... 3

## Other Authorities

Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist and Plain
    Language Guide ................................................................................ 13

Laurence Darmiento, How Beyond Meat is Trying to get its Sizzle Back, Los Angeles
    Times (May 31, 2024) ...................................................................... 18

## Rules

Fed. R. Civ. P. 23 ............................................................................. passim

**Treatises**

NEWBERG ON CLASS ACTIONS (4th ed. 2002) ......................................................................... 12, 21

Plaintiffs Angelique Roberts, Hannah Offutt, Dylan Rushing, Orlandra Hawthorne, Nisha Albert, Adam Sorkin, Dartisha Anderson, Christine Borovoy, Todd Miller, Richard D. Garcia, Erica Nichols Cook, Jennifer Speer, Rosemarie Ramirez, Mary Yoon, Christopher Bates, and Stan Zakinov (collectively, "Plaintiffs"), by and through Class Counsel, respectfully submit this Memorandum of Law in support of Plaintiffs' Motion for Final Approval of Class Action Settlement (hereinafter the "Motion"). Defendant Beyond Meat, Inc. does not oppose this Motion.

## INTRODUCTION

After over two years of litigation, multiple rounds of mediation, and extensive arm's-length negotiations, the parties have reached this proposed Settlement that would provide substantial relief to Settlement Class Members. The $7.5 million non-reversionary common fund provides a two-dollar refund to all participating Settlement Class Members (subject to a *pro rata* adjustment), for each Beyond Meat product they purchased (capped if they do not have proof of purchase). But, given the number of claims filed, Plaintiffs currently calculate that Settlement Class Members will receive $1.48 per Beyond Meat Product, which represents a significant damages recovery. On an individual basis, this recovery is more than Class Counsel's initial per Product damages estimate of $1.20. Consequently, participating Settlement Class Members are receiving the high end of damages relief that they could have hoped for at trial, but without the delay and risk of further litigation. If the goal of this litigation was to provide compensation to consumers misled by Defendant's alleged misrepresentation of the "percent daily value" of protein on the Beyond Meat Products' label, then the Settlement hits the mark.

Unsurprisingly, the response to the Settlement has been overwhelmingly positive. After providing robust publication notice to potential Class Members, 292,899 claims have been filed to date under the Settlement. *See* Declaration of Andrea Dudinsky ("Dudinsky Decl."), concurrently

filed herewith, at ¶ 20. There were only 14 opt-outs, and no objections. *Id.,* at ¶ 23. Plainly, the Settlement was met by approval by the Settlement's principal constituents: the Settlement Class. For these reasons, as well as all of the further reasons discussed herein, Plaintiffs respectfully submit that the Settlement is fair, reasonable, and adequate and should be finally approved by the Court.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    BACKGROUND

This class action arises from Beyond Meat's alleged mislabeling of the Beyond Meat branded, meat alterative products. A portion of the above-named Plaintiffs initially filed their complaint in May of 2022, on behalf of consumers who purchased the Beyond Meat Products at issue during the relevant class period, predominantly from retail stores located in Illinois, Massachusetts, and New York. *Roberts et. al vs. Beyond Meat, Inc.*, No. 1:22-cv-02861 (N.D. Ill.), ECF No. 1. Additional cases were subsequently filed, and Defendant moved to centralize this litigation in the Northern District of Illinois pursuant to 28 U.S.C. § 1407.

On February 1, 2023, the United States Judicial Panel on Multidistrict Litigation transferred all the related Beyond Meat cases to the Northern District of Illinois and assigned them to this Court for coordinated or consolidated pretrial proceedings.[1] ECF No. 1. Plaintiffs filed their Consolidated Class Action Complaint on May 3, 2023, alleging Defendant violated California's Consumer Legal Remedies Act, California Civil Code §§ 1750, *et seq.* ("CLRA"); California's False Advertising Law, California Business & Professions Code §§ 17500, *et seq.* ("FAL");

---

[1] The consolidated cases include: *Roberts, et. al. v. Beyond Meat, Inc.*, C.A. No. 1:22−02861 (N.D. Ill.); *Borovoy v. Beyond Meat, Inc.*, C.A. No. 1:22−06302 (N.D. Ill.); *Garcia, et al. v. Beyond Meat, Inc.*, No. 4:22−00297 (S.D. Iowa); *Cascio v. Beyond Meat, Inc.*, No. 2:22−04018 (E.D.N.Y.); *Miller v. Beyond Meat, Inc.*, No. 1:22−06336 (S.D.N.Y); and *Zakinov v. Beyond Meat, Inc.*, No. 4:23-cv-00144 (S.D. Tex.).

California's Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq.* ("UCL"); Illinois's Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*; Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1, *et seq.*; Mass. Gen. Laws Chapter 93A, § 2; New York General Business Law § 349 and § 350; Iowa's Private Right of Action for Consumer Frauds Act, Iowa Code § 714H; Texas's Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.01, *et seq.*; Colorado's Consumer Protection Act, Colo. Rev. Stat. Ann. §§ 6-1-101, *et seq.*; Florida's Unfair & Deceptive Trade Practices Act, Fla. Stat. § 501.201, *et seq.*; breached its express and implied warranties; and violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq. Id.* Plaintiffs also asserted claims for unjust enrichment, fraudulent misrepresentation, fraud by omission, and negligent misrepresentation. *Id.*

Defendant filed a Motion to Dismiss Plaintiffs' claims on June 5, 2023. ECF No. 16. On February 21, 2024, the Court granted Defendant's Motion in part and denied it in part, dismissing Plaintiffs' claims for injunctive relief, as well as their front-of-label protein misrepresentation claims. ECF No. 29. Following the Court's opinion and order, Plaintiffs' surviving claims included violation of the Magnusson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, violation of various state consumer fraud acts, breach of express and implied warranty, negligent misrepresentation, and unjust enrichment for the alleged misrepresentation of the "percent daily value" of protein on the back label of the Beyond Meat Products.

## II. DISCOVERY AND SETTLEMENT NEGOTIATIONS

The parties broached settlement multiple times in this case. *See* Declaration of Nick Suciu III, ECF No. 46-1 ("Suciu Decl."), ¶¶ 15-19. These negotiations started back in 2022, prior to the filing of the original complaint, prompted by Plaintiffs' pre-suit notice letter to Defendant. *Id.* After the complaint was filed, the parties retained the Honorable Wayne R. Andersen (Ret.) for a

full day mediation, which occurred on October 11, 2022. *Id.* But these initial settlement efforts proved unsuccessful, and the litigation continued. *Id.* The parties, however, would return to Judge Andersen for an additional mediation. *Id.* On April 24, 2024, prompted by the Court's ruling on the Motion to Dismiss, the parties attempted another full-day mediation. *Id.* Yet, again, no resolution was found. *Id.*

After this last mediation, the parties continued to engage with each other through Judge Andersen, and after several weeks of mediated negotiation, the parties finally agreed to the settlement terms currently pending before this Court. *Id.* The parties entered into a term sheet on May 6, 2024, and finalized their Settlement Agreement on July 8, 2024. *Id.* The Settlement Agreement can be found attached as Exhibit B to Declaration of Nick Suciu III, submitted in support of the Motion for Preliminary Approval (ECF No. 46-3).[2]

Over the course of their settlement discussions, the parties exchanged informal discovery, including sales information. *Id.* Class Counsel also examined publicly available financial information from Defendant's quarterly and annual financial reports for information regarding the company's revenue and sales. *Id.* ¶ 11. Such sales data was combined with Plaintiffs' protein testing and initial damages modeling to estimate damages in this case. *Id.* ¶¶ 11-14. While Plaintiffs have not yet conducted expert discovery, Plaintiffs did retain a consulting expert to estimate the price premium resulting from the "percent daily value" protein claims. *Id.* ¶ 13. Based on the expert's preliminary work, Plaintiffs estimate that the higher end of the range price premium for the "percent daily value" claims would be about 18 percent of the Beyond Meat Products' price (or about $1.20). *Id.* (Plaintiffs estimate the average retail price of a unit sold by Defendant is

---

[2] All capitalized terms not otherwise defined herein have the same definitions as set out in the Settlement. *See* Joint Decl. Ex. 1.

$6.69). This price premium is consistent with counsel's past experiences in litigating protein claims, as well as general mislabeling cases.

Additionally, Class counsel was able to estimate the damages resulting from the "front" label claims, which were previously dismissed by the Court. In a previous mislabeling case litigated by Class Counsel, involving the overstatement of the protein content of a protein drink, expert discovery was able to estimate that missing protein would be approximately 6 cents per gram of missing protein. Suciu Decl. ¶ 13; *see also Clay et al. v. Cytosport, Inc*., No. 3:15-cv-00165-L-AGS (S.D. Cal.), ECF No. 157-7 (Declaration of Dr. Jeffrey Harris) at ¶¶ 18, 23. Given that Plaintiffs' testing indicated that Defendant overstated the Beyond Meat Products' protein content by between one and three grams of protein, the "front-of-the-label" claims are worth between $0.06 and $0.24. Suciu Decl. ¶ 13. It was these estimates that informed Plaintiffs' settlement discussions.

## KEY TERMS OF THE SETTLEMENT

## I.    CLASS DEFINITION

The "Settlement Class" or "Settlement Class Members" are defined as "[a]ll persons (individuals and/or entities) who purchased any Beyond Meat Product for household use and not for resale or distribution, from May 31, 2018 to and including the date of the Preliminary Approval Order." Settlement Agreement at § III(A). Excluded from the Settlement Class are: (i) Beyond Meat and its officers, directors, and employees; and Beyond Meat's corporate affiliates and corporate affiliates' officers, directors, counsel, and employees; (ii) Class Counsel; (iii) the judges who have presided over the Action; and (iv) all other persons who timely elect to become Opt-Outs from the Settlement Class in accordance with the Court's Orders. *Id.* A list of the Opt-Outs is attached to the Declaration of Andrea Dudinsky, the Settlement Administrator.

## II.    MONETARY RELIEF

### A.    Settlement Fund

If the Settlement is finally approved, Defendant will contribute $7,500,000 to a "Settlement Fund" in full satisfaction of all Settlement costs, including all payments to Settlement Class Members, Notice and Administrative Costs, Attorneys' Fees and Expenses, Settlement Class representative Service Awards and taxes. *Id.* § IV(A). Notably, under the Settlement Agreement, Settlement Class Members will be entitled to seek benefits whether or not they are able to provide proof that they purchased the Products. *Id.* § IV(C). If the Settlement Class Member does not have a proof of purchase, the Settlement Class Member can recover $2 per Beyond Meat Product, subject to a cap of five (5) Products per household. *Id*. Where a Settlement Class Member does submit proof of purchase, the Settlement Class Member can recover $2 per Beyond Meat Product, without any cap. *Id.* In the event that the total claims made exceed or is less than the Net Settlement Fund after paying the Notice and Administrative Costs, Attorneys' Fees and Expenses, and Service Awards, then the individual class benefit will be adjusted *pro rata*. *Id.* § IV(D). At no point will any of the Settlement Fund revert to Defendant. *Id.* § IV(M).

### B.    Net Settlement Fund and Individual Claims

Plaintiffs have requested an award of $2,500,000 in attorneys' fees and expenses, as well as a $2,500 service award for each of the named Plaintiffs ($40,000 cumulatively) for their time and effort in successfully prosecuting this action, under a separately filed motion (Motion for Attorneys' Fees, Costs, and Incentive Award, ECF No. 54). Additionally, based on the number of claims submitted, Plaintiffs estimate that the Settlement Administration Costs are estimated to be $ 306,710.74.[3] Accordingly, assuming that the Motion for Attorneys' Fees, Costs and Service

---

[3] This number is based on the current claims rate, extrapolated out to the end of the claims period, April 14, 2025. Currently, the Settlement Administrator has expended $111,710.74 in

Awards is granted, the Net Settlement Fund will be $4,653,289 (= $7,500,000 Settlement Fund - $2,500,000 in attorneys' fees and expenses - $40,000 service awards - $306,710.74 Settlement Administration Costs).

### C.    Settlement Class Claims

To receive payment, Settlement Class Members must file a timely and valid Claim Form. *Id.* § IV(D), *see also id.* Ex. 1 (the claims form). The Claim Form may be completed either online or by mail and must provide the number of Beyond Meat Product(s) purchased, along with any proof of purchase. *Id.*  Currently, the claims period ends on April 14, 2025.  But, to date, the Settlement Administrator has received 1,616 Claim Forms through the mail and 291,283 Claim Forms filed electronically through the Settlement Website, for a total of 292,899 claims (representing 1,844,497 Beyond Meat Products or 6.3 Products per claim). Dudinsky Decl., ¶ 20. Based on the current rate of claims, the Settlement Administrator estimates that there will be approximately 500,000 claims, representing 3,150,000 Beyond Meat Products.  *Id.* at¶ 24.

Based on the number of claims estimated to be submitted, each participating Settlement Class Member will receive $1.48 per Beyond Meat Product (assuming 500,000 claims are submitted with 6.3 Products per claim, which is then divided by the $4,653,289 Net Settlement Fund). Dudinsky Decl., ¶¶ 20, 24. On average, each participating Settlement Class Member will receive a total of $9.31 (500,000 claims/ the $4,653,289 Net Settlement Fund). *Id.*  Plaintiffs will provide updated claims information after the April 14, 2025 deadline.

The Settlement Administrator is responsible for reviewing all claims to determine their

---

Notice and Administrative Costs. Dudinsky Decl., ¶ 24. And the Settlement Administrator estimates that it will cost an additional $195,000 to complete the administration of this Settlement (based on an estimation of 500,000 total claims). *Id.* It may be subject to change if there is any spike or dip in claims.

validity. *Id.* § IV(H). The Settlement Administrator is still in the process of reviewing and validating Claim Forms. Dudinsky Decl., ¶¶ 20-21. But it is assumed that a number of the claims will be rejected as fraudulent or otherwise improper.

## III. RELEASE

In exchange for the Settlement Benefits, Settlement Class Members will release:

> any and all claims, demands, suits, petitions, liabilities, causes of action, rights, and damages of any kind and/or type regarding the subject matter of the Action, including, but not limited to, compensatory, exemplary, punitive, expert and/or attorneys' fees or by multipliers, whether past, present, or future, mature, or not yet mature, known or unknown, suspected or unsuspected, contingent or non-contingent, derivative or direct, asserted or un-asserted, whether based on federal, state or local law, statute, ordinance, regulation, code, contract, common law, or any other source, or any claim of any kind related arising from, related to, connected with, and/or in any way involving the Action, and the marketing, sale, or manufacture of Beyond Meat Product by Beyond Meat during the Class Period, in any manner that were, or could have been, asserted in the Action or any amendments of the Action.

*Id*. § II(A)(37). "Settlements of this breadth are common and unobjectionable." *Rangel v. PLS Check Cashers of California, Inc*., 899 F.3d 1106, 1110–11 (9th Cir. 2018) (affirming dismissal of released claims that were or "could have been pled based on the factual allegations" in settled class action).

## IV. SETTLEMENT NOTICE

Class Counsel has worked to ensure that notice is the best practicable, and reasonably calculated to apprise interested parties of the action so that they may make a claim, state their objection, or exclude themselves from the Settlement. Settlement Agreement § VI.

Defendant does not maintain the records of consumers' contact information, requiring publication notice. Notice of this Settlement is being provided via a multifaceted campaign, including internet advertising, which is designed to specifically reach purchasers of the Beyond Meat Products. Dudinsky Decl., ¶¶ 9-14. The Settlement Administrator provided notice through

targeted online advertisements (including on social media platforms such as X, Facebook, and Instagram, as well as YouTube) using industry-proven targeting, to a known and verifiable target audience profile. *Id.*, ¶¶ 11-13. Notice also included sponsored keyword advertising on Google to ensure that people search for terms, such as "*Beyond Meat class action*," "*Beyond Meat protein content*," and "*Beyond Meat lawsuit*," see the Settlement website. *Id.*, ¶ 14. As of November 14, 2024, the advertising campaign has been largely completed and the targeted internet advertising has delivered over 18 million impressions. *Id.*, ¶ 15.

Additionally, Publication Notice was distributed through two leading class action settlement websites, www.topclassactions.com and www.classaction.org, as well as press releases. *Id.*, ¶¶ 17 (approximately 445 mentions of the Settlement resulted from the press release); *see also* https://topclassactions.com/lawsuit-settlements/open-lawsuit-settlements/7-5m-beyond-meat-false-advertising-class-action-settlement/ & https://www.classaction.org/settlements/beyond-meat. Notice was also provided to the appropriate state and federal officials pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715. *See* Joint Notice of Filing of CAFA Notice, ECF No. 55. This notice has reached over 73% of the Class with an average frequency of 2.9 views per person. Dudinsky Decl., ¶ 9.

Class members have one hundred and eighty (180) days to submit a claim (until April 14, 2025) and had forty-five (45) days to object or exclude themselves from the Settlement Class following the Notice Date claim (until November 29, 2024). Preliminary Approval Order, ECF No. 52, ¶¶ 12, 19; Dudinsky Decl., ¶¶ 19, 22. In response to the notice, 14 individuals timely opted-out of the Settlement and no objections were received by the Court or the Settlement Administrator by the objection deadline. *Id.*, ¶ 23. Additionally, there were 292,899 claims submitted between October 15, 2024 and December 18, 2024 and the Settlement is on pace to reach approximately

500,000 by the April 14, 2025 claims deadline.[4] *Id.*, ¶¶ 20, 24. Based on this response, it is clear that the Notice reached the intended audience.

The declaration of the Settlement Administrator, attesting to all measures undertaken to provide notice of the Settlement Class, is attached hereto, as ordered by the Court. Preliminary Approval Order, ECF No. 52, ¶ 11, *See generally* Dudinsky Decl.

## ARGUMENT

## I.      CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

The Court previously found that class certification was appropriate for settlement purposes at Preliminary Approval. Preliminary Approval Order, ECF No. 52, ¶ 3. Nothing has changed since that date. The Settlement Class is still numerous, and seeks relief based on the same common "precent daily value" protein claims. *See* Motion for Preliminary Approval, ECF No. 46, at pp. 7-9 *citing Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 491 (N.D. Ill. 2015) (Kennelly, J.) (commonality is met because the "claims of all class members depend on the resolution of [] key common question[s].").  Plaintiffs are typical and adequate class representatives because they assert the same claims, and seek the same relief, as the absent Settlement Class Members and have no conflicts of interest.  *Id.* at pp. 9-10 *citing In re TikTok, Inc., Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1085 (N.D. Ill. 2021).  Additionally, Plaintiffs have selected qualified counsel to represent the Class.  *Id.*  And there is no concern regarding predominance and superiority, as the resolution of the claims of all Settlement Class Members in a single proceeding promotes judicial efficiency and does not engender any unique manageability issues.  *Id.* at pp. 11-11.  Therefore, Plaintiffs respectfully request the Court to adopt its previous findings and hold that class

---

[4] Because the Notice program was substantially completed on November 14, 2024, Class Counsel expects the claims rate will likely decrease over the next few months.  Dudinsky Decl., ¶ 9.

certification is appropriate for the same reasons. *See* Motion for Preliminary Approval, ECF No. 46, at pp. 7-11 (explaining the reasons that the Settlement Class meets the requirements of Rule 23(a) and (b)(3)).

## II. THE NOTICE PLAN COMPORTS WITH DUE PROCESS

Due process and Federal Rule of Civil Procedure 23 require that the notice provided to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). The Court previously determined the Notice Plan is the best notice practicable under the circumstances and satisfies the requirements of all applicable laws and rules. Preliminary Approval Order, ECF No. 52, ¶ 9. This ruling should not be displaced.

Here, the publication notice regime is similar to others that have already been approved. *Wilson v. Airborne, Inc*., 2008 WL 3854963, at *4 (C.D. Cal. Aug. 13, 2008) (approving class notice through a combination of print and online advertising); *Arnold v. Fitflop USA, LLC*, 2014 WL 1670133, at *4 (S.D. Cal. Apr. 28, 2014) (approving notice through online advertising, social media based advertisements, as well as publication in People magazine); *Pappas v. Naked Juice Co of Glendora, Inc*., 2014 WL 12382279, at *5 (C.D. Cal. Jan. 2, 2014) approving notice through online advertising, as well as publication in People and *Parade* magazine). Additionally, the Settlement Administrator estimates that the notice has reached approximately 73.7% of the class, with an average frequency of 2.9 views per person. Dudinsky Decl., ¶ 9.  This is better than the 70%, with an average frequency of 2 views per person, initially predicted by the Settlement Administrator at Preliminary Approval. Declaration of Jeanne Finegan, ECF No. 46-4, ¶ 4. This reach is within the acceptable range for publication notice. Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide (noting that it is reasonable

11

to reach between 70–95% of the class).

Courts have also found the contents of a settlement notice "sufficient" if the notice "informs the class members of the 'nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, and that any class member may appear and be heard at the hearing.'" *Lucas v. Vee Pak, Inc.*, 2017 WL 6733688, at *15 (N.D. Ill. Dec. 20, 2017). The Notice utilized here "clearly and concisely stated in plain, easily-understood language," the: (1) nature of the action; (2) definition of the certified class; (3) the class claims, issues, or defenses; (4) that a class member may appear through counsel; (5) that a class member will be excluded at their request; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment under Rule 23(c)(3). Settlement Agreement, Exs. 2 (Long Form Notice), 3 (Short Form Notice). Given the broad reach of the Notice and the comprehensive information provided to the Class, the requirements of Rule 23 and due process are met.

## III.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE FINALLY APPROVED BY THE COURT

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ("NEWBERG") ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). "A district court may approve a settlement of a class action if it concludes that it 'is fair, reasonable, and adequate.'" *Kaufman v. Am. Express Travel Related Servs. Co., Inc.*, 877 F.3d 276, 283 (7th Cir. 2017); Fed. R. Civ. P. 23(e)(2). To make this determination, courts in the Seventh Circuit consider six factors: (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class

12

to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed. *See Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014).

Courts must also consider the four factors set forth in the "new version of [Fed R. Civ. P.] 23(e)(2)," in addition to the six *Wong* factors. *Snyder v. Ocwen Loan Serv., LLC*, 2018 WL 4659274, at *3 (N.D. Ill. Sept. 28, 2018) (Kennelly, J.). The Rule 23(e) factors are whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(2)(A)-(D). The *Wong* and Rule 23(e)(2) factors may overlap or be "duplicative." *See T.K. Through Leshore v. Bytedance Tech. Co.*, 2022 WL 888943, at *10 (N.D. Ill. Mar. 25, 2022).

### D. The *Wong* Factors

#### 1. The Settlement Amount Is Reasonable In Light Of The Strengths And Weaknesses Of Plaintiffs' Case (Wong Factor 1)

"The most important factor relevant to the fairness of a class action settlement is … the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (citations omitted). "Because the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *In re AT&T Mobility*, 270 F.R.D. 330, 347 (N.D. Ill. Aug. 11, 2010) (citations omitted).

Plaintiffs believe that they had strong claims against Defendant. But nothing is guaranteed

in a complex litigation of this size. Indeed, although a number of Plaintiffs' allegations survived Defendant's motion to dismiss, the Court also dismissed several of Plaintiffs' claims, including Plaintiffs' front-of-label claims and claims for injunctive relief. *See* Opinion and Order (ECF No. 29). And the pleading standard is much more forgiving than the evidentiary standard required at summary judgment and trial. Accordingly, Defendant could present evidence that the Beyond Meat Products did in fact contain the advertised levels of protein or that such advertising was not material to consumers. Or Plaintiffs could fail to meet their evidentiary burden. But even before the finder of fact can reach the merits of this action, Plaintiffs would have to get a favorable ruling on class certification. Defendant would likely present a vigorous defense to class certification, and even move for decertification or for appellate review under Fed. R. Civ. P. 23(f) if class certification is granted. The proposed Settlement foregoes these significant risks. *In re Southwest Airlines Voucher Litig.*, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) ("In considering the strengths of plaintiff's case, legal uncertainties at the time of settlement favor approval.").

By contrast, the Settlement provides a substantial refund to Settlement Class Members, even those without proof of purchase. The Settlement also includes Settlement Class Members located anywhere in the United States, whereas Defendant would have argued at class certification that, at best, only consumers in states represented by Class Representatives could be included in a certified class. Additionally, the amount of the relief provided under the Settlement is likely more than what consumers could expect at trial ($1.48 per Beyond Meat Product estimated under the Settlement verses the estimated $1.20 in damages per Product which was estimated by Class Counsel to be recovered at trial). Suciu Decl. ¶ 13.[5] Even if the Settlement exceeds the Settlement

---

[5] The estimated per Product relief provided by the Settlement even compensates Settlement Class Members for their "Front-of-the-Label" claims, which were previous dismissed by the Court.

Administrator's by 115,000 claims (or by 23 percent), the Settlement Class would still come out even with the estimated trial recovery of $1.20 per Product (615,000 claims, with an average of 6.3 Products per claim, divided by a Net Settlement Fund of approximately $4,653,289). Such a result is outstanding, much more favorable than the fractional recovery typically expected in class action settlements. *Chambers v. Together Credit Union*, 2021 WL 1948453, at *3 (S.D. Ill. May 14, 2021) ("Defendants' settlement offer is significant, estimated to be nearly 60% of the potential damages the Class would have obtained had they prevailed on every issue all the way through trial and appeal.").

Moreover, on the aggregate level, the overall Settlement Class recovery is approximately 2.4% of the total liability in the case (Suciu Decl. ¶ 14[6]), which is also within the range of reasonableness. *Cagan v. Anchor Sav. Bank FSB*, 1990 WL 73423 at *12–13 (E.D.N.Y. May 22, 1990) (approving $2.3 million settlement over objections that "best possible recovery would be approximately $121 million"). Here, any expectations regarding an oversized aggregate damages award have to be tempered by the realities of the case. First, such a recovery represents a victory where Plaintiffs recover on behalf of a national class, and recovered the maximum amount of damages based on Plaintiffs' initial estimates. This is unlikely. Moreover, Beyond Meat is subject to slacking demand and revenue, leading to a 90 percent drop in their stock price from its high in 2019. *See* Laurence Darmiento, HOW BEYOND MEAT IS TRYING TO GET ITS SIZZLE BACK, Los Angeles Times (May 31, 2024) (available at https://www.latimes.com/business/story/2024-05-31/how-beyond-meat-lost-some-of-its-sizzle). This has led to concerns regarding the solvency of the company. *Id.* ("The sales decline has taken a sharp financial toll, with the company's cash

---

*See* Suciu Decl. ¶ 13 (estimating that the front of the label claims would be worth between $0.06 and $0.24). Again, this is likely better than the Settlement Class would have faired at trial.

[6] $7,500,000 Settlement Funds/$319,342,260 in potential damages.

position falling from $733 million in 2021 to $190 million last year. That prompted TD Cowen in a May earnings note to say the company may run out of money if it can't stem the bleeding or raise funds — an outcome [Beyond Meat] dismisses."). A large judgment may only create an avenue of "recovery that must be chased through the bankruptcy courts." *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016).

Here, the complete restitution provided under the Settlement substantially outweighs the potential risk of continuing the litigation. Accordingly, this factor favors approval of the Settlement.

        2.    *Further Litigation Would Be Complex, Costly, And Long (Wong Factor 2)*

This Settlement also avoids the costs and delay associated with complex class litigation. Any decision on the merits (whether favorable or not) would take years and entail extensive discovery and motion practice, including, in all probability, motions for summary judgment. Joint Decl. ¶¶ 27, 29; *see also Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("[C]lass action suits have a well-deserved reputation as being most complex."). This litigation is already over two years old and has encompassed several rounds of pleadings, motion to dismiss briefing, initial discovery, and even a petition to the Judicial Panel on Multidistrict Litigation. Here, Plaintiffs still would have to navigate this case through class certification (and the extensive expert discovery associated therewith), dispositive motions, merits expert discovery, pretrial motions, and trial. But the case would not end here. Regardless of who prevails on the merits, the winning party will face an appeal on any judgment. This process would likely take over five years to complete, minimum.

The "[s]ettlement allows the case to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598 (N.D. Ill. 2011). Rather than embarking on years of protracted and uncertain litigation, Plaintiffs and

their counsel took advantage of the opportunity to negotiate a Settlement that provides immediate, certain, and complete relief to all Settlement Class Members. *See Schulte*, 805 F. Supp. 2d at 586. The immediacy and certainty of a recovery, when balanced against the significant costs, risks, and delay of proceeding with this litigation, weigh in favor of settlement. *Charvat v. Valente*, 2019 WL 5576932, at \*7 (N.D. Ill. Oct. 28, 2019). This is particularly true when the participating Settlement Class Members are receiving more through settlement than they could at trial.

3.    *The Amount Of Opposition To The Settlement And The Reaction Of The Class (Wong Factors 3-4)*

The reaction of the Class has been overwhelmingly positive. As of the date of this Motion, a significant number of claims have been submitted compared to only 14 opt-outs and no objections. Dudinsky Decl. ¶ 23. The lack of opposition reflects the Settlement Class's support for the Settlement. *See*, *e.g.*, *In re Cap. One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 792 (N.D. Ill. 2015) (finding an opt-out and objection rate of 0.0032% low enough to support settlement); *In re Sw. Airlines Voucher Litig.*, 2013 WL 4510197, at \*7 (finding an opt-out and objection rate of less than 0.01% supportive of the reasonableness of settlement); *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 965 (N.D. Ill. 2011) (same).

Additionally, while this lawsuit did not involve any governmental participants, CAFA Notice was served to the Attorney General of the United States, and to state Attorneys General. *See* ECF No. 55. No government entity has filed an objection to the Settlement. While Plaintiffs are careful not to ascribe the government's silence as its approval of the Settlement, the lack of objection still weights in favor of the Settlement.

4.    *Experienced And Competent Counsel Endorse The Settlement (Wong Factor 5)*

In assessing the qualifications of counsel under this factor, a court may rely upon affidavits submitted by class counsel as well as its own observations of class counsel during the litigation.

17

*Isby*, 75 F.3d at 1200. As is evident from Class Counsel's declarations and firm resumes (submitted with the Motions for Preliminary Approval and Approval of Attorneys' Fees, Costs and Incentive Awards), Plaintiffs' Counsel is highly experienced in class actions, especially those concerning food products and mislabeling claims. ECF Nos. 46-2 (firm resumes), 54-2-8 (declarations). Indeed, several of Class Counsel have negotiated numerous consumer deception class settlements, which have been granted final approval. Class Counsel's endorsement of this Settlement supports approval. *Snyder v. Ocwen Loan Serv., LLC*, 2019 WL 2103379, at *6 (N.D. Ill. May 14, 2019) ("Class counsel are experienced members of the plaintiff's consumer class action bar. They favor the settlement, and this is a factor supporting approval of the amended settlement."); *see also In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000) (placing "significant weight on the ... strong endorsement of [this] settlement" by "well-respected" attorneys).

Additionally, the competence of Class Counsel's work should be judged by their litigation (and the corresponding results) in this case. Here, Class Counsel brought several individual lawsuits, but organized themselves to successfully litigate this action. They vigorously pursued this action, while conducting settlement negotiations which lasted several months and multiple mediations. Class Counsel conducted extensive investigation into this case, including through their initial scientific testing and damages modeling. It was only through these efforts that Class Counsel was able to secure the result now before the Court. Here, Class Counsel's actions speak to their skill. Thus, Plaintiffs' Counsel's endorsement of this Settlement supports final approval.

> 5. *Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case (Wong Factor 6)*

This last factor examines the stage of the proceedings and amount of discovery completed at the time of settlement. *Synfuel*, 463 F.3d at 653. This factor "indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Am. Int'l Grp., Inc. v. ACE*

*INA Holdings, Inc.*, 2011 WL 3290302 at *8 (N.D. Ill. July 26, 2011) (cleaned up). Plaintiffs extensively litigated this case through a motion to dismiss, rounds of pleadings, and a JPML hearing. Class Counsel also exchanged and reviewed significant informal discovery prior to the mediation, which allowed Class Counsel to assess the strengths of their positions. *Id.* ¶ 12. Such discovery also included initial expert discovery on damages, so that Class Counsel could accurately gauge the strength of their negotiating position and the fairness of any settlement. Suciu Decl. ¶ 13. Accordingly, "[t]hough a lot of work remains to be done if the case is not settled, much has been done already," and Plaintiffs and their counsel had "sufficient information via discovery and otherwise to enable them to evaluate the merits of the case." *Synder*, 2019 WL 2103379, at *6. This factor also weighs in favor of final approval.

### E.     The Rule 23(e)(2) Factors

*1.     The Class Representatives And Plaintiffs' Counsel Have Adequately Represented The Class (Rule 23(e)(2)(A))*

Here, "[t]he named [P]laintiffs participated in the case diligently, including being subjected to discovery. And [Plaintiffs' Counsel] fought hard throughout the litigation and pursued mediation when it appeared to be an advisable and feasible alternative." *Snyder*, 2019 WL 2103379, at *4. Further, courts have previously found that Class Counsel meets the obligations and responsibilities of class counsel. ECF No. 10 (appointing Interim Lead Counsel).

*2.     The Settlement Was Negotiated At Arm's Length (Rule 23(e)(2)(B))*

Both counsel for Plaintiffs and for Defendant are experienced in class action litigation and negotiated over several months of arm's-length negotiations, including with the assistance of a third-party neutral mediator. Accordingly, this factor is met. *Snyder*, 2019 WL 2103379, at *4 (factor met where "[t]he parties conducted their negotiations via three separate and independent

mediators"); *In re TikTok, Inc., Consumer Priv. Litig.*, 565 F. Supp. 3d at 1091 (factor met where parties settled case with the assistance of a mediator.).

> 3. *The Settlement Provides Adequate Relief To The Class (Rule 23(e)(2)(C))*

Whether relief is adequate considers "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(i–iv).

**"The costs, risks, and delay of trial and appeal."** As noted above, the Settlement meets this factor. Nonetheless, if this case was to move forward, Plaintiffs would have to maintain the class through trial, which has proven difficult in national consumer class actions. *Czuchaj v. Conair Corp.*, 2016 WL 1240391, at *2 (S.D. Cal. March 30, 2016) (decertifying a national class due to differences in state law). Even if Plaintiffs could maintain the class, their ability to prove the merits of the case presents a further risk. Plaintiffs recognize that providing damages would be subject to costly and fact-intensive analysis, which has encountered difficulties in other courts. *See*, *e.g.*, *Werdebaugh v. Blue Diamond Growers*, 2014 WL 7148923, at *12-13 (N.D. Cal. Dec. 15, 2014) (rejecting damages model that failed to control for other critical factors affecting price). Moreover, litigating a complex case through trial is inherently perilous regardless of the strength of the claims:

> [N]othing is assured when litigating against commercial giants with vast litigative resources, particular in such complex litigation as this, which would strain the cognitive capacities of any jury. Defense judgments were hardly beyond the realm of possibility.

*Rebney v. Wells Fargo Bank*, 220 Cal. App. 3d 1117, 1140 (1990). That does not even take into

account the risk and delay associated with any appeal that would surely come if a favorable judgement was obtained. The Settlement eliminates these and other risks of continued litigation, including the very real risk of no recovery after several years of litigation.

*"The effectiveness of any proposed method of distributing relief to the class."* Settlement Class Members needed only submit a simple claim form (online or by mail) stating the number of Beyond Meat Products purchased (as well as provide proof of purchase, if available) to receive monetary relief, which many of them did. Settlement Agreement, § II(A)(10), Ex. 1. This is a reasonable method of distributing relief. *See*, *e.g.*, *Kolinek*, 311 F.R.D. at 499 (holding it was "neither unfair nor unreasonable" to ask claimants to submit a "short and direct" claim form that required claimants to provide their names, address, and signature, and to check a box if they wished to make a claim). Settlement Class Members are being provided 180 days to submit their claims. Settlement Agreement, § II(A)(9). In addition, the Settlement allows for payments to Settlement Class Members *via* check, Venmo, PayPal, ACH, or Zelle. *Id.* § IV(K). Accordingly, payment will be made through several convenient methods.

The Settlement Agreement also calls for secondary distribution of any unclaimed funds after the initial payment. Settlement Agreement § IV(L). This "redistribution of unclaimed class action funds to existing class members is proper and preferred" because it "ensures that 100% of the [settlement] funds remain in the hands of class members." *Hester v. Vision Airlines, Inc.*, 2017 WL 4227928, at *2 (D. Nev. Sept. 22, 2017); *Keepseagle v. Vilsack*, 118 F. Supp. 3d 98, 117 (D.D.C. 2015) (citing NEWBERG § 12:28 (5th ed. 2015) ("as a general matter, 'a court's goal in distributing class action damages is to get as much of the money to the class members in as simple a manner as possible'")). This supports approval of the Settlement.

*"The terms of any proposed award of attorney's fees, including timing of payment."* In

21

discharging its duty to determine the fairness of attorneys' fees awarded in a class action settlement, the Court's primary concern is to ensure that the process of negotiation leading to the fee has "adequately protected the class from the possibility that class counsel were accepting an excessive fee at the expense of the class." *Staton v. Boeing Co*., 327 F.3d 938, 966 (9th Cir. 2003); s*ee also* Fed. R. Civ. P. 23(e)(2)(C)(iii).

Here, the proposed attorneys' fees and costs are not extraordinary. Class Counsel has agreed to petition the Court for $2,500,000 in fees and expenses. Settlement Agreement § V(A). This is one-third of the $7.5 million in monetary relief that Class Counsel has made available, which is reasonable in this Circuit and matches the rate that would have been likely negotiated in the market. *Kolinek*, 311 F.R.D. at 503 (granting "Kolinek's motion for attorney's fees in the amount of … 36% of the settlement fund"); *Charvat*, 2019 WL 5576932, at *12 ("[T]he Court finds that a 33.99% attorneys' fee award reflects the market rate and takes into account the risk of nonpayment."). Additionally, as more fully set out in Plaintiffs' Motion for Attorneys' Fees, Costs, and Incentive Award, this case represents a reasonable 2.13 lodestar multiplier. *See* ECF No. 54, at pp. 14-15 *citing In re TikTok, Inc., Consumer Priv. Litig*., 617 F. Supp. 3d at 943 (noting "[i]n practice, most multipliers fall between one and four."); *In re Lawnmower Engine Horsepower Mktg. & Sales Pracs. Litig*., 733 F. Supp. 2d 997, 1015 (E.D. Wis. 2010) (2.07 was a reasonable given that the average multiplier was 2.7); *see also Schulte*, 805 F. Supp. 2d at 598 ("The requested award here would represent a multiplier of less than 2.5, which is not an reasonable risk multiplier.")

There is also nothing to suggest that the attorneys' fees are being favored under the Settlement. The Settlement is not conditioned on any payment of fees, and the payment of fees occurs only after the entire Settlement Amount is deposited into the Escrow Account. Settlement

Agreement §§ IV(B), V(C). Additionally, all Settlement Class Members had an opportunity to review the fee request, and no objections have been lodged.

*"Any agreement required to be identified by Rule 23(e)(3)."* No agreement between the parties other than the Settlement exists.

4. *The Settlement Treats All Class Members Equally (Rule 23(e)(2)(D))*

Nothing in the Settlement improperly discriminates between any segments of the Settlement Class. Fed. R. Civ. P. 23(e)(2)(C). Each Settlement Class Member is entitled to the same relief calculated from the same formula, $2 per the number of qualifying Beyond Meat Products purchased, subject to the same *pro rata* adjustment. Settlement Agreement § IV(C); *T.K. Through Leshore*, 2022 WL 888943, at *16 ("The Proposed Settlement provides for *pro rata* shares to each member of the Proposed Settlement Class. Such distribution plans indicate equitable treatment of class members relative to each other."). Given that both restitution and damages accrued by Settlement Class Member would be logically proportional to the number of products purchased and the price of those products, the payment formula forwarded in the Settlement Agreement is both rationally based and directly related to the claims asserted. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008) ("It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits.").

Although Settlement Class Members with proof of purchase will be eligible to receive compensation for as many Beyond Meat Products as they have proof for, but Settlement Class Members without proof of purchase will be limited, that does not mean Settlement Class Members are treated inequitably. *Patellos v. Hello Products, LLC*, 2022 WL 2159566, at *1 (S.D.N.Y. June 15, 2022) (finding "the Settlement Agreement treats the Settlement Class Members equitably

relative to one another" where class members with proof of purchase could make claims for up to

ten products, versus up to five products without proof of purchase). Indeed, such a limitation on

Settlement Class Members without proof of purchase is necessary to deter fraudulent claims and

ensure as much of the Settlement Fund is available to Settlement Class Members with proof of

purchase as possible.

Here, all Settlement Class Members are treated equally, and are eligible for the same relief

under the Settlement's terms.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their

Motion for Final Approval of the Settlement and enter the Final Approval Order in the form

submitted herewith.


Dated: December 23, 2024                Respectfully submitted,


                                        By: */s/ Nick Suciu III*

                                        Nick Suciu III
                                        **MILBERG COLEMAN BRYSON
                                        PHILLIPS GROSSMAN PLLC**
                                        6905 Telegraph Road, Suite 115
                                        Bloomfield Hills, Michigan 48301
                                        Telephone: (313) 303-3472
                                        Facsimile: (865) 522-0049
                                        Email: nsuciu@milberg.com

                                        Joel D. Smith
                                        **SMITH KRIVOSHEY, P.C.**
                                        867 Boylston Street
                                        5th Floor, #1520
                                        Boston, MA 02116
                                        Telephone: 617-377-7404
                                        Email: joel@skclassactions.com

                                        Jonathan Shub
                                        **SHUB & JOHNS LLC**

Four Tower Bridge
200 Barr Harbor Dr., Ste. 400
Conshohocken, PA 19428
Telephone: (856) 772-7200
Facsimile: (856) 210-9088
Email: jshub@shublawyers.com

Elizabeth A. Fegan
**FEGAN SCOTT LLC**
150 South Wacker Drive, 24th Floor
Chicago, Illinois 60606
Telephone: (312) 741-1019
Facsimile: (312) 264-0100
Email: beth@feganscott.com

Jason P. Sultzer
**THE SULTZER LAW GROUP P.C.**
85 Civic Center Plaza, Suite 200
Poughkeepsie, New York 12601
Telephone: (845) 483-7100
Facsimile: (888) 749-7747
Email: sultzerj@thesultzerlawgroup.com

Robert K. Shelquist
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Ave. S, Suite 2200
Minneapolis, Minnesota 55401
Mobile: (612) 991-2934
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
Email: rkshelquist@locklaw.com

*Counsel for Plaintiffs and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I, Nick Suciu III, the undersigned attorney, hereby certify that on December 23, 2024, I caused the foregoing Memorandum to be served upon all counsel of record via the Court's ECF system.

<u>/s/ *Nick Suciu III*</u>
Nick Suciu III
